UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROYCE CORLEY,

                      Plaintiff,

   -against-

HONORABLE BONNIE G. WITTNER, J.S.C.;
MICHAEL J. BARRY; PORTS & FILES, INC.;
GLENN F. HARDY, ESQ.; GLENN F. HARDY, P.C.;
CYRUS R. VANCE, JR.; JOHN TEMPLE; DAVID STUART;
GREG WEISS; JOHN DOE; and the CITY OF NEW YORK,

                      Defendants.

RECEIVED
SDNY PRO SE OFFICE
2015 DEC -9 AM 10: 15

**COMPLAINT**

**15 CV 9621**

JURY DEMANDED

JURISDICTION AND VENUE

   1. This action arises under the United States Constitution, particularly under the First and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983, 1985(2), 1985(3); and New York law.

   2. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) as this civil action arises under the Constitution and federal law.

   3. This Court has diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity between all opposite parties and the amount in controversy exceeds the sum of $75,000; and supplemental jurisdiction over all other claims, as they form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

   4. This Court has venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts occurred within New York County.

1

## PARTIES

5. Plaintiff ROYCE CORLEY, acting pro se, is currently a federal prisoner residing at the Federal Correctional Institution in Danbury, Connecticut. Plaintiff was previously in state custody from January 25, 2012 through January 29, 2013; in connection with People v. Royce Corley, Ind. #423/2012, Dkt. #2012NY007628 (N.Y. Sup. Ct.).

6. Defendant HONORABLE BONNIE G. WITTNER, J.S.C., is a former Supreme Court Justice for the State of New York, that acted in the "clear absence of all jurisdiction" at all relevant times.

7. Defendants GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C. was assigned to represent the Plaintiff in the matter of People v. Corley, supra. Defendant GLENN F. HARDY, ESQ. is a resident of New York, with an office in Garden City, NY. Defendant GLENN F. HARDY, P.C. is a Professional Corporation organized in the State of New York. Defendant GLENN F. HARDY, ESQ. is the full or majority owner of GLENN F. HARDY, P.C.

8. Defendants MICHAEL J. BARRY and PORTS & FILES, INC., were hired by Glenn F. Hardy, Esq. as an expert (Private Investigator) in the matter of People v. Corley, supra. Defendant MICHAEL J. BARRY is a resident of New York, with an office in New York, NY. Defendant PORTS & FILES, INC. is a Domestic Business Corporation organized in the State of New York. Defendant MICHAEL J. BARRY is the full or majority owner of PORTS & FILES, INC.

9. Defendants District Attorney CYRUS R. VANCE, JR., Assistant District Attorneys JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, are members of the District Attorney's Office for the County of New York, collectively ("DANY"), sued in their individual and official capacity as public officers of the CITY OF NEW YORK.

10. Defendant CITY OF NEW YORK is a municipal corporation organized under the laws of the State of New York and liable under Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).

11. Defendants are joined due to the claims arising out of the same transactions and occurrences, or series thereof and questions of law and fact which are common to all defendants pursuant to Fed. R. Civ. P. 20(a)(2).

GENERAL ALLEGATIONS

A. Case Background:

12. In or around 2007 through January 2012, Plaintiff was informally doing business under the nom de guerre "Ron Iron"; providing advertising and web development services to escort, therapeutic and adult-oriented businesses.

13. In or around November 2009, an informant named Jeffrey Whyte forwarded material information about the Plaintiff to law enforcement. Around this time, DANY and other law enforcement agencies, initiated an investigation into the business activities of "Ron Iron."

14. On or about August 17, 2011, an informant named Nathaniel Jackson (a/k/a "Nate") was arrested for sexually assaulting his girlfriend E.S.W. (a/k/a "Minna"). During Nate's interrogation, he accused the Plaintiff of pimping and physically assaulting his girlfriend Minna.

15. On or about August 22, 2011, the matter of People v. Nathaniel Jackson, Ind. #4157/2011, #34/2012; Dkt. #2011NY061129, was assigned to the Hon. Bonnie G. Wittner.

16. On or about August 22, 2011 through January 12, 2012, DANY and the NYPD, directed their on-going investigation into Plaintiff's associations with Minna and her girlfriend J.M.L. (a/k/a "Phebe"). Simultaneously, DANY and the NYPD conducted undercover operations to target individuals they believed to be associated with the Plaintiff. However, these targeted individuals declined to offer sexual acts in exchange for money. In at least one instance, DANY or the NYPD unlawfully searched the apartment of Tangina Bennett (a/k/a "Janel"), after she refused to accept money to perform a sex act.

B. Invasion of Privacy:

17. On or about August 22, 2011 through February 15, 2012, in association with the matter of People v. Nathaniel Jackson, supra; People v. Charles Brito & Richard Lukaski, Ind. #3013/2011; et al., Judge Wittner and DANY unlawfully established a quasi-grand jury to issue subpoenas, court orders, etc.; with the intent to illegally obtain access to the Plaintiff's personal electronic communications, bank records, phone records and conversations, etc.

C. Outrageous Government Conduct:

18. On or about August 22, 2011 through January 10, 2012, DANY solicited Judge Wittner to coerce and entice Minna to engage in prostitution, with the intent to fraudulently obtain search warrants and manufacture a sting operation against the Plaintiff. Judge Wittner induced Minna to engage in prostitution by: (1) promising her boyfriend Nate a favorable disposition, or an unfavorable disposition, if she failed to participate; (2) threatening her with prosecution; or (3) offering something of value.

19. On or about September 3, 2011 and November 30, 2011, members of DANY's Investigation Bureau attempted undercover operations, using Minna as a prostitute, to obtain information and facilitate a sting operation. However those missions were aborted for unknown reasons.

20. On or about December 1, 2011, DANY requested the assistance of Detective Mark Woods from the Vice Enforcement Division, to interview Minna and prepare for an undercover operation.

21. On or about January 10, 2012, Detective Woods contacted Janel, via her Backpage.com advertisement, to schedule a date on January 12, 2012, with "two girls" for his "birthday."

22. On January 11, 2012, Detective Woods, DANY, et al., instruct Minna to meet with Janel to obtain keys for an apartment; which would ultimately be the site of the scheduled sting operation.

23. On the morning of January 12, 2012, members of DANY or the NYPD transport Minna to an apartment at 335 East 21st Street in Manhattan, to prepare for the sting operation. That evening Janel arrives after speaking with Detective Woods about keeping his appointment. Around 6:00pm Detective Giancarlo Cavallo arrives pretending to be the "birthday boy." Janel declines to offer Detective Cavallo any sexual acts for money. However, through the coaching of DANY or the NYPD, Minna offered to "do doggystyle for $160." Each woman was arrested by Detective Woods after this exchange.

24. Judge Wittner and DANY manufactured Supreme Court jurisdiction of the subject-matter by compelling Minna (a person less than nineteen years old), to participate in the January 12th sting operation. Without her participation, the only potential chargeable offense was Promoting Prostitution in the Fourth Degree pursuant to N.Y. Penal Law § 230.20 (class-A misdemeanor).

25. On January 25, 2012, Plaintiff was arrested by Detective Woods; the authority for such arrest was unknown. However, a criminal complaint was later drafted by Detective Woods and signed by ADA David Stuart.

26. On or about January 26, 2012, Plaintiff was indicted by a Manhattan Grand Jury on two counts of Promoting Prostitution pursuant to N.Y. Penal Law § 230.25(1)&(2).

27. On or about January 26, 2012 through February 14, 2012, Judge Wittner and DANY engaged in fraud or other acts to circumvent established procedures, to have Plaintiff's case assigned to Judge Wittner, with the intent to hide unlawful acts committed by the defendants.

28. On February 15, 2012, Plaintiff was arraigned before Judge Wittner and committed to custody on $25,000 bail.

D. Speedy Trial:

29. On April 18, 2012, DANY filed a "Certificate of Readiness" with Plaintiff's counsel, Glenn F. Hardy, Esq.

30. On May 15, 2012 and June 12, 2012, DANY states "not ready" for trial.

31. On June 27, 2012; July 31, 2012; September 10, 2012 and October 9, 2012, Mr. Hardy acquiesced to tolling speedy-trial time by alleging to be "not ready" for trial, despite the fact that DANY was "not ready" for trial.

32. On November 13, 2012; December 4, 2012; December 12, 2012; December 20, 2012 and January 24, 2012, DANY states "not ready" for trial on the record.

33. On February 1, 2013, DANY dismissed all charges against the Plaintiff; thus terminating the proceeding in Plaintiff's favor.

4

34. Overall, Mr. Hardy acquiesced to toll speedy-trial time calculations despite knowing that (1) DANY never intended to proceed to trial at any time; (2) material evidence was inadmissible for trial; (3) DANY needed additional time to convince the U.S. Attorney to accept the case; and (4) Plaintiff refused to plead guilty under any circumstance. In exchange for Mr. Hardy's assistance in tolling speedy-trial time, DANY and Judge Wittner provided him with favorable dispositions on his other cases, or something else of value.

35. On or about June 19, 2012 or September 17, 2012, Plaintiff would have been eligible for immediate release from custody or the case dismissed, respectively, pursuant to N.Y. Crim. Proc. Law art. 30 (mandating release upon 90 days and dismissal upon 180 days speedy trial delay); absent Mr. Hardy's permission to toll speedy-trial time. As a result, the Plaintiff suffered over 215 days of unlawful incarceration.

E. Obstruction of Justice:

36. On or about April 10, 2012, DANY communicated to Mr. Hardy an offer of one-to-three years imprisonment for a plea of guilty. The Plaintiff explicitly declined this offer and urged for a fair and speedy trial.

37. On or about September 28, 2012, DANY communicated to Mr. Hardy an offer of five years probation for testimony against Nathaniel Jackson. This same day, Mr. Jackson's attorney compelled Plaintiff's presence at trial with the intent to elicit exculpatory evidence. Plaintiff pleaded the fifth amendment instead.

38. On or about October 10, 2012 and other times prior, DANY actively tried to persuade the U.S. Attorney to prosecute the Plaintiff, at no avail. Simultaneously, Judge Wittner pressured DANY to resolve the case without a trial, to prevent disclosure of unlawful acts committed by the defendants.

39. On or about October 11, 2012, DANY solicited Judge Wittner to convince the U.S. Attorney to prosecute the Plaintiff. Judge Wittner issued an order to forward evidence to the FBI and U.S. Attorney.

40. On or about October 12, 2012 through December 4, 2012, the U.S. Attorney declined to prosecute the Plaintiff due to lack of interest or publicity.

41. On or about October 23, 2012, motivated by DANY and Judge Wittner, Mr. Hardy hired private investigator Michael J. Barry of Ports & Files, Inc. to publicize Plaintiff's case, with the intent of enticing the U.S. Attorney to take the case.

42. On December 2, 2012, Mr. Barry visited the Plaintiff at the George R. Vierno Center, under the guise of providing investigative services. Mr. Barry bragged about various cases he investigated that later became newsworthy. In particular he referenced the matter of People v. Darrell Dula, Jamali Brockett, et al. (highly publicized sex trafficking case involving four Black "pimps" and an Orthodox-Jewish victim). Plaintiff explicitly indicated to Mr. Barry an aversion to having his case publicized. Upon the conclusion of this meeting (approx. 3 hours), Plaintiff shared a significant amount of privileged information with Mr. Barry.

43. On December 3, 2012, Plaintiff's father received contact from a reporter named Daniel Beekman with the Daily News, seeking information to include in his article. The reporter indicated that an "investigator" provided his contact information. Mr. Barry was the investigator that sold the story of Plaintiff's case to the media.

5

44. On or about December 4, 2012, the Daily News published an article and the PIX-11 News aired a story regarding Plaintiff's case. The news reported was materially incorrect as alleging the Plaintiff "pimped out two 17 year old girls." However, only one of the prostitute-accomplices was recorded as being 17 years old.

45. On or about December 6, 2012, Plaintiff confronted Mr. Barry via voicemail, about releasing information to the media. Several days later, Mr. Hardy informed the Plaintiff that Mr. Barry refused to work with him any longer and will not provide any (exculpatory) evidence he recovered.

46. On December 12, 2012, during a speedy-trial hearing, DANY stated that the U.S. Attorney was interested in the Plaintiff's case and are arranging to transfer prosecution. In response, Judge Wittner expressed an active interest in the U.S. Attorney prosecuting the Plaintiff. Then discussed the logistics of transferring evidence and inquired whether Minna's testimony from the Jackson trial could be used effectively.

47. On December 18, 2012, Plaintiff was escorted to the District Attorney's Office for a "reverse proffer." In attendance was Assistant U.S. Attorneys Amanda Kramer and Tatiana Martins, ADA Greg Weiss, Mr. Hardy, Detective Woods and an unknown detective. The group tried to persuade the Plaintiff to accept an offer of three-to-seven years imprisonment, to avoid federal prosecution. Plaintiff ultimately refused to plead guilty.

48. On December 20, 2012, Judge Wittner expressed her disappointment that Plaintiff refused to plead guilty, after suggesting that she arranged the "reverse proffer."

49. On January 29, 2013, Plaintiff was transfered to Federal Custody to be arraigned on a two count indictment for sex trafficking by force, fraud or coercion.

F. Malpractice and Unjust Enrichment:

50. Mr. Hardy and Mr. Barry have a history of selling or releasing unauthorized information about their clients' cases to the media, for the purpose of financial gain and promoting their professional practices.

51. On December 3, 2012, Mr. Hardy arranged a meeting with reporter Mario Diaz and made several unauthorized statements. He later appeared on a PIX-11 News program discussing Plaintiff's case without his permission. Mr. Hardy currently publishes details of Plaintiff's case, and other cases he presented to the media, on his company website (ghardyesq.com).

52. On or about December 19, 2012, Mr. Hardy arranged a meeting with another reporter to discuss his client Anthony Rodriguez' case and appeared on a PIX-11 News program. It was unknown if Mr. Barry was involved in this matter.

G. Gross Negligence and Emotional Distress:

53. The defendants deliberate and grossly negligent acts and omissions, independently and collectively, caused the Plaintiff to suffer emotion distress from false arrest, public disclosure of personal matters, searches of the body, home and office, over one year of oppressive confinement, loss of employment, loss of consortium, public scrutiny in the media and successive prosecution in federal court.

6

H. Racial Prejudice:

54. Upon review of records from the N.Y. Division of Criminal Justice Services, DANY and other N.Y. prosecutors, past and present, have maintained a racist policy of referring Black "pimps" for federal prosecution (where associated offenses are more serious) or charging more serious charges (i.e., N.Y. Penal Law §§ 230.30, 230.33 or 230.34); while defendants of other races, under similar circumstances, face less serious charges. Black male defendants, with White or Caucasian prostitutes in particular, are more likely to face the most severe disposition.

55. Upon review of Judge Wittner's judicial record, she has ruled least favorably of Black male defendants, versus defendants of other races, under similar circumstances. Black male defendants, with Caucasian victims in particular, are more likely to face the most severe disposition in her court.

56. Mr. Hardy and Mr. Barry have exercized racial prejudice by deliberately releasing unauthorized information to the media about their Black and Hispanic clients, while not exercising the same judgment for their White or Caucasian clients.

57. Upon review of Mr. Hardy's legal representation, he has represented Black defendants less favorably than defendants of other races. Additionally, Mr. Hardy previously made comments that had racist overtones:

a. Prior to attending the aforementioned "reverse proffer," Mr. Hardy called the Plaintiff a "baboon" and an "idiot" for initially refusing to meet with the U.S. Attorney; then stated in substance: "you think you are so smart ... you deserve whatever happens to you if your case goes federal."

b. During a conversation with Plaintiff's father in reference to numerous delays, Mr. Hardy stated in substance: "you people always complain but are always broke ... you want your son out, you can bail him out."

58. Collectively, the defendants' decision to violate the Plaintiff's rights to due process and a fair trial was motivated by Plaintiff being a Black "pimp" that associated with White and Caucasian prostitutes.

7

CIVIL RIGHTS VIOLATIONS

59. Plaintiff repeats as if fully set forth here the allegations in Paragraphs 1 through 58, above. For COUNTS I through V, the defendants are liable for compensatory damages, punitive damages and costs pursuant to 42 U.S.C. §§ 1983, 1985 and 1988(b).

## COUNT I
### (Privacy)

60. In or around August 2011 through February 2012, in the Southern District of New York, and elsewhere, defendant HONORABLE BONNIE G. WITTNER, J.S.C., acting in the clear absence of all jurisdiction, independently and collectively with, CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, in their individual and official capacity as public officers of defendant CITY OF NEW YORK, acting under the color of state law, knowingly violated Plaintiff ROYCE CORLEY's first and fourth amendment rights to privacy via the fourteenth amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983, by intentionally accessing, intercepting or disclosing Plaintiff's personal information, communications and financial records, which Plaintiff had a reasonable expectation of privacy, or willfully aided, abetted, counseled, commanded and induced the acts thereof, which resulted in Plaintiff's unlawful arrest, imprisonment, invasion of privacy, loss of employment and emotional distress. To wit: Judge Wittner and DANY established a quasi-grand jury in violation of N.Y. Crim. Proc. Law articles 10, 190, etc., and did unlawfully obtain Plaintiff's records without the required authority.

## COUNT II
### (Outrageous Government Conduct)

61. In or around August 2011 through January 2012, in the Southern District of New York, and elsewhere, defendant HONORABLE BONNIE G. WITTNER, J.S.C., acting in the clear absence of all jurisdiction, independently and collectively with, CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, in their individual and official capacity as public officers of defendant CITY OF NEW YORK, acting under the color of state law, knowingly violated and conspired to violate Plaintiff ROYCE CORLEY's substantive due process rights under the fourteenth amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983, through engaging in outrageous government conduct by promoting prostitution under N.Y. Penal Law § 230.25(2), sex trafficking under N.Y. Penal Law § 230.34(5)(g) and other unlawful acts, and willfully aided, abetted, counseled, commanded or induced the acts thereof, which resulted in Plaintiff's arrest, imprisonment, invasion of privacy, loss of employment and emotional distress. To wit: Judge Wittner and DANY coerced E.S.W. a/k/a "Minna" to engage in prostitution activity, by abusing their position as a public servant, with the intent of facilitating an investigation and surveillance of the Plaintiff.

COUNT III
(Speedy Trial)

62. In or around January 2012 through December 2012, in the Southern District of New York, and elsewhere, defendant GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C., collectively with, CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, in their individual and official capacity as public officers of defendant CITY OF NEW YORK, acting under the color of state law, knowingly violated and conspired to violate Plaintiff ROYCE CORLEY's sixth amendment rights via the fourteenth amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983, by instituting or maintaining a malicious prosecution and intentionally delaying to dismiss the case after Plaintiff asserted his right to a speedy trial, and willfully aided, abetted, counseled, commanded or induced the acts thereof, which resulted in the Plaintiff suffering over 215 days of unlawful incarceration and emotional distress. To wit: Mr. Hardy knowingly agreed with DANY to delay speedy trial time for an unlawful purpose.

COUNT IV
Obstruction of Justice

63. In or around January 2012 through January 2013, in the Southern District of New York, and elsewhere, defendants MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ., GLENN F. HARDY, P.C. and HONORABLE BONNIE G. WITTNER, acting in the clear absence of all jurisdiction, collectively with, CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, in their individual and official capacity as public officers of defendant CITY OF NEW YORK, acting under the color of state law, knowingly violated and conspired to violate Plaintiff ROYCE CORLEY's fifth and sixth amendment rights to due process and a fair trial via the fourteenth amendment of the U.S. Constitution pursuant to 42 U.S.C. §§ 1983, 1985(2) and 1985(3), with racially-biased animus, by willfully presenting facts of Plaintiff's case to the media with the intent of compelling the Plaintiff to plead guilty and enticing the federal government to accept jurisdiction, and willfully aided, abetted, counseled, commanded or induced the acts thereof, which resulted in Plaintiff suffering public scrutiny in the media, vindictive prosecution and emotional distress. To wit: Judge Wittner, DANY and Mr. Hardy employed Mr. Barry to publicize Plaintiff's case with the unlawful intent of intimidating the Plaintiff to influence the disposition of the case, or any future criminal or civil federal case.

COUNT V
Equal Protection

64. In or around January 2012 through January 2013, in the Southern District of New York, and elsewhere, defendants CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, in their individual and official capacity as public officers of defendant CITY OF NEW YORK, acting under the color of state law, knowingly violated Plaintiff ROYCE CORLEY's substantive due process and equal protection rights under the thirteenth and fourteenth amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983 and 1985(3), by willfully referring Plaintiff's case for federal prosecution based on racially-biased animus, resulting in Plaintiff's vindictive federal prosecution, extended imprisonment and emotional distress. To wit: DANY maintained a policy of referring Black defendants for federal prosecution, while defendants of other races faced less severe consequences, and did exercized such policy against the Plaintiff.

NEW YORK LAWS

65. Plaintiff repeats as if fully set forth here the allegations in Paragraphs 1 through 64, above. For COUNTS VI through X, the defendants are liable for compensatory damages, punitive damages and costs pursuant New York law.

## COUNT VI
### (Negligent Infliction of Emotional Distress)

66. In or around January 2012 through January 2013, in the Southern District of New York, and elsewhere, defendants MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ., GLENN F. HARDY, P.C. and HONORABLE BONNIE G. WITTNER, acting in the clear absence of all jurisdiction, collectively with, CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE, in their individual capacity acting outside the scope of their duties as public officers, knowingly and willfully committed negligent acts or omissions, which resulted in Plaintiff ROYCE CORLEY's severe emotional distress due to false arrest, over one year of imprisonment, loss of employment, loss of consortium, invasion of privacy, vindictive prosecution and public scrutiny in the media.

## COUNT VII
### (Malpractice)

67. In or around January 2012 through January 2013, in the Southern District of New York, and elsewhere, defendants MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C., in an attorney-client relationship with Plaintiff ROYCE CORLEY, owing the duty of attorney-client privilege and confidentiality, knowingly and willfully departed from the accepted standards of legal and professional practice, by failing to protect Plaintiff's sixth amendment rights to a fair and speedy trial and releasing unauthorized information to the media for an unlawful purpose, which resulted in Plaintiff's successive federal prosecution, extended imprisonment and emotional distress.

## COUNT VIII
### (Unjust Enrichment)

68. In or around October 2012 through December 2012, in the Southern District of New York, and elsewhere, defendants MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C., knowingly and willfully enriched themselves at Plaintiff ROYCE CORLEY's expense, by unlawfully releasing or selling Plaintiff's case to the media for the purpose of financial gain and promoting their professional practice.

## COUNT IX
### (Fraud)

69. In or around October 2012 through December 2012, in the Southern District of New York, and elsewhere, defendants MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C., knowingly and willfully made material misrepresentations of fact, with knowledge of their deception, with intent to defraud Plaintiff ROYCE CORLEY, whom reasonably relied on defendants' oath of confidentiality, which resulted in Plaintiff's successive federal prosecution, extended imprisonment and emotional distress.

COUNT X
(Deceptive Business Practices)

70. In or around January 2012 through January 2013, in the Southern District of New York, and elsewhere, defendants MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C., knowingly and willfully released Plaintiff ROYCE CORLEY's information to the media, which was outside the scope of the business they were hired for, in violation of N.Y. Gen. Bus. Law § 349, resulting in Plaintiff's successive federal prosecution, extended imprisonment and emotional distress.

11

PRAYERS

WHEREFORE, Plaintiff ROYCE CORLEY, acting pro se, requests that this Court render judgment against the defendants for--

A. Compensatory damages and statutory damages, where applicable, pursuant to the Civil Rights Act and New York law, in the sum to be shown at trial, but in no event less than the following for each defendant: (i) $2,000,000 against HONORABLE BONNIE G. WITTNER, J.S.C.; (ii) $500,000 against MICHAEL J. BARRY and PORTS & FILES, INC.; (iii) $1,000,000 against GLENN F. HARDY, ESQ. and GLENN F. HARDY, P.C.; (iv) $1,000.000 against CYRUS R. VANCE, JR.; (v) $250,000 against JOHN TEMPLE, DAVID STUART, GREG WEISS and JOHN DOE; (vi) $3,000,000 against the CITY OF NEW YORK;

B. Punitive damages, in the sum to be shown at trial, to punish each liable defendant and to discourage any further intentional wrongful acts and constitutional violations;

C. Injunctive relief, compelling defendants MICHAEL J. BARRY and PORTS & FILES, INC. to release all records and information obtained while working for the Plaintiff ROYCE CORLEY.

D. Declaratory relief, declaring: (i) the practice of state and local prosecutors referring prosecutions to federal jurisdiction upon the basis of race or sex as unconstitutional; (ii) the practice of criminal defense lawyers and defense-staff releasing unauthorized information to the media as unconstitutional.

E. Including any pre- and post-judgment interest allowed by law; and

F. Awarding of costs of suit; and whatever relief deemed just and proper.

DATED: November 25, 2015
       Danbury, CT

_____
P L A I N T I F F
Royce Corley, pro se
Reg. No. 68011-054
Federal Correctional Institution
33 1/2 Pembroke Road
Danbury, CT 06811-3099
(203) 743-6471

RECEIVED
SDNY PRO SE OFFICE
2015 DEC -9 AM 10: 15

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
ROYCE CORLEY

**(b)** County of Residence of First Listed Plaintiff  FAIRFIELD, CT
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
PRO SE

### DEFENDANTS
HON. BONNIE G. WITTNER, J.S.C., ET AL.

County of Residence of First Listed Defendant  NEW YORK, NY
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
GLENN F. HARDY, P.C.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / PERSONAL PROPERTY / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | IMMIGRATION | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☒ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. § 1983, 1985(2), 1985(3)
Brief description of cause:
CIVIL RIGHTS AND STATE TORTS

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 10,000,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE KPF   DOCKET NUMBER 15 CIV. 1800

DATE NOVEMBER 25, 2015
SIGNATURE OF ATTORNEY OF RECORD   PRO SE

FOR OFFICE USE ONLY
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

[Print] [Save As...] [Export as PDF] [Retrieve PDF File] [Reset]

© 2008 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

68011054



RECEIVED
SDNY PRO SE OFFICE
2015 DEC -9 AM 10:15

68011-054
Court Clerk
U.S. District Court
Southern District of New York
500 Pearl Street
NEW YORK, NY 10007
United States

68011-054
Royce Corley
Reg. No. 68011-054
Federal Correctional Institution
33 1/2 Pembroke Road
Danbury, CT 06811-3099
United States

LEGAL MAIL

USM SDNY