**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROYCE CORLEY                                    Plaintiff,

                            -against-

HONORABLE BONNIE G. WITTNER, J.S.C.; MICHAEL J. BARRY; PORTS &
FILES, INC.; GLENN F. HARDY, ESQ.; GLENN F. HARDY, P.C.; CYRUS R.
VANCE, JR.; JOHN TEMPLE; DAVID STUART; GREG WEISS; JOHN DOE;
AND THE CITY OF NEW YORK

            Defendants.

**MEMORANDUM OF LAW FOR DEFENDANTS DA CYRUS
R.  VANCE,  JR.,  ASSISTANT  DISTRICT  ATTORNEYS
JOHN TEMPLE, DAVID STUART AND GREG WEISS**

**2015 CV 9621 (JGK)**

CYRUS R. VANCE, JR.
District Attorney
New York County
Attorney for Respondent
One Hogan Place
New York, New York 10013
(212) 335-9000

CHRISTINA ANTE
Assistant District Attorney
Of Counsel

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

STANDARD OF REVIEW .........................................................................................................2

FACTUAL BACKGROUND .......................................................................................................4

ARGUMENT ...............................................................................................................................7

    I.      The Complaint Fails to Allege a Viable Claim for Which Relief Can be Granted ...........7

    II.     All Official-Capacity Claims Against the DA Defendants are Barred by the Eleventh ..... Amendment .......................................................................................................................11

    III.    All Individual-Capacity Claims Against the DA Defendants are Barred by Absolute Prosecutorial Immunity....................................................................................................11

    IV.    The Complaint Fails to Allege Personal Involvement by the DA Defendants ................14

    V.     Plaintiff's Conviction Bars Most of His Claims ............................................................16

    VI.    Plaintiff's Substantive Due Process Claims Must Be Dismissed ...................................19

    VII.   Plaintiff Fails to Allege Outrageous Government Conduct in his Second Cause of Action ..............................................................................................................................20

    VIII.  Alleged Pre-Trial Publicity Did Not Deprive Plaintiff of a Fair Trial............................22

    IX.    Plaintiff's Equal Protection Claim Must Be Dismissed...................................................23

    X.     Plaintiff Has No Actionable Negligence Claim...............................................................25

    XI.    Several of Plaintiff's Claims Are Time-Barred................................................................25

    CONCLUSION ..................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver,*
   510 U.S. 266 (1994)................................................................................20

*Allen v. City of New York,*
   12 CV 4961 (KAM), 2014 U.S. Dist. LEXIS 120347 (E.D.N.Y. Aug. 27, 2014)...........18

*Anderson v. City of New York,*
   817 F. Supp. 2d 77 (E.D.N.Y. 2011)............................................... 24, 25

*Arizonans for Official English v. Arizona,*
   520 U.S. 43 (1997)................................................................................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..............................................................................2

*Barnes v. City of New York,*
   13 Civ. 7283 (JLC), 2015 U.S. Dist. LEXIS 87007 (S.D.N.Y. July 2, 2015)...................19

*Barr v. Abrams,*
   810 F.2d 358 (2d Cir. 1987)...................................................................12

*Barr v. County of Albany,*
   50 N.Y.2d 247 (1980) ..........................................................................15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955 (2007)........................................................2

*Bernard v. County of Suffolk,*
   356 F.3d 495 (2d Cir. 2004) ........................................................... 12, 13

*Bernard v. United States,*
   25 F.3d 98 (2d Cir. N.Y. 1994)...............................................................25

*Bertuglia v. City of New York,*
   133 F. Supp. 3d 608 (S.D.N.Y. 2015) (Koeltl, J.) ......................................13

*Black v. Coughlin,*
   76 F.3d 72 (2d Cir. 1996) .....................................................................14

*Blackledge v. Perry,*
   417 U.S. 21 (1974)..............................................................................23

*Bogle v. Melamed*,
09 CV 1017 (RJD), 2012 U.S. Dist. LEXIS 47068 (E.D.N.Y. Mar. 30, 2012) ...............................17

*Bordenkircher v. Hayes*,
434 U.S. 357 (1978)................................................................................................................23

*Bowers v. Kelly*,
13 Civ. 06265 (LGS), 2015 U.S. Dist. LEXIS 58219 (S.DN.Y., May 4, 2015) ........................ 17, 19

*Buckley v. Fitzsimmons*,
509 U.S. 259 (1993)................................................................................................................12

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .....................................................................................................3

*Coakley v. Jaffee*,
49 F. Supp.2d 615 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000) ...........................12

*Connolly v. McCall*,
254 F.3d 36 (2d Cir. 2001) .......................................................................................................26

*Cooper v. Parsky*,
140 F.3d 433 (2d Cir. 1998)................................................................................................3, 10

*Covington v. City of New York*,
171 F.3d 117 (2d Cir. 1999) .....................................................................................................26

*Daniels v. Williams*,
474 U.S. 327 (1986).........................................................................................................22, 25

*Davis v. New York*,
90 Civ. 6170 (MBM), 2003 U.S. Dist. LEXIS 5352 (S.D.N.Y. Apr. 2, 2003), *aff'd*,
2004 U.S. App. LEXIS 12389 (2d Cir. June 21, 2004) ............................................................18

*Day v. Morgenthau*,
909 F.2d 75 (2d Cir. 1990) .......................................................................................................12

*Denton v. Hernandez*,
504 U.S. 25 (1992)...............................................................................................................3, 10

*Dory v. Ryan*,
25 F.3d 81 (2d Cir. 1994) ...................................................................................................12, 14

*Du Chateau v. Metro-North Commuter R.R. Co.*,
253 A.D.2d 128 (1st Dept. 1999)..............................................................................................14

*Duamutef v. Morris*,
956 F. Supp. 1112 (S.D.N.Y. Jan. 30, 1997) (Sotomayor, Sonia, J.) ....................................18

*Ellsworth v. City of Gloversville*,
    269 A.D.2d 654 (3d Dept. 2000) ...........................................................................25

*Erickson v. Pardus*,
    551 U.S. 89, 127 S. Ct. 2197 (2007) ........................................................................2

*Farrell v. Burke*,
    449 F.3d 470 (2d Cir. 2006) ..................................................................................14

*Foutain v. City of White Plains*,
    13 Civ. 7016 (LTS), 2015 U.S. Dist. LEXIS 127456 (S.D.N.Y. Sept. 23, 2015)..............3

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009) .......................................................................................2

*Heck v. Humphrey*,
    512 U. S. 477 (1994).............................................................................................17

*Holbrook v. Flynn*,
    475 U.S. 560 (1986)..............................................................................................18

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) .........................................................................................12, 14

*Jasper v. Fourth Court of Appeals*,
    08 Civ. 7472 (LAP), 2009 U.S. Dist. LEXIS 41620 (S.D.N.Y. May 18, 2009) ...............18

*Jennis v. Rood*,
    488 F. Supp. 2d 172 (N.D.N.Y. 2007) .....................................................................24

*Jewell v. County of Nassau*,
    917 F.2d 738 (2d Cir. 1990) ..................................................................................25

*Jocks v. Tavernier*,
    316 F.3d 128 (2d Cir. 2003) ..................................................................................19

*Johnson v. Kings County District Attorney's Office*,
    308 A.D.2d 278 (2d Dept. 2003) ............................................................................25

*Jovanovic v. City of New York*,
    04 Civ. 8437 (PAC), 2010 U. S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010)............22

*Kentucky v. Graham*,
    473 U.S. 159 (1985)..............................................................................................11

*La Mar v. Greece*,
    97 A.D.2d 955 (4th Dept. 1983) .............................................................................25

*Labensky v. County of Nassau,*
   6 F. Supp. 2d 161 (E.D.N.Y., March 11, 1998) ................................................................21

*LaFleur v. Whitman,*
   300 F.3d 256 (2d Cir. 2002) ................................................................................................3

*Lauer v. City of New York,*
   95 N.Y.2d 95 (2000) ..........................................................................................................25

*Magnotta v. Putnam County,*
   13 Civ. 2752 (GBD)(GWG), 2014 U.S. Dist. LEXIS 25361 (S.D.N.Y., Feb. 24,
   2014) ...................................................................................................................... 3, 17, 19

*Mangiafico v. Blumenthal,*
   471 F.3d 391 (2d Cir. 2006) ................................................................................................3

*Mark G. v. Sabol,*
   247 A.D.2d 15 (1st Dept. 1998) ........................................................................................25

*Monell v. Department of Social Servs.,*
   436 U.S. 658 (1978) ...........................................................................................................16

*Ormiston v. Nelson,*
   117 F.3d 69 (2d Cir. 1997) ................................................................................................26

*Owens v. Okure,*
   488 U.S. 235 (1989) ...........................................................................................................25

*Pandolfo v. U.A. Cable Sys. of Watertown,*
   171 A.D.2d 1013 (4th Dept. 1991) ...................................................................................25

*Patterson v. County of Oneida,*
   375 F.3d 206 (2d Cir. 2004) ..............................................................................................16

*Penhurst State Schools & Hosp. v. Halderman,*
   465 U.S. 89 (1984) .............................................................................................................11

*Perez v. Cuomo,*
   09 CV 1109 (SLT), 2009 U.S. Dist. LEXIS 33290 (E.D.N.Y. Apr. 20, 2009) ................18

*Pinaud v. County of Suffolk,*
   52 F.3d 1139 (2d Cir. 1995) ...................................................................................... 12, 14

*Poventud v. City of New York,*
   750 F.3d 121 (2d Cir. 2014) .....................................................................................18, n. 3

*Pyke v. Cuomo,*
   258 F.3d 107 (2d Cir. 2001) ..............................................................................................24

*Ramos v. City of New York*,
   285 A.D.2d 284 (1st Dept. 2001).................................................................25

*Robison v. Via*,
   821 F.2d 913 (2d Cir. 1987).....................................................................12

*Rodrigues v. City of New York*,
   193 A.D.2d 79 (1st Dept. 1993).................................................................12

*Rodriguez v. Weprin*,
   116 F.3d. 62 (2d Cir. 1997).....................................................................11

*Roper v. Hynes*,
   05 Civ. 7664 (WHP), 2006 U.S. Dist. LEXIS 69128 (S.D.N.Y., September 27,
   2006)..............................................................................................13

*Santangelo v. State*,
   101 A.D.2d 20 (4th Dept. 1984).................................................................12

*Shmueli v. City of New York.*,
   424 F.3d 231 (2d Cir. 2005).....................................................................14

*Shmueli v. New York City Police Dept.*,
   295 A.D.2d 271 (1st Dept. 2002).................................................................16

*Sutton v. United Air Lines, Inc.*,
   527 U.S. 471 (1999)...............................................................................2

*Thompson v. Delvalle*,
   07 Civ. 4691 (BSJ), 2010 U.S. Dist. LEXIS 61459 (S.D.N.Y. June 21, 2010)..................17

*Triestman v. Fed. Bureau of Prisons*,
   470 F.3d 471 (2d Cir.2006).......................................................................2

*Tucker v. City of New York*,
   184 Misc.2d 491 (Sup. Ct., N.Y. Co. 2000).....................................................15

*Tyler v. Carter*,
   151 F.R.D. 537 (S.D.N.Y. 1993), *aff'd*, 41 F.3d 1500 (2d Cir. 1994)......................10

*United States v. Al Kassar*,
   660 F.3d 108 (2d Cir. 2011)...............................................................21, 22

*United States v. Berrios*,
   501 F.2d 1207 (2d Cir. 1974).....................................................................24

*United States v. Cromitie, et. al.*,
   727 F.3d 194 (2d Cir. 2013).....................................................................21

*United States v. Moon,*
  718 F.2d 1210 (2d Cir. 1983) .................................................................................23

*United States v. Sanchez,*
  517 F.3d 651 (2d Cir. 2008) ...................................................................................23

*United States v. Schmidt,*
  105 F.3d 82 (2d Cir. 1997) .....................................................................................21

*Velez v. Levy,*
  401 F.3d 75 (2d Cir. 2005) ............................................................................... 20, 21

*Vincent v. Money Store,*
  915 F. Supp. 2d 553 (S.D.N.Y. 2013) .....................................................................26

*White v. United States,*
  95 Civ. 4432 (JSR), 1997 U.S. Dist. LEXIS 3743 (S.D.N.Y. Mar. 31, 1997).....................25

*Wilkinson v. Dotson,*
  544 U.S. 74 (2005) .................................................................................................17

*Will v. Michigan Dept. of State Police,*
  491 U.S. 58 (1989) .................................................................................................11

*Ying Jing Gan v. City of New York,*
  996 F.2d 522 (2d Cir. 1993) ...................................................................................11

**Statutes**

18 U.S.C. §1591(a)&(b) ...................................................................................................6

18 U.S. C. §2252A(a)(5)(B) .............................................................................................6

42 U.S.C. §§1983 and 1985 .................................................................................... 1, 7, 11

County Law §54 .............................................................................................................15

County Law §941 ...........................................................................................................15

General Municipal Law § 50-i .......................................................................................26

New York Penal Law §230.25(1) .....................................................................................5

New York Penal Law §230.25(2) ..................................................................................5, 8

New York Penal Law §230.34(5)(g) .................................................................................8

Public Officers Law §2...................................................................................................15

**Other Authorities**

CPLR § 3211(a)(7) ...................................................................................................................15

Fed. R. Civ. P. 8(a)(2) ...............................................................................................................2

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................................1, 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROYCE CORLEY                     Plaintiff,<br><br>                    -against-<br><br>HONORABLE BONNIE G. WITTNER, J.S.C.; MICHAEL J. BARRY; PORTS & FILES, INC.; GLENN F. HARDY, ESQ.; GLENN F. HARDY, P.C.; CYRUS R. VANCE, JR.; JOHN TEMPLE; DAVID STUART; GREG WEISS; JOHN DOE; AND THE CITY OF NEW YORK<br><br>                              Defendants. | 2015 CV 9621 (JGK)<br><br>MEMORANDUM OF LAW IN SUPPORT OF DISTRICT ATTORNEY DEFENDANTS' MOTION TO DISMISS |

Defendants New York County District Attorney Cyrus R. Vance, Jr., Assistant District Attorneys John Temple, David Stuart, Greg Weiss, and John Doe (collectively, "DA defendants") submit this Memorandum of Law in support of their motion for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the complaint, and for any other fair and equitable relief the Court may deem appropriate.

## PRELIMINARY STATEMENT

By this lawsuit brought pursuant to 42 U.S.C. §§1983 and 1985, plaintiff seeks money damages for allegedly unconstitutional and tortious activities in connection with a criminal prosecution which resulted in his conviction.  After a jury trial in the Southern District of New York, plaintiff was found guilty of three counts of Sex Trafficking of a Minor and one count of Possession of Child Pornography.  Plaintiff, through his complaint, seeks to hold the DA defendants liable in both their individual and official capacities for deprivation of rights under the U.S. Constitution and for negligent infliction of emotional distress under New York State law.  Even accepting the truth of plaintiff's

allegations for purposes of this motion, the complaint fails to state a viable claim against the DA defendants and should therefore be dismissed.

## STANDARD OF REVIEW

Under the "notice pleading" standard of Fed. R. Civ. P. 8(a)(2), a plaintiff is not required to advance every particular fact underlying his complaint to state a viable cause of action, so long as his pleading affords the defendants fair notice of the claims being made against them.  *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007).  However, for a complaint to survive a motion to dismiss, plaintiff must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"; rather, he must advance sufficient factual allegations that, taken as true, are "enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citation omitted).  A *pro se* litigant's complaint must also meet this plausibility standard, *see Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009), although the submissions of a pro se litigant should still be construed 'liberally' and interpreted so as to assert the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir.2006) (internal quotation marks omitted).

In passing on a motion to dismiss under Rule 12(b)(6), the inquiry is generally limited to testing the allegations of the complaint.[1] *See, e.g., Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 475 (1999).  That

---

[1]     In this pre-answer motion, the DA defendants are obliged to assume the truth of *factual* assertions made by plaintiff.  However, the DA defendants by no means concede the veracity of each and every of plaintiff's allegations.   Any failure to identify those contested statements in this memorandum is based solely on the procedural posture of the motion.

is, the court must generally assume the truth of plaintiff's factual allegations, but the court is not required to accept as true those allegations which are "fanciful," "fantastic," or "delusional," *Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (internal quotes and citation omitted), nor does the court need to accept legal conclusions couched as factual assertions.  *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) ("bald assertions and conclusions of law are insufficient" to survive a motion to dismiss).  The court may also consider those documents either incorporated by reference or relied upon by plaintiff, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006), as well as "matters of which judicial notice may be taken" in determining whether plaintiff has a valid cause of action.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotes and citation omitted).  And, of course, in a §1983 action the court may take judicial notice of official records pertaining to the underlying criminal prosecution.  *See generally LaFleur v. Whitman*, 300 F.3d 256, 267 n.1 (2d Cir. 2002) (court may take judicial notice of records filed in state court proceeding); *Foutain v. City of White Plains*, 13 Civ. 7016 (LTS), 2015 U.S. Dist. LEXIS 127456, at *10 (S.D.N.Y. Sept. 23, 2015) (taking judicial notice of plaintiff's convictions after a jury trial and a guilty plea as matters of public record and of a *Miranda* waiver which plaintiff referenced in his complaint); *Magnotta v. Putnam County*, 13 CV 2752 (GBG) (GWG), 2014 U.S. Dist. LEXIS 25361, at *10-11 (S.D.N.Y. Feb. 24, 2014) ( taking judicial notice of a copy of the True Bill of the indictment of plaintiff, minutes of plaintiff's guilty plea, and commitment form stating plaintiff's prior convictions and sentences), *adopted by*, 2014 U.S. Dist. LEXIS 53917 (S.D.N.Y. Apr. 17, 2014).[2]

---

[2]     The Declaration of ADA Christina Ante provides the following court documents: Exhibit A: Criminal Court Complaint; Exhibit B: New York County Indictment Number 423/2012; Exhibit C: Southern District of New York Indictment 13 CR 048; Exhibit D: Superseded Indictment 13 CR 048; Exhibit E: Recommendation of Dismissal; Exhibit F: Pre-Trial Transcript, February 7, 2013, 13 CR 048; Exhibit G: Judgment, 13 CR 048.

## FACTUAL BACKGROUND

Plaintiff alleges that from 2007 to January 2011, under "the nom de guerre 'Ron Iron'" he provided "advertising and web development services to escort, therapeutic and adult-oriented businesses" (Complaint ["C"] ¶12).   Allegedly, the DA defendants launched an investigation into Plaintiff's "business activities" after: a) receiving "material information" about Plaintiff from an informant named Jeffrey Whyte  in November 2009 ;  b) being told in August 2011 by an informant named Nathaniel Jackson, who had been arrested, that Plaintiff "pimp[ed] and physically assault[ed]" Jackson's girlfriend "Minna;"  and c) exploring Plaintiff's "associations" with "Minna," her girlfriend "Phebe," and a female named "Janel" (C ¶¶13-16).

Pursuant to the investigation, Plaintiff contends that the DA defendants acted in concert with defendant Supreme Court Justice Bonnie J. Wittner to "unlawfully establish a quasi-grand jury to issue subpoenas, court orders, etc. with the intent to illegally obtain" Plaintiff's "personal electronic communications, bank records, phone records and conversations, etc." (C ¶17).

Additionally, the DA defendants allegedly "solicited" Justice Wittner "to coerce and entice Minna to engage in prostitution, with the intent to fraudulently obtain search warrants and manufacture a sting operation against [plaintiff]"  (C ¶18).  As part of the "sting operation," Plaintiff claims that the DA defendants "requested the assistance" of a Detective Mark Woods to "prepare" Minna for "an undercover operation." (C ¶20).  According to Plaintiff, Detective Woods contacted Janel for a "date" with "two girls" for "his birthday" (C ¶21).  Allegedly, "members of DANY or the NYPD" then transported Minna on January 12, 2012, to an apartment where she, but not Janel, offered sexual acts to undercover Detective Giancarlo Cavallo for money (C ¶23).  Plaintiff was subsequently arrested on January 25, 2012 by Detective Woods, although allegedly "the authority for such arrest was unknown" (C ¶25).  Plaintiff contends that a criminal court complaint was then "drafted" by Detective Woods and "signed" by Assistant District Attorney David Stuart (C ¶25).

4

A criminal court complaint was drawn up by ADA Stuart on January 25, 2012 and signed by Detective Mark Woods.  The criminal complaint charged Plaintiff with two counts of Promoting Prostitution in the Third Degree, which included the prostitution of a person younger than 19 years old under New York Penal Law §230.25(2).  Ante Decl. at Exh. A.  The basis for the complaint was that on January 12, 2012, an undercover detective, through an online Backpage.com advertisement, met two 17 year old girls.  *Id.*  One girl offered oral sex in exchange for money and the other sexual intercourse for money.  *Id.*  The online advertisement was paid by Plaintiff's credit card and was posted by his IP address.  *Id.*

Plaintiff states that on January 26, 2012, he was indicted by a Grand Jury on two counts of Promoting Prostitution under Penal Law §230.25(1) and (2) and was "committed to custody" on $25, 000 bail after his arraignment by defendant Judge Wittner (C ¶¶26,28).  Court records reflect that a New York County Grand Jury in New York County indicted Plaintiff for one count of Promoting Prostitution in the Third Degree under New York Penal Law §230.25(1) and one count of Promoting Prostitution in the Third Degree under New York Penal Law §230.25(2).  Ante Decl. at Exh. B.

Plaintiff asserts that Judge Wittner and the DA defendants "engaged in fraud or other acts to circumvent established procedures" to have Judge Wittner assigned to his case (C ¶27).  As his case was pending, Plaintiff alleges that the DA defendants and Judge Wittner provided his defense counsel, Glenn Hardy (also named as a defendant), with "favorable dispositions" for his clients in other criminal matters "or something else of value" to induce Hardy to "acquiesce" to tolling speedy trial time in Plaintiff's case, thereby resulting in Plaintiff's "unlawful incarceration" (C ¶¶ 29-35).

Plaintiff alleges that the DA defendants used the tolled speedy trial time "to convince the U.S. Attorney to accept the case" and "solicited" defendant Judge Wittner "to convince" the "U.S. Attorney to prosecute" Plaintiff (C ¶¶ 34, 39).  Plaintiff also claims that the DA defendants and Judge Wittner "motivated" Hardy to hire a private investigator, Michael Barry (also a defendant), "with the

intent of enticing the U.S. Attorney to take the case" (C ¶41).  Allegedly, defendant Barry "sold the story of Plaintiff's case to the media" which resulted in a newspaper article and a news broadcast that Plaintiff had "pimped out" two seventeen year old girls (C ¶43).  Plaintiff complains that actually "only one" of the prostitutes "was recorded as being" seventeen years old (C ¶¶43-45).

According to Plaintiff, the DA defendants, a federal prosecutor, Hardy, and Detective Woods had a meeting with Plaintiff to attempt to "persuade" him to accept an offer of three-to-seven years imprisonment "to avoid federal prosecution" (C ¶47).  Plaintiff states that he rejected the offer and on January 29, 2013, Plaintiff was transferred to Federal Custody to be arraigned on a "two count indictment for sex trafficking by force, fraud or coercion" (C ¶¶47, 49).  Several days earlier, on January 22, 2013, an indictment was filed in the United States District Court for the Southern District of New York charging Plaintiff with two counts of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591.  Ante Decl. at Exh. C.  This indictment was subsequently superseded on October 10, 2013, charging Plaintiff with three counts of Sex Trafficking of a Minor under 18 U.S.C. §1591(a)&(b) and one count of Possession of Child Pornography under 18 U.S. C. §2252A(a)(5)(B).  Ante Decl. at Exh. D.

Plaintiff claims that on February 1, 2013, after federal prosecutors took over the state case, the DA defendants "dismissed all charges" against him, "thus terminating the proceeding in [his] favor" (C ¶33).  While Assistant District Attorney Gregory Weiss ("ADA Weiss") filed with the Supreme Court of New York County a Dismissal Upon Recommendation on February 21, 2013, dismissal was based upon the fact that the U.S. Attorney's Office for the Southern District of New York had filed an indictment against Plaintiff that included the New York County charges.  Ante Decl. at Exh. E.  Since any further proceedings on the New York County Indictment would be barred by a resolution of the federal indictment and because the sentencing range on the federal charges was a

minimum of ten years and maximum of life imprisonment, ADA Weiss dismissed the indictment against Plaintiff.  *Id.*.

Assistant United States Attorney Amanda Kramer appeared before Judge John Koeltl for a pre-trial conference on February 7, 2013.  She stated that Plaintiff was "relocated from the State on January 29, 2013," that she was "working with the DA's office in Manhattan who originally had this case to gather . . . a significant volume of discovery" and that there were no state charges pending anymore because "the state . . . dismissed their case once Mr. Corley was indicted federally."  Ante Decl. at Exh. F, p. 2-3.  On January 25, 2012, Plaintiff was convicted after a jury trial of three counts of Sex Trafficking of a Minor and one count of Possession of Child Pornography.  Ante Decl. at Exh. G.

Plaintiff alleges that the DA defendants maintain "a racist policy" of referring "Black 'pimps'" for federal prosecution on more "serious charges" than criminal defendants of other races, and that "black male defendants, with White or Caucasian prostitutes in particular, are more likely to face the most severe disposition" (C ¶54).  In short, even though the DA defendants' prosecution of Plaintiff for prostituting minor girls resulted in his conviction in the Southern District of New York, Plaintiff nevertheless complains that the DA defendants, along with a New York Supreme Court Justice, a defense attorney, and a private defense investigator, violated his constitutional rights because of racism.

## **ARGUMENT**

### I.     **The Complaint Fails to Allege a Viable Claim for Which Relief Can be Granted**

Pursuant to 42 U.S.C. §§ 1983 and 1985, and under New York State Law, plaintiff alleges that the DA defendants engaged in unconstitutional conduct as part of the criminal prosecution upon which he was convicted and sentenced. Under plaintiff's first, second, third, fourth, and fifth causes

of action (federal claims), he asserts claims of unlawful arrest, false imprisonment, invasion of privacy, and violations of substantive due process, speedy trial, fair trial, and equal protection rights.  He further claims negligent infliction of emotional distress as a state claim.  Plaintiff fails to allege any factual conduct that the DA defendants engaged in which would entitle Plaintiff to any relief.  Rather, Plaintiff resorts to bald allegations.

In the first cause of action, Plaintiff asserts that the DA defendants "established a quasi-grand jury" to obtain "personal information" in which he had a "reasonable expectation of privacy" (C ¶60).  Plaintiff fails to allege what is a "Quasi Grand Jury," the difference between a Grand Jury and a "Quasi Grand Jury," how the "Quasi Grand Jury" violated the laws of New York governing Grand Juries, and what was the "personal information" that he had a reasonable expectation of privacy in.

Likewise, in the second cause of action, Plaintiff accuses the DA defendants of "promoting prostitution" and "sex trafficking" in violation of Penal Law §§230.25(2) and 230.34(5)(g) by "coerc[ing]" a girl named "Mina" to "engage in prostitution activity" so to "facilitate[e] an investigation and surveillance of the Plaintiff" (C ¶61).  Plaintiff fails to allege what the "prostitution activity" and "sex trafficking" was and how it caused the violation of his substantive due process rights.  Indeed, Plaintiff only alleges that the underage girl "Mina" knowingly took part in an undercover operation where she offered sexual acts for money to an undercover detective posing as a customer (C ¶¶20-24).  These factual allegations do not make out any violation of the Penal Law since Plaintiff claims that the actions were part of an undercover operation.  Undercover operations using informants do not constitute crimes due to the lack of a criminal mens rea.  Furthermore, glaringly absent from the allegations is how any of this is at all relevant to Plaintiff and how the alleged "prostitution of Mina" by the DA defendants and a Supreme Court Justice caused Plaintiff's

substantive due process rights to be violated.  Plaintiff goes to great length describing an alleged undercover operation but fails to link how he was the target.

Next, in the third cause of action, Plaintiff alleges that his attorney Glenn Hardy "agreed" with the DA defendants to delay speedy trial time for an "unlawful purpose" where both the DA defendant and Judge Wittner "provided" Hardy "with favorable dispositions" on other criminal cases "or something else of value" (C: ¶¶34, 62).  Except for a wild blanket accusation, Plaintiff does not cite to which cases Hardy was allegedly given "favorable dispositions" or what the "something else of value" was.  Plaintiff substitutes rank speculation and naked accusations for factual assertions.

Furthermore, Plaintiff asserts in the fourth cause of action that the DA defendants, along with Judge Wittner and Glenn Hardy "employed" private investigator Michael Barry to "present[] facts of Plaintiff's case to the media" so to "influence the disposition of the case, or any future criminal or civil federal case" (C: ¶ 63).  Plaintiff claims that the media reports allegedly orchestrated by the DA defendants, Judge Wittner, Glenn Hardy, and Michael Barry violated his rights to due process and a fair trial (C: ¶63).  Plaintiff further alleges that the DA defendants and Judge Wittner "motivated" Hardy to hire Barry (C: ¶41).  Plaintiff is at a loss to allege any facts as to how the DA defendants "employed" Barry, how they "motivated" Hardy to hire Barry to publicize the criminal case, as well as how the alleged media reports violated his rights to due process and a fair trial.  Notably, Plaintiff fails to assert any facts as to how forever more any "future criminal or civil cases" would be tainted by the alleged publicity.

Next, in the fifth cause of action, Plaintiff makes the bald assertion that the DA defendants "maintained a racist policy" of referring Black defendants who were "pimps" of "white or Caucasian" prostitutes, for federal prosecution on "more serious charges" and the "most severe disposition[s]" than  defendants "under similar circumstances" of other races who faced "less severe consequences" (C ¶¶54, 64).  Plaintiff allegedly arrived at his conclusion based "upon review of records from the N.Y.

Division of Criminal Justice Services" (C ¶54).   Once again, Plaintiff makes sweeping general conclusions without any factual basis.   Notably absent from the complaint are exhibits or citations from the New York Division Criminal Justice Services records, as well as from any Federal records, and from any underlying criminal court complaints of non-Black defendants in circumstances similar to Plaintiff's.   Plaintiff fails to provide even the number of cases both on the state and federal level and the time period covered for the alleged "racist policy" against Black pimps.   The complaint is utterly devoid of any facts which could remotely establish that Plaintiff was singled out for federal prosecution because of his race.

Lastly, Plaintiff makes the blanket assertion in the sixth cause of action that the DA defendants acted "outside the scope of their duties as public officers" to "knowingly and willfully commit[] negligent acts or omissions" (C ¶ 66).   Plaintiff neglects to factually allege what the "negligent acts or omissions" are.

Just as this Court is not bound to accept as true allegations that are "fanciful," "fantastic," or "delusional," *Denton*, 504 U.S. at 33 (internal quotes and citation omitted), the Court need not accept legal conclusions couched as factual assertions. *See Cooper*, 140 F.3d at 440 ("bald assertions and conclusions of law are insufficient" to survive a motion to dismiss).   Simply put, plaintiff's factually bald assertions are insufficient to withstand DA defendants' motion to dismiss.   Moreover, just as a court would not be required to accept as true allegations such as "the world is flat," or "the defendant is a Martian," *see, e.g., Tyler v. Carter*, 151 F.R.D. 537, 540 (S.D.N.Y. 1993) (plaintiff claimed that she was a cyborg), *aff'd*, 41 F.3d 1500 (2d Cir. 1994), this Court is not required to accept claims that are just as preposterous, e.g. the DA defendants created a "quasi Grand Jury," (C: ¶60), "promoted prostitution" and "sex trafficking" (C ¶61), bribed Glenn Hardy with "favorable dispositions on his other cases, or something else of value" (C ¶34), and referred Plaintiff, who prostituted minors and

was convicted, to the Southern District of New York, because of a "racist" policy. Such claims cannot be considered sufficiently plausible to withstand a motion to dismiss.

## II.    All Official-Capacity Claims Against the DA Defendants are Barred by the Eleventh Amendment

To the extent plaintiff's §§1983 and 1985 claims are brought against the DA Defendants in their official capacity, the law is clear that "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (internal quotes and citation omitted). The Eleventh Amendment divests this Court of subject matter jurisdiction over any claim for money damages against a state actor in his official capacity. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, any federal claim for damages against the DA Defendants in their official capacity is barred by the Eleventh Amendment. *Ying Jing Gan*, 996 F.2d at 529-530 (claims barred by Eleventh Amendment against Assistant District Attorney sued in his official capacity); *see also Rodriguez v. Weprin*, 116 F.3d 62 (2d Cir. 1997), *Penhurst State Schools & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984). Moreover, a state actor sued in his official capacity is not a "person" subject to liability under §1983, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), and this is the additional "stopper" to any such "official capacity" claim against the DA Defendants. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 & n.24, (1997).

## III.    All Individual-Capacity Claims Against the DA Defendants are Barred by Absolute Prosecutorial Immunity

Plaintiff's individual capacity claims against the DA defendants fair no better as they are barred by the doctrine of absolute prosecutorial immunity. A prosecutor enjoys absolute immunity for the "initiation and pursuit of a criminal prosecution" and for any acts taken in "presenting the

State's case at trial." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *see also Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). In other words, a state prosecutor enjoys absolute immunity when engaged in activities "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430; *see also Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990). The purpose of the immunity doctrine is to "preserve the integrity of the judicial process" and enable "zealous[] perform[ance of] prosecutorial duties" without the "constant threat of legal reprisals." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (internal quotations omitted). And, insofar as plaintiff is seeking relief under state law in his sixth cause of action, "[p]rosecutorial immunity is, if anything, even broader under New York state law than it is under federal law." *Coakley v. Jaffee*, 49 F. Supp.2d 615, 627 (S.D.N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000); *see also Rodrigues v. City of New York*, 193 A.D.2d 79, 87 (1st Dept. 1993) ("a prosecutor, as a quasi-judicial officer, is, with respect to State law claims, immune from civil suit for official acts performed in the investigation and prosecution of criminal charges"); *Santangelo v. State*, 101 A.D.2d 20, 23 (4th Dept. 1984) ("absolute immunity has been extended to . . . a District Attorney in his official actions in investigating and prosecuting crime").

All acts associated with the prosecutor's function as an advocate, "regardless of motivation" are protected from liability by absolute prosecutorial immunity. *Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994); *see also Bernard v. County of Suffolk,* 356 F.3d 495, 503 (2d Cir. 2004) (absolute prosecutorial immunity is not overcome by allegations that a prosecutor acted intentionally or maliciously). The nature of absolute immunity is such that it "accords protection from . . . any judicial scrutiny of the motive for and reasonableness of official action." *Robison v. Via*, 821 F.2d 913, 918 (2d Cir. 1987). "[In] the realm of absolute immunity . . . evaluation of motive and reasonableness is forbidden . . ." *Id.* at 920. Thus, for example, absolute immunity protects prosecutors who commence and continue prosecutions for the purposes of retaliation, *Barr v. Abrams*, 810 F.2d 358, 360-362 (2d Cir. 1987) or for political reasons.

*Bernard*, 356 F.3d at 504 ("the fact that improper motives may influence his authorized discretion cannot deprive him of absolute immunity").

With these principles as work, Plaintiff's first, third, and fifth causes of action fail, as the DA defendants are absolutely immune from liability.  The issuance of Grand Jury subpoenas and obtaining court orders, which forms the basis of Plaintiff's first cause of action, are fully protected prosecutorial acts.  *Bertuglia v. City of New York*, 133 F. Supp. 3d 608, 644-645 (S.D.N.Y. 2015) (Koeltl, J.); *see also Roper v. Hynes,* 05 Civ. 7664 (WHP), 2006 U.S. Dist. LEXIS 69128, *16 (S.D.N.Y., September 27, 2006).   Significantly, Plaintiff does not allege that the subpoenas were issued outside of a Grand Jury investigation.  Plaintiff acknowledges that subpoenas were issued during an open Grand Jury investigation, but makes the inexplicable allegation that the Grand Jury was actually a "Quasi Grand Jury" in violation of the New York Criminal Procedure Law (C ¶¶17, 60).  Without any factual allegations as to how the Grand Jury was improper, or how the subpoenas were defective, Plaintiff fails to state a claim since the very act of issuing Grand Jury subpoenas is part of the initiation of a criminal prosecution which is shielded from civil lawsuits.

Likewise, the alleged failure by the DA defendants to abide by statutory speedy trial time (third cause of action), and the DA defendants' dismissal of the indictment so as to refer the criminal case to federal prosecutors (fifth cause of action), are all prosecutorial functions protected by absolute immunity.  Rather, the Plaintiff's main gripe focuses on the motives of the DA defendants and not on the acts.  Thus, for example, Plaintiff alleges that the DA defendants somehow bribed his defense attorney to waive speedy trial time in order to have federal prosecutors take over the criminal case (C ¶¶34, 62).  Moreover, Plaintiff alleges that the dismissal of the state criminal case so that there could be a federal prosecution was racially motivated because Plaintiff is a Black male pimping white prostitutes (C ¶¶54, 64).  Regardless of alleged improper motivations, the handling of an indicted criminal case through to a disposition, including dismissal of the indictment, involves conduct

"intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. at 416, *see also Shmueli v. City of New York*, 424 F.3d 231, 238-239 (2d Cir. 2005)(absolute immunity for prosecutor who allegedly delayed criminal proceeding with the intent of harassment), *Pinaud*, 52 F.3d at 1148-1150 (absolute immunity for misrepresenting facts to increase bail, to encourage a plea agreement, and to create bail jumping charges), *Hill*, 45 F.3d at 660-662 (use of false evidence and withholding exculpatory evidence in the grand jury protected by absolute immunity), *Dory*, 25 F.3d at 81 (absolute immunity for coercing witnesses to commit perjury at trial and withholding exculpatory evidence from the defense).  As such, Plaintiff's first, third, and fifth causes of action are barred by absolute prosecutorial immunity.

## IV.    The Complaint Fails to Allege Personal Involvement by the DA Defendants

The complaint fails to allege any personal participation by DA Vance and Assistant District Attorneys Temple, Stuart, and Weiss in the arrest and prosecution of Plaintiff.  Plaintiff thus has no viable §1983 cause of action against DA Vance and the above named Assistant District Attorneys.  *See generally Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (it is "well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983").  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (need allegation of personal involvement by defendant to state §1983 claim against him).  The same is true under New York Law. *See Du Chateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 132-33 (1st Dept. 1999).

First, Plaintiff does not allege that the DA defendants personally committed any wrongdoing against him.  Plaintiff does not provide any factual support as how the DA defendants "established a quasi-grand jury in violation" of the New York Criminal Procedure Laws (C ¶60).  Nor does Plaintiff assert any facts to show how the DA defendants "willfully aided, abetted, counseled, commanded or induced" a minor girl "to engage in prostitution activity" (C ¶61).  The same holds true on Plaintiff's

claims of a speedy trial violation.  Except for the conclusory language that somehow the DA defendants "willfully aided, abetted, counseled, commanded or induced" defense counsel Glenn Hardy to waive speedy trial time, there are no factual allegations as to what each DA defendant personally did (C ¶62).

Likewise, Plaintiff's claim that the DA defendant "employed" defendant Michael Barry to publicize the criminal case (C ¶63), is devoid of any allegations of personal involvement by the DA defendants.  Indeed, the only thing that Plaintiff states is that defense counsel Glenn Hardy was "motivated" by the DA defendants to hire Michael Barry (C ¶41).  Plaintiff fails to state any facts how the DA defendants "employed" Barry or "motivated" Hardy to hire Barry.  Furthermore, Plaintiff does not allege any personal involvement by the DA defendants in "maintain[ing] a racist policy" of referring Black "pimps" to federal prosecutors to face more serious charges and sentences (C ¶54).

Even assuming that plaintiff had alleged sufficient factual allegations of wrong doing as to Assistant District Attorneys Temple, Stuart, and Weiss, *respondeat superior* is not a viable theory of liability under New York law with respect to DA Vance.  County Law §54 specifically provides that "[n]o head of any agency . . . or office of a county shall be liable to respond in damages . . . for any act or omission of any employee . . . employed within the agency . . . or office of which he is such head." This statute is applicable to the counties within the City of New York, County Law §941, and as the elected District Attorney of New York County, it is beyond question that DA Vance qualifies as the head of that county office.  *See* Public Officers Law §2.  Thus, New York law precludes DA Vance from being held liable under any theory of vicarious tort liability.  *See Barr v. County of Albany*, 50 N.Y.2d 247, 257 (1980), *Tucker v. City of New York*, 184 Misc.2d 491, 492 (Sup. Ct., N.Y. Co. 2000).  Further, the First Department has squarely held that a plaintiff's "[s]tate law claims against District Attorney Morgenthau, seeking to hold him vicariously accountable for the acts or omissions of his subordinates, . . . [are] properly dismissed [upon motion pursuant to CPLR § 3211(a)(7)], since claims premised on

vicarious liability do not lie against the head of a county agency." *Shmueli v. New York City Police Dept.*, 295 A.D.2d 271 (1st Dept. 2002). Finally, *respondeat superior* is not a viable theory of liability under §1983 with respect to any of the DA defendants. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691-695 (1978), *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).

## V.     Plaintiff's Conviction Bars Most of His Claims

Plaintiff was convicted after a jury trial in the Southern District of New York on three counts of Sex Trafficking of a Minor and one count of Possession of Child Pornography. Ante Decl. at Exh. G. Plaintiff, by his own admission, remains incarcerated at the Federal Correctional Institution in Danbury, Connecticut in connection with his conviction (C ¶5). This conviction stemmed from the exact same conduct that Plaintiff was indicted for by the New York County District Attorney's Office. Ante Decl. at Exh. E and Exh. F, p. 2-3. Indeed, Plaintiff throughout his complaint admits that his indicted New York state case involved the same conduct as the federal case: "DANY needed additional time to convince the U.S. Attorney to accept the case" (C ¶34); "DANY actively tried to persuade the U.S. Attorney to prosecute the Plaintiff" (C ¶38); "DANY solicited Judge Wittner to convince the U.S. Attorney to prosecute the Plaintiff. Judge Wittner issued an order to forward evidence to the F.B.I. and U.S. Attorney" (C ¶39); "DANY stated that the U.S. Attorney was interested in the Plaintiff's case and are arranging to transfer prosecution" (C ¶46); "DANY . . . willfully present[ed] facts of Plaintiff's case to the media with the intent of . . . enticing the federal government to accept jurisdiction" (C ¶63). Thus, Plaintiff's conviction bars: a) the first cause of action to the extent it is for claims of false arrest and imprisonment; b) the second cause of action for false arrest and imprisonment; c) the third cause of action for a speedy trial claim; d) the fourth cause of action for violation of due process and a fair trial and d) the fifth cause of action to the extent it is a claim of malicious prosecution and false imprisonment.

16

It is well established that when a person who is convicted of a crime brings a §1983 cause of action, the court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" by a "state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U. S. 477, 486-487 (1994); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Heck* specifies that a prisoner cannot use [section] 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence."), *Bowers v. Kelly*, 13 Civ. 06265 (LGS), 2015 U.S. Dist. LEXIS 58219, at *6-8 (S.DN.Y., May 4, 2015).

The dismissal of the state charges is of no moment. Where, "the Federal and State actions are inextricably intertwined and substantially related to one another," the *Heck* bar still applies to the dismissed state charges. *Thompson v. Delvalle*, 07 Civ. 4691 (BSJ), 2010 U.S. Dist. LEXIS 61459, *8 (S.D.N.Y. June 21, 2010) (*Heck* applies to §1983 claims where the federal conviction is "closely related" to the dismissed state prosecution; Plaintiff conceded that the two prosecutions stemmed from the same events and the state prosecution was dismissed only after the commencement of the federal prosecution); *see also Bogle v. Melamed*, 09 CV 1017 (RJD), 2012 U.S. Dist. LEXIS 47068 (E.D.N.Y. Mar. 30, 2012) (*Heck* barred §1983 claims where state charges were dismissed but federal conviction based on same actions remained).

Here, the Federal conviction stemmed from the same events covering the state prosecution, which Plaintiff himself acknowledges throughout his complaint. Since the dismissal of the state charges is not a favorable termination and since Plaintiff was convicted for identical conduct in the Federal prosecution, the *Heck* rule applies to Plaintiff's §1983 claims. Thus, Plaintiff's first, second, and fifth causes of action, to the extent that they are claims of false arrest and false imprisonment, must be dismissed as they imply the invalidity of his conviction in Federal Court. *See Magnotta,* 2014

U.S. Dist. LEXIS 25361 at *17 (dismissal of false arrest claim since success on that claim would imply the invalidity of the conviction stemming from that arrest), *adopted by* 2014 U.S. Dist. LEXIS 53917 (S.D.N.Y. Apr. 17, 2014), *Duamutef v. Morris*, 956 F. Supp. 1112, 1117 (S.D.N.Y. Jan. 30, 1997) (Sotomayor, Sonia, J.) (same).

Likewise, Plaintiff's third cause of action for violation of his right to a speedy trial under the Sixth Amendment must be dismissed because it implicates the validity of his conviction.  *See Davis v. New York*, 90 Civ. 6170 (MBM), 2003 U.S. Dist. LEXIS 5352, at *3-4 (S.D.N.Y. Apr. 2, 2003), *aff'd*, 2004 U.S. App. LEXIS 12389 (2d Cir. June 21, 2004), *Allen v. City of New York*, 12 CV 4961 (KAM), 2014 U.S. Dist. LEXIS 120347 (E.D.N.Y. Aug. 27, 2014).

Next, the *Heck* rule bars Plaintiff's fourth cause of action sounding in Fifth and Sixth Amendment claims of violation of due process and fair trial.  Plaintiff alleges that the DA defendants "employed" defendant Michael Barry to publicize his case so to "influence the disposition of the case, or any future criminal or civil deferral case" (C ¶63).  The right to a fair trial is based upon the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments.  *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986).  A §1983 claim for the denial of a fair trial is "a claim for damages attributable to an unconstitutional conviction."  *Bailey*, 79 F. Supp. 3d at 445; *see Heck*, 512 U.S. at 489-490.  Here, Plaintiff alleges that he was denied a fair trial because of the DA defendants publicizing his case.  Since Plaintiff's fair trial claim impugns the validity of his convictions, the fourth cause of action must be dismissed.[3]  *Perez v. Cuomo*, 09 CV 1109 (SLT), 2009 U.S. Dist. LEXIS 33290 at *7 (E.D.N.Y. Apr. 20, 2009); *Jasper v. Fourth Court of Appeals*, 08 Civ. 7472 (LAP), 2009 U.S. Dist. LEXIS

---

[3]     *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) is inapplicable to Plaintiff's situation. In *Poventud,* the plaintiff was allowed to pursue §1983 claims of *Brady* and Due Process violations because he was no longer in custody and thus not entitled to *habeas corpus* relief and also because the *Brady* violation at issue pertained to his first conviction, which had been vacated and also involved different charges than his ultimate guilty plea.  Here, *habeas corpus* relief is available to Plaintiff, who is an incarcerated prisoner at the Federal Correctional Institution in Danbury, Connecticut (C ¶5), and he seeks to undermine an in-tact conviction.

41620 at *1 (S.D.N.Y. May 18, 2009), *Bowers*, 2015 U.S. Dist. LEXIS 58219 at *8-9 (malicious prosecution, *Brady*, fair trial and conspiracy claims imply the invalidity of the conviction); *Barnes v. City of New York*, 13 Civ. 7283 (JLC), 2015 U.S. Dist. LEXIS 87007 at *43 (S.D.N.Y. July 2, 2015) ("Where the plaintiff's underlying conviction has not been so invalidated, courts routinely dismiss Section 1983 claims for, inter alia, malicious prosecution, conspiracy, and deprivation of the right to a fair trial pursuant to Heck.")

Lastly, the fifth cause of action to the extent it is a claim of malicious prosecution is barred by *Heck*.  Plaintiff alleges that the DA defendants maintained a racist policy of "referring Black defendants for federal prosecution" which resulted in his "vindictive federal prosecution" and "extended imprisonment" (C ¶64).  Tellingly, Plaintiff complains of a vindictive "federal" prosecution, which resulted in his conviction.  To succeed on a §1983 claim of malicious prosecution, the criminal proceeding has to be terminated in the plaintiff's favor.  *Magnotta*, 2014 U.S. Dist. LEXIS 25361 at *17, relying upon *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir. 2003).  The Supreme Court in *Heck* explicitly held that a malicious prosecution claim would necessarily imply the unlawfulness of a conviction.  *Heck*, 512 U.S. at 484-486.  Since there was no favorable termination, Plaintiff's fifth cause of action sounding in malicious prosecution must be dismissed.

## VI.   Plaintiff's Substantive Due Process Claims Must Be Dismissed

Plaintiff's second and fifth causes of action, to the extent they claim a violation of substantive due process under the Fourteenth Amendment, must be dismissed.  Plaintiff claims that the DA defendants' alleged act of "engag[ing] in prostitution" constituted "outrageous government conduct" which resulted in his arrest and imprisonment (C ¶61).  He also alleges that the DA defendants maintained a racist policy of referring Black defendants for federal prosecution and more severe sentences than other races (C ¶64).

His substantive due process claim sounds in the Fourth Amendment (arrest and imprisonment) and Fourteenth Amendment (equal protection). "Where a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a §1983 suit cannot make reference to the broad notion of substantive due processes." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (dismissal of substantive due process claim sounding in violations of First Amendment and Equal Protection claims), *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular amendment provides an explicit textured source of constitutional protection against a particular sort of governmental behavior that Amendment, not the more generalized motion of 'substantive due process' must be the guide for analyzing these claims."). Here, Plaintiff's absurd substantive due process claim of the DA defendants engaging in prostitution and sex trafficking of underage girls, and maintaining a racist policy of prosecution, which resulted in his arrest and imprisonment must be dismissed. The claims in the second and fifth causes of action actually constitute claims of Fourth Amendment false arrest and imprisonment and Fourteenth Amendment equal protection, which is barred by *Heck*.

## VII.   Plaintiff Fails to Allege Outrageous Government Conduct in his Second Cause of Action

There is an addition reason for the dismissal of the second cause of action. Besides the second cause of action being barred by *Heck*, Plaintiff fails to allege what the outrageous government conduct was that caused his substantive due process rights to be violated. Plaintiff's assertion that the DA defendants engaged in a sting operation involving an undercover detective and a prostitute cooperating with law enforcement (C ¶¶17-25), simply does not make out that the DA defendants promoted prostitution and sex trafficking resulting in outrageous government conduct (C ¶61).

To establish a substantive due process violation, a plaintiff must allege facts to show that the governmental conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Velez*, 401 F.3d at 93 (quotation omitted).  This standard is a "demanding one" which is rarely met. *Labensky v. County of Nassau*, 6 F. Supp. 2d 161, 171 (E.D.N.Y., March 11, 1998); *see also United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997) (the claim of outrageous government conduct is "frequently raised" but "seldom succeeds.")  To be "outrageous" the government's conduct "must involve either coercion or a violation of the defendant's person." *United States v. Al Kassar,* 660 F.3d 108, 121 (2d Cir. 2011).

Here, allegedly having a prostitute participate in an undercover operation, by "promising her boyfriend a favorable disposition or an unfavorable disposition if she failed to participate," "threatening her with prosecution" and "offering something of value" (C ¶¶18, 20), with the goal of targeting Plaintiff hardly overcomes the high standard of governmental conduct which shocks the conscience.  "Initiating an investigation for the sole purpose of pressuring the target (using the resulting criminal charge as leverage) to assist in the investigation of others is a permissible law enforcement tactic." *Labensky*, 6 F. Supp. 2d  at 171.  Simply put, using one criminal to target another criminal in an undercover investigation does not convert legitimate governmental conduct into outrageous governmental conduct.  *See, e.g.*, *United States v. Cromitie, et. al.,* 727 F.3d 194 (2d Cir. 2013) (government informant suggesting to defendant that he had a religious obligation to commit terrorism, exploiting defendant's professed love and friendship of the informant, and offering defendant large sums of money during a sting operation does not constitute outrageous government behavior), *Labensky*, 6 F. Supp. 2d  161 (plaintiff's substantive due process claim dismissed where government informant romantically befriended her and persuaded her to buy cocaine in order to capture high level drug dealers).

And, significantly, the alleged outrageous government conduct that Plaintiff complains of was focused on the prostitute and not on him.  Nowhere in the complaint does Plaintiff link the undercover

sting operation to himself.  Plaintiff does not make any factual showing that the DA defendants' alleged use of a prostitute in an undercover operation resulted in the deprivation of his "life, liberty or property" or in "unfairness or oppression." *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986).  Indeed, Plaintiff asserts that "the authority" for his arrest is "unknown" (C ¶25).  In short, Plaintiff fails to allege how the use of an alleged cooperating prostitute resulted in his own "coercion or violation of [his] person." *Al Kassar,* 660 F.3d at 121.

### VIII.   Alleged Pre-Trial Publicity Did Not Deprive Plaintiff of a Fair Trial

Besides the *Heck* bar to his fourth cause of action, there is an additional reason why Plaintiff fails to state a claim.  Plaintiff alleges that the DA defendants "employed" defendant Michael Barry to publicize his case so to "influence the disposition of the case, or any future criminal or civil federal case" (C ¶63).  Plaintiff does not establish any causal link between alleged extrajudicial statements and a violation of his right to a fair trial.  To succeed in a claim for denial of a fair trial due to pretrial publicity, a plaintiff must show: 1) improper leaks under the canons of ethics; 2) the leaks denied plaintiff his due process rights; and 3) other remedies, such as *voir dire* or a motion to change venue, were "unavailable or ineffective, thereby demonstrating causation." *Jovanovic v. City of New York*, 04 Civ. 8437 (PAC), 2010 U. S. Dist. LEXIS 144388 (S.D.N.Y. Sept. 28, 2010) (citing *Powers v. Coe,* 728 F.2d 97, 105-106 (2d Cir. 1984)), *aff'd*, 2010 U.S. App. LEXIS 12521 (2d Cir. June 20, 2012).

Here, Plaintiff does not make any factual allegations as to how the DA defendants directly leaked information to the press, and what canons of ethics were specifically violated.  At best, Plaintiff alleges that his defense attorney Glenn Hardy was "motivated" by the DA defendants to hire Michael Barry to publicize Plaintiff's case (C  ¶41). "Motivat[ing]" someone hardly amounts to actual direct involvement by the DA defendants to improperly leak information to the media.  Moreover, Plaintiff

fails to allege any facts showing causation between media reports and his conviction after a jury trial. Plaintiff is silent as to what if any "remedies" were pursued for the alleged media reports at his trial.

## IX.    Plaintiff's Equal Protection Claim Must Be Dismissed

Plaintiff alleges that the DA defendants maintained a racially biased policy of referring Black defendants charged with promoting prostitution for federal prosecution, while defendants of other races were not (C ¶ 64).  While Plaintiff uses the term "vindictive federal prosecution," the fifth cause of action sounds in a selective prosecution claim.  In any event, and setting aside the fact that the DA defendants are absolutely immune with respect to any selective prosecution claim, Plaintiff  fails to allege sufficient facts showing that he was treated differently from other similarly situated defendants based on race.

A prosecutor has broad discretion to decide whether to prosecute, as well as to "decide which alternative statutory sections, which may carry penalties of varying severity, the defendant will be charged with violating." *United States v. Sanchez*, 517 F.3d 651, 670 (2d Cir. 2008).   However, prosecutorial decisions cannot be based upon impermissible considerations such as race.  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *Blackledge v. Perry,* 417 U.S. 21, 27 (1974).   Moreover, since prosecutors are entrusted with the duty to see that laws are faithfully executed, there is a "presumption of regularity support[ing] their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Sanchez*, 517 F.3d at 671 (quotation omitted)   Plaintiff bears a heavy burden to establish: 1) that he had been singled out for prosecution, while others similarly situated have not generally been proceeded against and 2) that the selection of him for prosecution by the government was based upon impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights.  *United States v.*

*Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983); *see also United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir. 1974).

Here, Plaintiff fails to meet both prongs.  Plaintiff makes an unsubstantiated broad accusation that "a review from the N.Y. Division of Criminal Justice Services" shows that "Black pimps" are referred for federal prosecution for harsher sentences than "pimps" of other races (C ¶ 54), without any supporting exhibits or statistical analysis.  Plaintiff fails to identify any non-black "pimps" of underage girls who used the internet to prostitute them who were not referred for federal prosecution.  Plaintiff offers an opinion rather than factual allegations.  *See, e.g., Anderson v. City of New York*, 817 F. Supp. 2d 77, 94 (E.D.N.Y. 2011) (selective enforcement claim dismissed where plaintiff failed to identity any non-black similarly situated defendants), *Jennis v. Rood,* 488 F. Supp. 2d 172, 187-189 (N.D.N.Y.  2007) (failure to allege any differential treatment that plaintiff received that would differ from "the treatment received by any other person similarly situated under investigation for illegal activity"), *Pyke v. Cuomo,* 258 F.3d 107, 109 (2d Cir. 2001) (a "plaintiff alleging a claim of selective prosecution in violation of the Equal Protection Clause must plead and establish the existence of similarly situation individuals who were not prosecuted").

Furthermore, even if Plaintiff were able to factually allege that similarly charged persons of a different race were not referred for federal prosecution, he still fails to establish the second prong of impermissible considerations.  Plaintiff must present factual allegations that he was prosecuted "at least in part 'because of,' not merely 'in spite of,'" his race.  *Anderson*, 817 F. Supp. 2d at 95(quoting *Wayte v. United States,* 470 U.S. 598, 610 (1985)).  The disparate treatment must be caused by the impermissible considerations; a plaintiff cannot "merely rest on a showing of disparate treatment." *Anderson* , 817 F. Supp. 2d at 94-95 (quotation omitted).  Plaintiff has not made any factual allegations demonstrating that he was referred for federal prosecution because he is black.  For example, he has not claimed that the DA defendants used any racial epithets or mistreated him in any way.  Indeed,

even "hostile acts of violence, without more, are insufficient to establish intentional discrimination." *Anderson*, 817 F. Supp. 2d at 95. Here, Plaintiff has not sufficiently alleged facts showing that the DA defendants purposefully discriminated against him because he is black. Consequently, the fifth cause of action must be dismissed.

## X.   Plaintiff Has No Actionable Negligence Claim

Negligence is not actionable under the federal civil rights statutes. *Daniels v. Williams*, 474 U.S. 327, 331-336 (1986); *see also Mark G. v. Sabol*, 247 A.D.2d 15, 30 (1st Dept. 1998). And, it is well settled that New York law does not recognize any claim predicated upon a purportedly negligent criminal investigation or prosecution. *Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278, 284-85 (2d Dept. 2003), *Ellsworth v. City of Gloversville*, 269 A.D.2d 654, 656-657 (3d Dept. 2000), *Pandolfo v. U.A. Cable Sys. of Watertown,* 171 A.D.2d 1013, 1014 (4th Dept. 1991), *La Mar v. Greece,* 97 A.D.2d 955, 956 (4th Dept. 1983).

This public policy bar also forecloses any other negligence claims stemming from a criminal investigation or prosecution, *see e.g., Ramos v. City of New York*, 285 A.D.2d 284, 301 (1st Dept. 2001) (negligent hiring, training, and supervision), including plaintiff's claim that his criminal prosecution resulted in the negligent infliction of emotional distress. *White v. United States,* 95 Civ. 4432 (JSR), 1997 U.S. Dist. LEXIS 3743, *2 (S.D.N.Y. Mar. 31, 1997), *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. N.Y. 1994); *see also Lauer v. City of New York*, 95 N.Y.2d 95, 99-105 & n1 (2000).

## XI.   Several of Plaintiff's Claims Are Time-Barred

In New York, § 1983 actions are subject to a limitations period of three years. *Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990); *see also Owens v. Okure*, 488 U.S. 235, 249-250 (1989) (statute of limitation for false arrest claim under §1983 in New York is three years). A claim arising under § 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of [the]

25

action." *Ormiston v. Nelson*, 117 F.3d 69, 70 (2d Cir. 1997) (quotation and citation omitted); *see also* *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001).

Here, Plaintiff's complaint was mailed on November 25, 2015 and electronically filed on December 8, 2015.[4]  Plaintiff's §1983  claims of invasion of privacy spans the time period of August 2011 through February 2012, violation of substantive due process covers the period of August 2011 through January 2012 and speedy trial right violation encompasses the time period of January 2012 through December 2012.  Because the complaint was mailed on November 25, 2015 only claims which arose since November 25, 2012 are timely for §1983 purposes.  Thus Plaintiff's first, second, and third causes of action are time barred by the statute of limitations.

Likewise, Plaintiff's state law claim of negligent infliction of emotional distress is time barred since the alleged conduct spans the period of January 2012 through January 2013.  Federal courts apply state statutes of limitations to state law claims.  *See Vincent v. Money Store*, 915 F. Supp. 2d 553, 560-561 (S.D.N.Y. 2013).  Plaintiff's state law claim is governed by General Municipal Law § 50-i, in which the time limitation is one year and ninety days.  Since well over one year and ninety days have passed since the filing of the complaint, Plaintiff's sixth cause of action is time barred.

## CONCLUSION

Plaintiff has failed to allege a viable cause of action upon which relief can be granted.  To the extent he seeks to sue the DA defendants in their official capacities, the Eleventh Amendment bars such claims. To the extent that he is suing DA defendants in their individual capacities, the claims also fail.  Plaintiff fails to allege any personal involvement of the DA defendants.  Moreover, the DA

---

[4]      For statute of limitations purposes, an inmate's complaint "is deemed 'filed' on the date the complaint is delivered to prison officials for transmittal to the court."  *Covington v. City of New York*, 171 F.3d 117, 120 n. 1 (2d Cir. 1999).  Here, Plaintiff mailed the complaint, along with a civil cover sheet, on November 25, 2015.  *See* ECF No. 2.

defendants are entitled to absolute prosecutorial immunity for all actions undertaken while engaged in their role as advocates.  Furthermore, because of the *Heck* rule, plaintiff as a matter of law cannot prove claims of false arrest, false imprisonment, violations of the rights to a speedy trial, due process and fair trial, and malicious prosecution.  Also, the statute of limitations bars Plaintiff's first, second, third, and sixth causes of action.  Lastly, as a matter of law, Plaintiff cannot prove his claim of negligent inflection of emotional distress.

Accordingly, the DA Defendants' motion for an order dismissing the complaint and for any other fair and equitable relief that may be appropriate, should be granted.

Dated:        August 4, 2016
              New York, New York


**Cyrus R. Vance Jr.**
District Attorney, New York County              By: /s/ Christina F. Ante
as Special Assistant Corporation Counsel             Christina F. Ante
One Hogan Place                                      Assistant District Attorney
New York, New York 10013                             Of Counsel
(212) 335-9000 (telephone)
(212) 335-4390 (facsimile)