UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   June 19, 2018
```

-----------------------------------------------------X

ROYCE CORLEY,

                               Plaintiff,

                 v.

CYRUS R. VANCE, JR., *et al.*,

                          Defendants.

            15 Civ. 1800 (KPF)

-----------------------------------------------------X

**ORDER**

ROYCE CORLEY,

                               Plaintiff,

                 v.

HONORABLE BONNIE G. WITTNER,
J.S.C., *et al.*,

                          Defendants.

            15 Civ. 9621 (KPF)

-----------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

These two cases were stayed earlier this year to permit Plaintiff Royce Corley to refile a motion for the Court's recusal. This Order addresses that motion. For the reasons set forth in the remainder of this Order, the stays in the two cases are lifted and the motion for recusal in each case is denied. The Clerk of Court is directed to file this Order in both cases.

# BACKGROUND

Plaintiff filed his complaint in the first of these cases, *Corley* v. *Vance*, No. 15 Civ. 1800, on January 13, 2015.  (1800 Dkt. #1 ("1800 Compl.")).[1]  The *Vance* Complaint alleged violations of the Constitution and of several federal statutes, including the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), the Right to Financial Privacy Act ("RFPA"), and the Driver's Privacy Protection Act ("DPPA"), as well as various state-law claims.  The named defendants in that case include New York County District Attorney ("DA") Cyrus R. Vance, Jr., and DA's Office personnel David Stuart, John Temple, Greg Weiss, and Elizabeth Pederson; New York Police Department ("NYPD") officers Brian Conroy, Michael Daly, Mark Woods, Jessica Sterling, Giancarlo Cavallo, and Greg Smith; Mayor's Office of Special Enforcement counsel Shari C. Hyman; and various private individuals and entities, including Consolidated Edison ("Con Ed") employees Michael T. Haggerty and Walter Panchyn, Backpage.com, LLC, Sprint Nextel Corp., T-Mobile USA Inc., Facebook Inc., Google Inc., Time Warner Cable Inc., Research in Motion Ltd., the Municipal Credit Union, Capital One N.A., JP Morgan Chase Bank N.A., and several John Doe defendants.

The *Vance* Complaint was summarized in a prior order of this Court, and that summary is repeated here for clarity.  (*See* 1800 Dkt. #15).  It alleges that

---

[1]     For ease of reference, the Court will distinguish docket entries from the two cases by citing to them as "1800 Dkt." or "9621 Dkt."

Plaintiff later filed a document styled as a "Complaint Supplement" that was docketed by this Court on May 19, 2015.  (1800 Dkt. #13).

in 2007, Plaintiff "was informally doing business under the nom de guerre 'Ron Iron' providing advertising and web development services to escort, therapeutic and adult-oriented businesses." (1800 Compl. ¶ 22). In 2008, Plaintiff began working as a technician for Con Ed. (*Id.* at ¶ 23). In 2009, an individual who had been convicted of promoting prostitution "vindictively" forwarded to law enforcement false information implicating Plaintiff in illegal activity. (*Id.* at ¶ 25). In consequence, law enforcement: (i) induced a minor to work as a confidential informant and prostitute to manufacture evidence against Plaintiff; (ii) tampered with advertisements appearing on Backpage.com by "altering 'AdOId' posted by other individuals, or created by the defendants"; and (iii) used fabricated evidence to obtain court orders, subpoenas, and warrants. (*Id.* at ¶¶ 27-29, 37-41). Accordingly, "despite using a warrant, defendants had no probable cause" to obtain access to Plaintiff's accounts, search his apartment and Con Ed office, or seize his cell phones, electronic media, and credit cards. (*Id.* at ¶¶ 47-48).

Plaintiff asserts that he "has not been provided with any court orders, subpoenas, warrants or notices in relation to any of these disclosures." (1800 Compl. ¶ 26). Backpage.com is further alleged to have "aided and abetted" law enforcement "by granting them unlimited access to password-protected accounts without the proper legal authority," and the other private entity defendants are alleged to have provided law enforcement with Plaintiff's records, e-mails, and instant messages. (*Id.* at ¶¶ 24, 38, 60-62).

3

Initially, Plaintiff was charged by the DA's Office in New York state court. However, the state charges were dismissed on February 1, 2013. (1800 Compl. ¶ 46). Plaintiff was then prosecuted federally by the United States Attorney's Office for the Southern District of New York. He was indicted in this District on January 22, 2013, and a superseding indictment was returned on October 10, 2013. *See United States* v. *Corley*, No. 13 Cr. 48 (RPP/AJN) (S.D.N.Y.). Plaintiff was ultimately convicted of child exploitation and child pornography offenses in April 2014; his conviction was affirmed by the Second Circuit on February 9, 2017, *United States* v. *Corley*, 679 F. App'x 1 (2d Cir. 2017) (summary order), and his petition for certiorari was denied by the U.S. Supreme Court on October 2, 2017, *Corley* v. *United States*, 138 S. Ct. 205 (2017).

The *Vance* Complaint focuses on the conduct of law enforcement authorities before and immediately following Plaintiff's 2012 arrest. Plaintiff asserts claims under 42 U.S.C. § 1983 for, *inter alia*, false arrest, false imprisonment, malicious prosecution, unlawful search and seizure, malicious abuse of process, conspiracy to violate due process, fabrication of evidence, and violations of the rights to a speedy trial and to privacy, as well as state-law claims of negligence, negligent infliction of emotional distress, and fraud. (1800 Compl. ¶¶ 72-84, 95-99). Plaintiff alleges that the private defendants conspired with state actors to violate his constitutional rights and also failed to train their employees properly with respect to releasing customer information. Plaintiff further asserts that the private defendants violated federal statutes

that limit disclosure of electronic records and communications. (*Id.* at ¶¶ 60-63).

On December 8, 2015, Plaintiff filed the second complaint, this one against New York State Supreme Court Justice Bonnie G. Wittner, the judge who presided over Plaintiff's state prosecution; Michael J. Barry, his appointed counsel in that case; criminal investigator Glenn F. Hardy and his company, Ports & Files, Inc.; several members of the District Attorney's Office, including DA Vance and Assistant District Attorneys ("ADAs") John Temple, David Stuart, Greg Weiss, and John Doe; and the City of New York. (9621 Dkt. #2 ("9621 Compl.")). While the *Vance* Complaint focused on the investigative work undertaken preliminary to Plaintiff's 2012 arrest, the *Wittner* Complaint focused on the conduct of those involved in Plaintiff's state-court prosecution from its inception until the case was turned over to federal prosecutors.

Among other things, Plaintiff alleges that Justice Wittner and representatives of the DA's Office conspired (i) to establish a "quasi-grand jury" for the purpose of accessing, illegally, Plaintiff's communications and records (9621 Compl. ¶ 17); (ii) to "coerce or entice" an underage female to participate in an illegal sting operation against Plaintiff that would "manufacture" state-court jurisdiction over him (*id.* at ¶¶ 18, 24); (iii) to circumvent case assignment procedures so that Plaintiff's criminal case was assigned to Justice Wittner, who, it is alleged, would then cover up the putative co-conspirators' prior misconduct (*id.* at ¶ 27); and (iv) to solicit the United States Attorney's Office for the Southern District of New York to prosecute Plaintiff (*id.* at ¶¶ 39-

41, 46-49).  Plaintiff further alleges that his attorney and criminal investigator publicized private information concerning Plaintiff and his case "for the purpose of financial gain and promoting their professional practices." (*Id.* at ¶ 50; *see also id.* at ¶¶ 50-52).  Indeed, according to Plaintiff, attorney Barry and investigator Hardy actively promoted Plaintiff's case in the media in order to "entic[e] the U.S. Attorney to take the case." (*Id.* at ¶ 41).

The *Wittner* case was initially assigned to United States District Judge John G. Koeltl, and was transferred to this Court on August 9, 2016.  Upon motion, both cases were stayed by the Court by orders dated September 16, 2016, so that Plaintiff could pursue his appeal from his criminal conviction. (1800 Dkt. #97; 9621 Dkt. #60).  At the time these stays were entered, several of the defendants in the *Wittner* case — specifically, Defendants Hardy, Vance, Stuart, Temple, and Weiss — had filed motions to dismiss.  (9621 Dkt. #32, 43).  Additionally, shortly after the stay orders were filed, Plaintiff moved for sanctions in the *Vance* case, claiming that counsel for Defendants Vance, Temple, Stuart, Weiss, and Pederson had falsely advised the Court that those defendants had not been served with the *Vance* Complaint on or about September 26, 2016, and that counsel had made these false statements in order to delay resolution of the litigation and to require Plaintiff to incur the expense of refiling.  (1800 Dkt. #120).

As noted, the Supreme Court denied Plaintiff's petition for certiorari in October 2017.  By orders dated November 1, 2017, the Court lifted the stays in the *Vance* and *Wittner* cases, and scheduled a series of conference calls with

the parties in order to discuss next steps.  (1800 Dkt. #135; 9621 Dkt. #67).

As detailed in several Court orders, technical and logistical difficulties foiled the

Court's efforts to convene the parties telephonically.  (1800 Dkt. #144, 148;

9621 Dkt. #72, 78).  However, before the February 12, 2018 conference came

to its premature end, the Court learned that Plaintiff wished to renew a

previously-filed motion for the Court's recusal in both cases.  The Court

reimposed the stays and ordered Plaintiff to refile his recusal motion (1800

Dkt. #148; 9621 Dkt. #78), which Plaintiff did on or about February 26, 2018

(1800 Dkt. #150; 9621 Dkt. #79).

At the time of the February 12 conference, the Court did not recall

Plaintiff's prior motion for recusal, nor could it readily locate same in the

docket for the *Vance* matter.  After the conference, the Court undertook a

comprehensive review of its files in order to locate the prior recusal motion.  It

found an October 8, 2015 letter in which Plaintiff declined to amend the *Vance*

Complaint and requested that summonses issue.  (1800 Dkt. #19).  In the

same letter, Plaintiff cited a complaint for misconduct he had filed against the

undersigned in September 2015, which complaint was predicated on "the

Court's apparent prejudice or bias"; in a single sentence, Plaintiff asked the

Court to recuse itself "due to 'the appearance of partiality.'"  (*Id.* (quoting *Ligon*

v. *City of New York (In re Reassignment of Cases)*, 736 F.3d 118, 123 (2d Cir.

2013), *vacated in part on other grounds*, 743 F.3d 362 (2d Cir. 2014))).  The

Court denied Plaintiff's first motion for recusal when it dismissed the *Vance*

Complaint without prejudice, citing several Second Circuit cases that held that

a judge's prior rulings, standing alone, are an insufficient grounds for recusal. (1800 Dkt. #20 (citing, among others, *Fulton* v. *Robinson*, 289 F.3d 188, 199 (2d Cir. 2002)))

In his renewed motion for recusal, Plaintiff recounts the procedural history of the two cases, including the Court's prior dismissal of the *Vance* litigation, its subsequent reinstatement by the Second Circuit, and the reassignment of the *Wittner* litigation to the Court.  (1800 Dkt. #150; 9621 Dkt. #79).  Plaintiff now proffers three bases for the Court's recusal:

    i.    The Court's prior service as an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Southern District of New York, and  as a member of that office's Appeals Unit, contributes to an appearance of partiality, because the Court may have personal knowledge of the underlying acts or firsthand involvement;

    ii.    The Court's failure to disclose its prior service as an AUSA in response to Plaintiff's first recusal motion is evidence of the Court's bias or partiality; and

    iii.    If the Court had assisted the defendants in either or both of these cases with the investigation or prosecution of Plaintiff, the Court would be an adverse party to the litigation, necessitating recusal.

(1800 Dkt. #150; 9621 Dkt. #79).  The Court now considers Plaintiff's motion.

## APPLICABLE LAW

Section 455(a) of Title 28 provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned."  28 U.S.C. § 455(a). Subsection (b) of this statute further requires a judge to recuse herself (i) "[w]here [s]he has a personal bias or prejudice concerning a party, or

personal knowledge of disputed evidentiary facts concerning the proceeding," or (ii) "[w]here [s]he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." *Id.* § 455(b)(1), (3).

Section 455 "sets out an objective standard for recusal, creating the so-called 'appearance of justice' rule." *DeLuca* v. *Long Island Lighting Co.*, 862 F.2d 427, 428 (2d Cir. 1988) (internal citation omitted); *see also ISC Holding AG* v. *Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012) ("This provision is to 'be evaluated on an *objective* basis, so that what matters is not the reality of bias or prejudice but its appearance.'" (quoting *Liteky* v. *United States*, 510 U.S. 540, 548 (1994)). Under that test, the court asks: "Would a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or phrased differently, would an objective, disinterested observer fully informed of the underlying facts, entertain significant doubt that justice would be done absent recusal?" *United States* v. *Bayless*, 201 F.3d 116, 126 (2d Cir. 2000) (quoting *Diamondstone* v. *Macaluso*, 148 F.3d 113, 120-21 (2d Cir. 1998)).

"The [Second Circuit] has cautioned that ... the grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality." *Barnett* v. *United States*, No. 11 Civ. 2376 (LAP), 2012 WL 1003594, at *1 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted) (quoting *In re Aguinda*, 241

F.3d 194, 201 (2d Cir. 2001)).  More fundamentally, where the standards governing disqualification are *not* met, "disqualification is not optional; rather, it is prohibited." *In re Aguinda*, 241 F.3d at 201; *see also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) ("A judge is as much obliged not to recuse [herself] when it is not called for as [s]he is obliged to when it is.").  Were it otherwise, recusal motions would become a tool for "judge-shopping" and "impeding the administration of justice."  *In re Martin-Trigona*, 573 F. Supp. 1237, 1243 (D. Conn. 1983).  And Section 455 "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *United States* v. *Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

## ANALYSIS

Central to Plaintiff's recusal arguments is the undersigned's prior experience as an AUSA.  Certain of Plaintiff's factual assertions about that experience, however, require correction.  The undersigned was an AUSA in the Southern District of New York from April 2000 until March 2013; she was a Deputy Chief of the Criminal Appeals Unit from October 2004 until July 2008, and Chief of that Unit from July 2008 until March 2013.[2]  During the relevant time period, the Criminal Appeals Unit had either four or five members, all of whom could be consulted by others in the Office concerning criminal matters.

---

[2]     Plaintiff asserts that the Court was involved in prosecuting cases as late as June 26, 2013, but he is mistaken.  (1800 Dkt. #150 at 3; 9621 Dkt. #79 at 3 (citing *United States* v. *Cuti*, 528 F. App'x 84 (2d Cir. 2013) (summary order)).  The Government's brief on appeal in that case was filed on June 4, 2012, *see United States* v. *Cuti*, Nos. 11-3756, 11-3831, 2012 WL 2062417 (filed June 4, 2012), and oral argument was heard on October 25, 2012.  The undersigned left the U.S. Attorney's Office before the Second Circuit issued its decision.

Moreover, the undersigned was nominated to the bench in June 2012 and re-nominated in January 2013; she was confirmed on March 4, 2013. In her last year as a prosecutor, the undersigned spent a substantial amount of her time participating in the judicial confirmation process.

When the *Vance* Complaint was assigned to it in 2015, the Court reviewed the docket of Plaintiff's federal criminal prosecution. The undersigned determined that she had no involvement in the investigation or prosecution of Plaintiff. To put a finer point on it, the undersigned was not involved in any of the conduct alleged in either of Plaintiff's complaints, nor was she involved in any capacity once the prosecution was turned over to federal authorities.

It also bears noting that while Plaintiff has raised a host of federal and state claims stemming from his investigation and prosecution in New York state court, he has not alleged — in the two complaints before this Court — any improper conduct by the federal prosecutors. The absence of such allegations, coupled with the Court's lack of involvement in the facts that are alleged, explains both why the undersigned did not affirmatively disclose her prior position in 2015 and why there is no basis today for her recusal.[3]

In a factually analogous case, another judge in this District denied a motion for recusal predicated on that judge's prior position as an AUSA. *See McLean* v. *United States*, No. 08 Cr. 789 (RJS), 2016 WL 3910664, at *9

---

[3]    As a third basis for recusal, Plaintiff speculates that the Court might later prove to be an adverse party "if she assisted the Defendants in this case with their investigation or prosecution, in any capacity." (1800 Dkt. #150 at 5; 9621 Dkt. #79 at 5). Today, there are no such allegations in either of Plaintiff's complaints; for the reasons set forth above, there cannot be, consistent with Federal Rule of Civil Procedure 11.

(S.D.N.Y. July 13, 2016) ("Samuels, however, has not articulated any bias or prejudice on the part of the undersigned — indeed, there is none — with respect to this case.  Rather, Samuels has only speculated about any bias or prejudice due to the undersigned's prior position as an Assistant United States Attorney and has only proffered unsubstantiated assertions about the undersigned's views of individuals of a given nationality."), *certificate of appealability denied* (Nov. 30, 2016), *appeal dismissed*, No. 16-2702, 2016 WL 9447127 (2d Cir. Dec. 5, 2016).  Other judges have similarly rejected motions for recusal where the judge, though a prosecutor in the same office, was not involved in the facts underlying the litigation.  *See, e.g.*, *Baker & Hostetler LLP* v. *U.S. Dep't of Commerce*, 471 F.3d 1355, 1357 (D.C. Cir. 2006) (observing concluding that § 455(b)(3) "requires recusal when a judge has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy" (internal quotation marks omitted)); *Kendrick* v. *Carlson*, 995 F.2d 1440, 1444 (8th Cir. 1993) ("[A]n AUSA without any involvement in a case brought by other attorneys in his office is not required to disqualify himself from presiding over such a case under 28 U.S.C. § 455(b)(3)." (collecting cases)); *United States* v. *Oluwafemi*, 883 F. Supp. 885, 893 (E.D.N.Y. 1995) (denying motion for recusal and holding that a judge who was formerly a federal prosecutor could can preside over cases involving former colleagues who are still prosecutors); *cf. Williams* v. *Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) ("The Court now holds that under

12

the [Fourteenth Amendment] Due Process Clause there is an impermissible

risk of actual bias when a judge earlier had significant, personal involvement

as a prosecutor in a critical decision regarding the defendant's case.").

Plaintiff relies on the Second Circuit's *Ligon* decision, but the facts of that

case are materially different.  Indeed, to read the *Ligon* Court's summary of its

decision is to distinguish it from these two cases:

> The goal of section 455(a) is to avoid not only partiality
> but also the appearance of partiality.  The section does
> so by establishing an "objective standard 'designed to
> promote public confidence in the impartiality of the
> judicial process.'"  The rule functions as a critical
> internal check to ensure the just operation of the
> judiciary.  Our Court, sitting *en banc*, has stated that
> there exists "unusual circumstances where both for the
> judge's sake and the appearance of justice, an
> assignment to a different judge is salutary and in the
> public interest, especially as it minimizes even a
> suspicion of partiality." And as other circuits have
> correctly noted, "'if the question of whether § 455(a)
> requires disqualification is a close one, the balance tips
> in favor of recusal.'"
>
> We emphasize at the outset that we make no findings of
> misconduct, actual bias, or actual partiality on the part
> of [the district judge].   Following our review of the
> record, however, we conclude that her conduct while on
> the bench, which appears to have resulted in these
> lawsuits being filed and directed to her, in conjunction
> with her statements to the media and the resulting
> stories published while a decision on the merits was
> pending and while public interest in the outcome of the
> litigation was high, might cause a reasonable observer
> to question her impartiality. For this reason, her
> disqualification is required by section 455(a).

*Ligon*, 736 F.3d at 123-24 (footnotes omitted); *see also id.* at 124 ("The

appearance of partiality stems in the first instance from comments made by

[the district court] that a reasonable observer could interpret as intimating her

views on the merits of a case that had yet to be filed, and as seeking to have that case filed and to preside over it after it was filed."). None of these facts is present in the instant cases.

It is understandable that Plaintiff would be concerned that the Court's prior employment might place it in the position of being both prosecutor and judge, or might afford it inside information regarding Plaintiff's cases. As detailed herein, however, those concerns are unwarranted. The Court has no specialized knowledge of Plaintiff's state or federal prosecutions, or of the circumstances that precipitated them. Accordingly, his renewed motion for recusal is denied.

Further, by this Order, the Court lifts the stay in these two actions. Certain defendants have submitted pre-motion letters seeking to file motions to dismiss. The Court will thus schedule motion practice to occur concurrently in both matters. The Court recognizes that certain other defendants in the *Wittner* case filed motions to dismiss before stays were imposed. However, their arguments are almost certainly affected by the subsequent developments in Plaintiff's federal criminal prosecution. Accordingly, the Court will deny those motions without prejudice to their refiling.

Any Defendant seeking to file a motion to dismiss must do so on or before **August 3, 2018**; supporting memoranda of law may not exceed 25 pages, unless the motion is submitted on behalf of multiple defendants, in which case it may not exceed 35 pages. Moving defendants are required to submit to Plaintiff copies of any authority cited in their opening or reply

14

memoranda of law, whether such authorities are reported or unreported. Plaintiff's consolidated memorandum in opposition to all motions will be due on or before **September 21, 2018**; Plaintiff's memorandum may not exceed 70 pages.  Reply briefs will be due on or before **October 5, 2018**; reply briefs may not exceed 15 pages.

Separately, Plaintiff has filed a motion for sanctions in the *Vance* litigation.  (1800 Dkt. #120).  Counsel for Defendants Vance, Temple, Stuart, Weiss, and Pederson is ORDERED to submit a written letter brief in response to that motion on or before July 13, 2018.

The Clerk of Court is directed to terminate the motion at docket entry 150 in Case. No. 15 Civ. 1800, and the motions at docket entries 32, 38, 43, and 79 in Case No. 15 Civ. 9621.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      June 19, 2018
            New York, New York

_____
            KATHERINE POLK FAILLA
            United States District Judge

*Sent by First Class Mail to:*
Royce Corley
Reg. No. 68011-054
Federal Correctional Institution
33 1/2 Pembroke Road
Danbury, CT 06811