UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――――――――

ROYCE CORLEY,

                            Plaintiff,                 15 Civ. 9621
                                                       (Failla, J.)
v.

HON. BONNIE G. WITTNER, et al.,

                                              MEMORANDUM
                         Defendants.

――――――――――――――――――――――――――――――

**MEMORANDUM OF LAW OPPOSING DEFENDANTS' MOTIONS
TO DISMISS, SUPPORTING PLAINTIFF'S CROSS-MOTIONS
FOR DEFAULT, PARTIAL JUDGMENT ON THE PLEADINGS,
LEAVE TO TAKE DISCOVERY AND AMEND THE COMPLAINT**



Royce Corley, pro se
Reg. No. 68011-054
Federal Correctional Institution - Low
P.O. Box 1000
Petersburg, VA 23804-1000
68011054@imail.klolk.com

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................... 1

STANDARD OF REVIEW .......................................................... 4

DISCUSSION ................................................................. 6

   1. Motion to Dismiss: .................................................... 6

      I. Hon. Bonnie G. Wittner, J.S.C. ................................... 6

         (A) Sovereign Immunity (Official Capacity) ................. 6

         (B) Judicial Immunity (Individual Capacity) ............... 6

         (C) Heck Defense .......................................... 10

      II. Michael J. Barry, Ports & Files, Inc.,
          Glenn F. Hardy, Esq. and Glenn F. Hardy, P.C. .............. 10

         (D) State Actors .......................................... 10

         (E) Conspiracy ............................................ 10

         (F) Heck Defense .......................................... 11

         (G) NIED and Statute of Limitations ....................... 11

         (H) Unjust Enrichment ..................................... 12

         (I) Fraud ................................................. 13

         (J) Unfair Business Practices ............................. 13

      III. Cyrus R. Vance Jr., John Temple, David Stuart,
          Gregory Weiss and John Doe (hereinafter "DANY") ........... 14

         (K) Viable Claims for Relief .............................. 14

         (L) Eleventh Amendment (Official Capacity) ................ 16

         (M) Prosecutorial Immunity (Individual Capacity) .......... 17

         (N) Personal Involvement .................................. 18

         (O) Heck Defense .......................................... 19

         (P) Substantive Due Process ............................... 19

         (Q) Outrageous Government Conduct ......................... 20

         (R) Pre-Trial Publicity (Obstruction of Justice) ......... 24

         (S) Equal Protection ...................................... 26

## TABLE OF CONTENTS
### (continued)

(T) Negligent Infliction of Emotional Distress ............. 29

(U) Statute of Limitations ................................. 29

IV. City of New York (hereinafter "NYC") ...................... 30

(V) Heck Defense .......................................... 30

(W) Qualified Immunity .................................... 30

(X) Monell Defense ........................................ 30

(Y) Notice of Claim Defense ............................... 31

CROSS-MOTIONS ................................................. 31

2. Motion to Enter Default: ................................. 31

3. Partial Judgment on the Pleadings: ...................... 33

A. State Charges Dismissed in Plaintiff's Favor ................. 33

B. State Charges are Distinguished from the
   Federal Charges ........................................ 33

C. Heck Does Not Apply to Malicious Prosecution, Speedy Trial or
   Legal Malpractice where the State Proceeding is Final ........ 35

D. Heck Does Not Apply to Claims Independent of the
   Termination of the Criminal Proceedings ........... ...... 36

E. Pending Federal Habeas Corpus and Future Release
   Further Defeats Heck Defense ........................... 36

F. Heck Defeated by "Split Verdict" ...................... 37

G. Applying Heck Causes Prejudice ...................... 37

4. Allow Time to Take Discovery: ........................... 37

5. Leave to Amend: ........................................ 38

CONCLUSION .................................................... 38

## MEMORANDUM OF LAW

Plaintiff ROYCE CORLEY, acting pro se, files this Memorandum of Law: (1) opposing Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b); and in support of Plaintiff's cross-motions to (2) enter the default of Defendants HONORABLE BONNIE G. WITTNER, J.S.C., MICHAEL J. BARRY, PORTS & FILES, INC. and the CITY OF NEW YORK pursuant to Fed. R. Civ. P. 55(a); (3) seek Partial Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c); (4) allow time to take discovery pursuant to Fed. R. Civ. P. 56(d); and (5) leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a), or such further relief as deemed just and proper under the circumstances.

## PRELIMINARY STATEMENT

Defendants make a plethora of assorted (and sometimes conflicting) arguments to base their motions to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). However, none of the arguments made are sufficient to warrant dismissal. In fact, a majority of the arguments lack factual support, are deliberate misinterpretations of the law, or outright frivolous, for example:

(I) Defendant Judge Wittner argues that: (A) she is shielded by sovereign immunity "from money damages" in her official capacity as a New York State Judge--however she is only sued in her individual capacity; (B) she has "absolute judicial immunity"--however she is only charged for acts done in the "clear absence of all jurisdiction;" and (C) "Corley's § 1983 claims are barred under Heck"--however this arguments disregards that Corley was never convicted of state charges for which the complaint is based, and the allegations if proven true would not necessarily render his federal conviction invalid (Wittner Mot. at 6-10);

(II) Defendants Michael J. Barry, Ports & Files, Inc., Glenn F. Hardy, Esq. and Glenn F. Hardy, P.C., argue identically that: (D) they aren't "state actors"

1

--however this disregards that they aided and conspired with state actors and the § 1985 claims do not require state actors (Barry Mot. at 13-15, Hardy Mot. at 7-9); (E) Plaintiff only pleads "conclusory" allegations of a conspiracy--but this disregards the specific personal acts each defendant committed (Barry Mot. at 15-16, Hardy Mot. at 9-11); (F) Plaintiff's legal malpractice claim does not plead a "colorable claim of innocence"--despite the fact Corley remains innocent of all state charges for which the Complaint is limited to (Barry Mot. at 17-18, Hardy Mot. at 11-13); (G) Plaintiff does not allege "Defendants' conduct unreasonably threatened Plaintiff's physical safety in some way" and the Negligent Infliction of Emotional Distress ("NIED") claim is time-barred under a one (1) year statute of limitation--however this ignores that Defendants' actions unduly extended Plaintiff's imprisonment and threatened his safety in prison. Furthermore, the NIED claim falls under a three (3) year statute of limitation (Barry Mot. at 18-19, Hardy Mot. at 13-14); (H) "Unjust Enrichment," (I) "Fraud," and (J) "Unfair Business Practice" claims are deficiently pleaded or duplicative of the legal malpractice claim--however Defendants' arguments are non-sequitor, ignore facts pleaded, and each claim is distinguished from the legal malpractice claim. Furthermore, contrary and alternative claims for relief are permitted by Fed. R. Civ. P. 8(d)(Barry Mot. at 19-21, Hardy Mot. at 14-17);

(III) Defendants Cyrus R. Vance, Jr., John Temple, David Stuart, Gregory Weiss and John Doe (hereinafter "DANY") argue: (K) vaguely that "the Complaint fails to allege a viable claim for which relief can be granted" in a long diatribe challenging the truthfulness of the allegations without any legal support--which disregards the pleading requirements of Fed. R. Civ. P. 8(a)(2) (Plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief")(DANY Mot. at 8-11); (L) Official-capacity claims against DANY "are barred by the Eleventh Amendment"--disregards that they are not being charged with acts done in a "quasi-judicial" capacity,

but as "investigators" acting for the City of New York (DANY Mot. at 11); (M) Individual-capacity claims "are barred by absolute prosecutorial immunity"--disregards that they are not immune for acts done as "investigators" and they are estopped from asserting this defense (DANY Mot. at 12-14); (N) the Complaint fails to "allege personal involvement of DANY"--ignores that specific acts are pleaded which are personally attributed to each defendant (DANY Mot. at 14-16); (O) "Plaintiff's conviction bars most of his claims"--disregards that Plaintiff was never convicted on state charges and his federal conviction has no relevance to a "Heck" defense (DANY Mot. at 16-20); (P) "Substantive due process claims must be dismissed"--is a frivolous argument as each claim for substantive due process is distinct from the other constitutional violations alleged (DANY Mot. at 21); (Q) "Plaintiff fails to allege outrageous government conduct"--convolutes the facts plead, and seems to confirm the allegations (DANY Mot. at 22-23); (R) "Pre-trial publicity" argument is without merit because a "fair trial" is not an element of the Obstruction of Justice (DANY Mot. at 23-24); (S) "Equal protection" and (T) "No actionable negligence" arguments are further convoluted arguments that lack merit (DANY Mot. at 24-27); and (U) "Several claims are time-barred" argument is patently frivolous because none of the claims accrued until the prosecution terminated in Plaintiff's favor in February 2013, for which all of the claims are under a three (3) year statute of limitations period or greater (DANY Mot. at 27-28);

(IV) Defendant City of New York argues that: (V) "Plaintiff's federal conviction bars many of his claims"--disregards that no state conviction exists; (W) "Qualified immunity" defense is inapplicable because clearly established statutory and constitutional rights of Plaintiff were violated; and (X) vague "lack of Monell liability" defense disregards alleged facts about unconstitutional policies and customs the City adopted and condoned; (Y) "Notice of claim" is frivolous since no state claims against City (NYC Mot 6-11, 15-22);

CROSS-MOTIONS

(V) Default is warranted against Defendants Honorable Bonnie G. Wittner, J.S.C., Michael J. Barry, Ports & Files, Inc., and the City of New York, because these defendants failed to plead or otherwise defend in a timely manner pursuant to Fed. R. Civ. P. 55(a). Furthermore, these defendants are barred from challenging their liability, because their default constitutes an admission to all well-pleaded factual allegations.

(VI) Partial Judgment on the Pleadings is warranted with respect to the Plaintiff's "favorable termination of the prosecution" since all of the state charges were dismissed; and Plaintiff's federal conviction is irrelevant to this case and could eventually be overturned upon pending motions with trial court.

(VII) This Court should not construe any motion to dismiss as one for summary judgment (since extraneous materials were filed in support of the motions), because time should be permitted to take discovery and further testimony pursuant to Fed. R. Civ. P. 56(d).

(VIII) Finally, leave to amend the Complaint should be granted (if necessary) to identify Defendant JOHN DOE, and to correct any claims deemed insufficiently pleaded, or such further relief deemed just and proper.

STANDARD OF REVIEW

Rule 12(b):

"In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the favor of the nonmoving party." Koegel v. PH Media (USA), Inc., 2018 U.S. Dist. LEXIS 56110 (S.D.N.Y., Mar. 30, 2018)(internal citation and quotations omitted). "In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." Id.

Rule 55(a):

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend ..., the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "The entry of default is therefore not discretionary." Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC., 779 F.3d 182, 186 (2d Cir. 2015).

Rule 12(c):

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss under Rule 12(b)(6). See Cleveland v. Caplan Enters., 448 F.3d 518, 521 (2d Cir. 2006). A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." Burns Int'l Sec. Servs., Inc. v. Int'l Union, 47 F.3d 14, 16 (2d Cir. 1995).

Rule 56(d):

"A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit ... showing: (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Lunts v. Rochester City Sch. Dist., 515 Fed. Appx. 11, 13-14 (2d Cir. 2013)(internal citations and quotations omitted).

Rule 15(a):

"The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is inconsistent with the spirit of the Federal Rules." Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995)(internal quotations omitted).

5

<u>DISCUSSION</u>

1. Motions to Dismiss:

Defendants Honorable Bonnie G. Wittner, J.S.C., Michael J. Barry, Ports & Files, Inc., Glenn F. Hardy, Esq., Glenn F. Hardy, P.C., Cyrus R. Vance, Jr., John Temple, David Stuart, Gregory Weiss and John Doe moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons these motions should be denied in their entirety (the "Heck Defense" arguments raised are addressed in the cross-motion for Partial Judgment on the Pleadings):

    I. Hon. Bonnie G. Wittner, J.S.C.

      (A) Sovereign Immunity (Official Capacity)

Judge Wittner wishes to be shielded from "money damages" in her **official capacity**. However this argument is moot since Plaintiff only alleges claims against her in her **individual capacity** (see Comp., ¶¶16, 60-61, 63, 66).

      (B) Judicial Immunity (Individual Capacity)

Judge Wittner wishes to be immune from suit because all of the acts "allegedly performed by Justice Wittner either arose from, or related to, Corley's criminal prosecution, and were thus plainly judicial in nature." This statement ignores all of the **non-judicial** acts Judge Wittner is alleged to commit in the Complaint, e.g.:

> "On or about August 22, 2011 through January 10, 2012, DANY solicited Judge Wittner to coerce and entice Minna to engage in prostitution, with the intent to fraudulently obtain search warrants and manufacture a sting operation against the Plaintiff" (Comp., ¶18);

> "Judge Wittner induced Minna to engage in prostitution by: (1) promising her boyfriend Nate a favorable disposition, or an unfavorable disposition, if she failed to participate; (2) threatening her with prosecution; or (3) offering something of value" (Id.);

> "Judge Wittner and DANY manufactured Supreme Court jurisdiction of the subject-matter by compelling Minna[,] to participate in the January 12th sting" (Comp., ¶24);

6

These alleged acts if proven true would constitute a violation of N.Y. Penal Law §§ 230.25(2)("Advances ... prostitution of a person less than nineteen years old")(circa 2012); 230.30(1)("Advances prostitution by compelling a person by force or intimidation to engage in prostitution")(circa 2012); and 230.34(5)(g)(circa 2012):

> "using force or engaging in any scheme, plan or pattern to compel or induce the person being patronized to engage in or continue to engage in prostitution activity by means of instilling fear in the person being patronized that, if the demand is not complied with, the actor or another will do one or more of the following: use or abuse his or her position as a public servant by performing some act within or related to his or her official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely"

I could not find any New York State laws that give Judges jurisdiction or authority to compel prostituion or to recruit and cultivate informants for an investigation. All of these acts are not judicial in nature and could not be construed as such. Immunities are grounded in "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229-230 (1988).

> The Supreme Court "never suggested that the President, or any other official. has an immunity that extends beyond the scope of any action taken in an official capacity ... judges, prosecutors, or congressional aides--all having absolute immunity--are not immune for acts outside official duties." Clinton v. Jones, 520 U.S. 681, 694 (1997).

Some of the acts alleged could be construed as "judicial" in nature. However. with respect to these acts, they occurred before Judge Wittner had jurisdiction over the case, e.g.:

> "In or about August 22, 2011 through February 15, 2012, in association with the matter of People v. Nathaniel Jackson, ... People v. Charles Brito ..., Judge Wittner and DANY unlawfully established a quasi-grand jury to issue subpoenas. court orders, etc.; with the intent to illegally obtain access to the Plaintiff's personal electronic communications, bank records, phone records and conversations" (Comp., ¶17).

In layman's terms, I alleged--and can prove--that Judge Wittner misused the jurisdiction she had in the aforementioned criminal cases to illegally invade the Plaintiff's privacy. I characterize these acts as establishing a "quasi-grand jury" because this form of judicial investigation is restricted to the province of a duly sworn grand jury. Furthermore,

> "Superior courts have preliminary jurisdiction of all offenses, BUT they exercise such jurisdiction ONLY by reason of and through the agency of their GRAND JURIES." N.Y. Crim. Proc. Law § 10.20(2)(emphasis added).

According to the available information, the Plaintiff was not under any grand jury investigation until after the sting operation on January 12, 2012. Also, Plaintiff did not come under Judge Wittner's jurisdiction until his arraignment on February 15, 2012 (Comp., ¶¶23-28). Given these facts, it is clear that Judge Wittner "acted in the clear absence of all jurisdiction." Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997).

> "A clear absence of jurisdiction has objective and subjective components, requiring a showing (1) that no reasonable judge would have thought jurisdiction proper and (2) that the judge actually knew or must have known of the jurisdictional defect." Gotbetter v. Wendt, 371 Fed. Appx. 165, 166 (2d Cir. 2010)(citing Id. at 934)(internal quote omitted).

The circumstances alleged in the Complaint meet both criteria because no reasonable New York Supreme Court Justice would have thought to have jurisdiction to issue orders to access Plaintiff's records under the jurisdiction bestowed over a different individual charged with separate crimes. Furthermore, it is obvious from the circumstances that Judge Wittner knew Plaintiff was not under her jurisdiction since he was not arraigned or under grand jury investigation during this time.

Once Judge Wittner obtained jurisdiction over Plaintiff's case she committed additional acts for which judicial immunity did not apply because they were administrative in nature or constituted bribes, e.g.:

"Judge Wittner and DANY engaged in fraud or other acts to circumvent established procedures, to have Plaintiff's case assigned to Judge Wittner, with the intent to hide unlawful acts committed by the defendants" (Comp., ¶27);

"In exchange for Mr. Hardy's assistance in tolling speedy-trial time, DANY and Judge Wittner provided him with favorable dispositions on his other cases, or something else of value" (Comp., ¶34);

"... Judge Wittner pressured DANY to resolve the case without a trial, to prevent disclosure of unlawful acts committed by the defendants" (Comp., ¶38);

"... motivated by DANY and Judge Wittner, Mr. Hardy hired private investigator Michael J. Barry ... to publicize Plaintiff's case, with the intent of enticing the U.S. Attorney to take the case" (Comp., ¶41);

The acts of case assignment and hiring experts were "administrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." Forrester, 484 U.S. at 228; "a judge's absolute immunity does not extend to actions performed in a purely administrative capacity." Clinton, 520 U.S. at 694.

Offering bribes or sexual favors (in this case inducing prostitution of a minor) forfeits the application of absolute immunity. See Schloss v. Bouse, 876 F.2d 287, 291 (2d Cir. 1989). Additionally, these clearly illegal acts and other acts of fraud should estop her from asserting an absolute immunity defense. See e.g., Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 400 (2d Cir. 2010) ("Equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to ... the former's words or conduct"). In a nutshell, Judge Wittner should not be awarded with immunity where she engaged in the very illegal acts that manufactured the charges that eventually entered her jurisdiction. Finally, Judge Wittner has not meet her burden of establishing that her acts qualify for absolute immunity. See Bernard v. County of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004)("it is the party claiming absolute immunity who bears the burden of establishing its applicability").

9

(C) Heck Defense

This matter is addressed below in Plaintiff's cross-motion for Partial Judgment on the Pleadings.

II. Michael J. Barry, Ports & Files, Inc.,
Glenn F. Hardy, Esq. and Glenn F. Hardy, P.C.
(hereinafter "Private-Defendants")

(D) State Actors

The Private-Defendants raise identical arguments in their motions to dismiss. In the first, they argue that they are not "state actors" and therefore all of the federal constitutional claims should be dismissed. But this ignores the fact that they are liable because they aided, abetted and conspired with state actors, e.g.: (1) Hardy took bribes to toll speedy-trial time against the interests of his client; and (2) Hardy and Barry reported Plaintiff's case to the media at the direction of DANY and Judge Wittner (Comp., ¶¶34, 41). The actions of a nominally private person are attributed to the state when, as relevant here,

> "the private party acted in concert with the state actor to commit an unconstitutional act, i.e., the private defendant was a willful participant in joint activity with the state or its agents." Missere v. Gross, 826 F. Supp. 2d 542, 566-67 (S.D.N.Y. 2011)(internal quotations omitted).

Furthermore, there exists no "state actor" requirement for violations of 42 U.S.C. §§ 1985(2) and 1985(3). See Mullarkey v. Berglum, 323 F. Supp. 1218, 1228 (S.D.N.Y. 1970)("it is ... unnecessary to the maintenance of an action under § 1985(2) to allege or show any state action or involvement by any state official"); and Griffin v. Breckenridge, 403 U.S. 88, 101-102 (1971)("legislative history point unwaveringly to 1985(3)'s coverage of private conspiracy").

(E) Conspiracy

Private-Defendants argue vaguely that the conspiracy claims against them are "conclusory." But this ignores specific allegations in the Complaint that they knowingly violated and conspired to violate the Plaintiff's constitutional

rights, e.g.: (1) Hardy knowingly agreed with DANY to violate Plaintiff's speedy-trial rights under the sixth amendment, in exchange "DANY and Judge Wittner provided him with favorable dispositions on his other cases, or something else of value; and (2) Hardy and Barry knowingly agreed with DANY and Judge Wittner to publicize Plaintiff's case in the media (as they have done to other clients) with the intent of compelling Plaintiff to plead guilty (which would have completely forfeited his federal rights to bring this suit under the "Heck" doctrine), and convincing the U.S. Attorney to take jurisdiction (which eventually occurred)(Comp., ¶¶29-49, 62-63). These allegations satisfy the requirements of a § 1983 conspiracy claim as follows:

> "[To] state a § 1983 conspiracy claim, [a] plaintiff must allege: (1) an agreement between ... a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damanges." Biswas v. City of New York, 973 F. Supp. 2d 504, 533 (S.D.N.Y. 2013).

DANY and Judge Wittner could not have achieved their gaols without the assistance of Hardy and Barry. Furthermore, should a conspiracy not be established, the Complaint also pleads that the Private-Defendants directly violated Plaintiff's constitutional rights under a aiding and abetting theory. See e.g., Dickinson v. Igoni, 76 A.D.3d 943, 945, 908 N.Y.S.2d 95 (2d Dep't 2010)(New York law recognizes a claim for aiding and abetting a tort).

### (F) Heck Defense

This matter is addressed below in Plaintiff's cross-motion for Partial Judgment on the Pleadings.

### (G) NIED and Statute of Limitations

Private-Defendants argue that the NIED claim must fail because Plaintiff does not "allege that defendants conduct unreasonably threatened plaintiff's physical safety in some way," and the NIED claim is governed by "a one (1) year statute of limitations."

11

First, this argument ignores that: (1) Hardy's actions caused plaintiff to suffer over 215 days of unlawful incarceration; and (2) both Hardy and Barry's actions caused Plaintiff's crimes of promoting prostitution of minors to be publicized on Live-TV and newspapers (which could have caused Plaintiff to be attacked in prison for sexual offenses; and threatened him with a potential life sentence in federal prison)(Comp., ¶¶35-49, 53, 66). A plaintiff may recover for NIED by showing "a breach of a duty of care resulting directly in emotional harm ... even though NO PHYSICAL INJURY occurred." Taggart v. Costabile, 131 A.D.3d 243, 14 N.Y.S.3d 388, 397 (2d Dep't 2015)(emphasis added).

Second, "a claim for negligent infliction of emotional distress is subject to a three-year statute of limitations." AB v. Rhinebeck Cent. Sch. Dist., 361 F. Supp. 2d 312, 317 (S.D.N.Y. 2005)(citing N.Y. Civ. Proc  Laws & Rules § 214). Therefore this cliam is timely.

(H) Unjust Enrichment

Private-Defendants argue that the unjust enrichment claim is deficient because no "performance was rendered for the defendant." This argument is muddled because it misconstrues the legal concept of "performance." Performance basically means "the act of doing something" (The Law Dictionary (c) 2002 by Anderson Publishing Co.). The performance rendered for Mr. Hardy and Mr. Barry was simply hiring them. The performance requirement exists to ensure a nexus between a plaintiff and a defendant's actions. However, courts have long been divided over "whether New York law imposes a nexus requirement to state a claim for unjust enrichment." Bildstein v. Mastercard Intl., Inc., 2005 U.S. Dist. LEXIS 10763, 2005 WL 1324972, *5 (S.D.N.Y. 2005). See also, Aetna Cas. & Sur. Co. v. LFO Constr. Corp., 207 A.D.2d. 274, 615 N.Y.S.2d 389, 389 (1st Dep't 1994)("the unjust enrichment claim does not require that the party enriched take an active role in obtaining the benefit").

12

Within full context, Plaintiff states a claim for unjust enrichment because Private-Defendants were enriched by selling Plaintiff's case to the media for the purpose of financial gain (and did gain therefrom), at Plaintiff's expense (funds allocated for legal services misappropriated for personal gain), and "equity and good conscience militate against permitting defendant[s] to retain what plaintiff is seeking to recover [(illicit gains)]." Briarpatch, Ltd. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).

(I) Fraud

Private-Defendants argue vaguely that "Corley fails to plead his fraud claim with any specificity whatsoever." This argument convolutes the requirements of Fed. R. Civ. P. 9(b):

> "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Plaintiff argues with accuracy that: Hardy and Barry knowingly publicized confidential facts about Plaintiff's case to the media, despite the "oath of confidentiality" they made to him (Comp., ¶¶41-52, 69). Furthermore, fraud is implicitly obvious from the circumstances: Plaintiff hired these Defendants to act as a lawyer and private investigator not as publicists!

(J) Unfair Business Practices

Private-Defendants argue "Plaintiff does not allege that the challenged act was consumer oriented" nor that "the alleged deceptive practices impacted anyone other than the plaintiff himself." This argument belies the record, because it is specifically plead that other consumers of the Defendants' services were equally affected (Comp., ¶¶42, 52, 56). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." Wilson v. Northwestern Mutual Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010).

13

Finally, the Unjust Enrichment. Fraud and Unfair Business Practice claims are clearly distinguished from the Legal Malpractice claim by the conduct alleged and damages sought. e.g.: (1) malpractice alleges "speedy trial" violations independent of the other claims; (2) unjust enrichment seeks to recover Defendants' illicit gains; (3) fraud is limited to their breach of confidentiality; and (4) unfair business practices entitles the Plaintiff to both statutory and treble damages (which the other claims do not guarantee) (Comp., ¶¶67-70). See N.Y. Gen. Bus. Law § 349(h). Moreover, a plaintiff is permitted to "set out two or more statements of a claim or defense alternatively or hypothetically" and "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2-3); see also, Bridgeway Corp. v. Citibank, N.A., 132 F. Supp. 2d 297, 305 (S.D.N.Y. 2001)("dismissal of plaintiff's alternative theories at this state would violate the liberal policy of [Rule 8(d)(2)] which allows plaintiffs wide latitude in framing their right to recover")(internal quotations and citations omitted).

### III. Cyrus R. Vance Jr., John Temple, David Stuart, Gregory Weiss and John Doe (hereinafter "DANY")

#### (K) Viable Claims for Relief

In a completely vague and long diatribe DANY seeks to challenge the factual plausibility and truthfulness of the Complaint, but ignores that at the pleading stage, Plaintiff is only required to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); which must be accepted as true and "construed in favor of the plaintiff." Sanderson v. Horse Cave Theatre 76, 881 F. Supp. 2d 493, 502 (S.D.N.Y. 2012).

Count I (Privacy) and Count III (Speedy Trial) are briefly addressed here, while Count II (Outrageous Government Conduct), Count IV (Obstruction of Justice), Count V (Equal Protection) and Count VI (Negligent Infliction of Emotional Distress) are discussed further on below:

### i. Privacy (Count I)

"To establish a violation of the constitutional right to privacy, plaintiff must [establish that he] had a privacy interest--that is, a reasonable expectation of privacy--in the information that was disclosed." Rutherford v. Katonah-Lewisboro Sch. Dist., 670 F. Supp. 2d 230, 239 (SDNY. 2009).

Plaintiff clearly established that his right to privacy under the first and fourth amendment was violated by Judge Wittner and DANY when they abused their authority to issue court orders associated with the matter of People v. Nathaniel Jackson, Ind. #4157/2011 & 34/2012 (N.Y. Sup. Ct.) and People v. Charles Brito, et al., Ind. #3013/2011 (N.Y. Sup. Ct.), to obtain Plaintiff's "personal electronic communications, bank records, phone records and conversations, etc." (Comp., ¶¶17, 60). This information was learned from subpoenas issued by ADA David Stuart to Time Warner Cable, Sprint, Municipal Credit Union and others, to obtain Plaintiff's internet history, text messages, bank records, etc. (circa September 2011). However these subpoenas were issued under the Jackson, Brito, et al. cases, and not a case associated with Plaintiff and certainly not via any grand jury. The Supreme Court has recognized a constitutional privacy right under the fourteenth amendment protecting "the individual interest in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). The Second Circuit has also recognized a constitutional right to privacy with respect to certain financial information. See Eisenbod v. Suffolk County, 841 F.2d 42, 45 (2d Cir. 1988).

### ii. Speedy Trial (Count III)

With respect to the "speedy trial" claim, DANY accuses the Plaintiff of making "wild blanket accusations." This characterization is patently false because there exists factual support for the Plaintiff's allegations. One question to ask Mr. Hardy is why did he agree to toll speedy-trial time against his client's own liberty interests? What was motivating him to do this, besides some personal benefit?

**15**

While Plaintiff does not know the exact condition of Mr. Hardy's mind, it is believed that the reason was bribery from DANY in the form of "favorable dispositions on his other cases, or something else of value" (Comp., ¶¶29-35, 62). At the pleading stage "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b)(emphasis added). Moreover, other clients of Mr. Hardy have lodged similar allegations. See e.g., Murdock v. Legal Aid Soc'y, 2015 U.S. Dist. LEXIS 1487 (E.D.N.Y., Jan. 6, 2015) ("Plaintiff contends that his court-appointed criminal defense attorneys violated his rights to due process and a speedy trial by consenting, without his knowledge and/or consent, to adjournments requested by District Attorney Rice"); Watkins v. Matarazzo, 2015 U.S. Dist. LEXIS 178636 (S.D.N.Y., Sep. 22, 2015) ("Watkins sued ... Glenn Hardy for conspiracy to deny him due process during his criminal proceedings"); and Akassy v. Hardy, 887 F.3d 91 (2d Cir. 2018)(same).

(L) Eleventh Amendment (Official Capacity)

As an initial matter, the State of New York waived sovereign immunity with respect to any constitutional claims against DANY in their official capacity. The Attorney General explicitly refused to represent DANY when they only appeared on behalf of Judge Wittner (Dkt. #53, "Notice of Appearance"). "A state may waive its immunity and agree to be sued in federal court." Richardson v. N.Y.S. Dep't of Corr. Serv., 180 F.3d 426, 448 (2d Cir. 1999). Moreover, the privilege of sovereign immunity belongs to the State alone, therefore DANY "itself is not allowed to assert [it]." Owen v. City of Independence, 445 U.S. 622, 638 (1980).

Regardless, the Eleventh Amendment immunity available to the State is of no moment because "[u]nder New York law, DAs and ADAs are generally presumed to be local county officers, not state officers." Myers v. County of Orange, 157 F.3d 66, 76 (2d Cir. 1998), citing N.Y. Pub. Off. Law § 2; and N.Y. County Law § 53.

"New York courts recognize a narrow exception to this general rule when a prosecutor makes <u>individual</u> determinations about whether to prosecute violations of state penal laws." <u>Myers,</u> supra at 77 (emphasis added). None of the claims for relief deal with an individual prosecutor's discretion. In fact, all of the claims are founded upon "extracurricular activities" outside of their prosecutorial duties, i.e., invasion of privacy, compelling prostitution, bribery, media publicity, racial prejudice, etc.

(M) Prosecutorial Immunity (Individual Capacity)

DANY is not entitled to absolute immunity for: (1) preparing perjured or falsified court orders to invade Plaintiff's privacy, (2) compelling prostitution to cultivate an informant, (3) bribing defense attorneys, (4) communicating with the media, and (5) racial prejudice, all while acting in the capacity of investigators. See Exhibit K-1 ("Investigation Bureau Follow-up Reports" dated from August 2011 to January 2012).

> "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 273 (1993).

Likewise, "the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor." Id. "Where the prosecutor acts without clear jurisdiction and without any colorable claim of authority, the prosecutor loses the absolute immunity he would otherwise enjoy." <u>Rodrigues v. City of New York</u>, 193 A.D.2d 79, 86, 602 N.Y.S.2d 337 (1st Dep't 1993). "A government official does not have absolute immunity for acts that are manifestly or palpably beyond his authority or performed in the clear absence of all jurisdiction." <u>Doe v. PHillips</u>, 81 F.3d 1204, 1210 (2d Cir. 1996). See also, <u>Tomko v. Lees</u>, 416 F. Supp. 1137, 1139 (W.D. Pa., 1976)(immunity "does not extend to their conduct while engaged in such police activities as recruiting or cultivating informants"); <u>Kalina v. Fletcher</u>, 522 U.S. 118, 130-31 (1997)(no

17

immunity for false statements in affidavit supporting arrest warrant); Powers v. Coe, 728 F.2d 97, 105 (2d Cir. 1984)(no absolute immunity for "systematic leaks of information to media"); MacRae v. Motto, 543 F. Supp. 1007, 1010 (S.D.N.Y. 1982)(no immunity because "[p]articipation in an illegal search that violates a person's fourth amendment rights is independent of the prosecution since the victim is harmed by the invasion of his zone of privacy, whether or not the evidence unlawfully obtained is introduced at trial"); Schloss v. Bouse, supra (no immunity for bribes and sexual misconduct); and Sarf v. Huntington, 702 F. Supp. 395, 400 (E.D.N.Y. 1988)(no immunity for "selectively enforcing the Huntington Town Code in an effort through racial animus). Finally, just like Judge Wittner, DANY is estopped from asserting an absolute immunity defense for a prosecution they manufactured; and have not meet their burden of establishing the defense's applicability. See Republic of Ecuador, supra; and Bernard, supra, respectively.

(N) Personal Involvement

The Complaint clearly accuses Cyrus R. Vance, Jr., John Temple, David Stuart, Greg[ory] Weiss and John Doe as being personally involved in the violation of Plaintiff's constitutional rights (Comp., ¶¶13, 16-25, 34-41, 46-47, 54, 60-66). What DANY convolutes is Plaintiff's general reference to all of these defendants as "DANY" (Comp., ¶9). This is done solely for brevity and some uncertainty as to which prosecutor committed a particular act--but it is known that Defendants worked collectively. It is further known that both David Stuart and Gregory Weiss appeared in court and John Temple as head of the Human Trafficking Unit, assisted in the investigation. See Exhibit K-2 ("e-Justice NY Background Search" by John Temple dated Sep. 8, 2011). It is also known that Cyrus Vance continued the policy of cultivating prostitute-informants from his predecessor Robert Morgenthau (Exhibit E, pg. 99, 137); and held a personal interest in the prosecution of Plaintiff's case. See Exhibit J-1 & J-2 (articles by Vance referencing Plaintiff's case to push for change in New York sex traf-

18

ficking laws). It could also be inferred from the circumstances that Cyrus Vance at the minimum acquiesced to using an underage prostitute-informant: as no sane prosecutor would knowingly violate N.Y. Penal Law § 230.34(5)(g) without confir-

For each Defendant personal involvement was established since it is alleged they participated directly, failed to remedy the underlying violations, created unconstitutional policies and exhibited deliberate indifference to unconstitutional acts being committed. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

(O) Heck Defense

This matter is addressed below in Plaintiff's cross-motion for Partial Judgment on the Pleadings.

(P) Substantive Due Process

Treatment of Count II (Outrageous Government Conduct) as a "substantive due process" claim is most appropriate because harm was inflicted prior to Plaintiff's arrest, from an invasion of privacy (Comp., ¶61). Likewise, claims for Outrageous Government Conduct are fundamentally due process violations. See United States v. Schmidt, 105 F.3d 82, 91 (2d Cir. 1997)("the concept of fairness embodied in the fifth amendment due process guarantee is violated by government action that is fundamentally unfair or shocking to our traditional sense of justice"); and Jennis v. Rood, 310 Fed. Appx. 439, 441 (2d Cir. 2009) ("outrageous government conduct is a substantive due process violation of the fourteenth amendment").

With respect to Count V (Equal Protection), this claim is obviously an "equal protection" claim that is clearly alleged. However it is also a "substantive due process" claim because it also deals with "Plaintiff's vindictive federal prosecution" (Comp., ¶64). The constitutional right to "due process [is] violated by a vindictive prosecution." Class v. United States, 138 S. Ct. 748, 810 (2018)(internal citations omitted).

19

(Q) Outrageous Government Conduct

As an initial matter, the Court must distinguish between a civil "outrageous government conduct" claim and one in the criminal context--which seeks to dismiss an indictment upon such a claim. Defendants point primarily to criminal cases which have a higher burden than civil cases (DANY Mot. at 22-23).

> For an outrageous government conduct "claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005).

If forcing an underage girl to engage in prostitution in order to fraudulently arrest her alleged pimp does not "shock the conscience" than nothing does! DANY interprets their conduct as simply "using one criminal to arrest another criminal" (DANY Mot. 22-23). But to the media and general public they exclaim that all prostitutes under 18 years old are victims (Exh. J-1 & J-2):

> "We need to amend our penal code so that Sex Trafficking can be proved without evidence of force, fraud or coercion when the victim is less than 18 years of age." (J-1, pg. 3);

> "The penal code must be changed to recognize the fact that children do not have the legal, psychological, or emotional capacity to consent to sexual activity." (J-1, pg. 2);

> "Federal laws recognize that underage teens can't consent to sex, so DA Cyrus Vance Jr. handed the case off to then--US Attorney Preet Bharara." (J-2, pg. 1);

The irony of this whole affair is that DANY supposedly champions to prevent underage prostitution, but when it suits their own interests they promote it! DANY and Judge Wittner's conduct was outrageous for the following reasons:

(1) Fraud is the core issue with Defendants' actions. They knowingly had Minna misrepresent herself as an adult, while also knowing she was in fact sixteen or seventeen years old. This permitted them to: (a) use administrative subpoenas under 18 U.S.C. § 3486(a)(1)(A)(i)(II)(which is unavailable for adult prostitution); and (b) charge Plaintiff with a felony, since promoting prostitution of an adult is a misdemeanor under N.Y. Penal Law § 230.20;

20

(2) They lied in court orders and the criminal complaint that Plaintiff was causing Minna to engage in prostitution, when in fact it was Defendants coercing her actions. The January 12, 2012 sting operation was completely bogus because Janel and Minna were no longer working with Plaintiff at this time;

(3) Janel admitted she did not offer sexual acts to the undercover cop Det. Giancarlo Cavallo (just like the other times they visited her); however used their own informant to say the keywords "doggystyle for $160" to initiate a phony arrest (Comp., ¶¶16, 23);

(4) DANY pretends that their sting operation was random, yet ignore that they have been investigating the Plaintiff since 2009 (Comp., ¶13, Exhibit K-3);

(5) During Plaintiff's federal trial, Det. Woods admits that the general purpose of a sting operation is to "rescue any underage victims" yet cannot explain why it was necessary to rescue Minna in January 2012, when she was clearly "rescued" at his office in December 2011. He also unknowingly admits that the sting operation was unrelated to the Plaintiff (Tr. 34, 150-151); yet it was still used as the sole basis for Plaintiff's arrest. See Dkt. #90-1 ("Criminal Court Complaint");

(6) During the trial of Nathaniel Jackson, Minna admits to meeting with DANY on numerous occassions beginning August 2011. Yet it remains an enigma how she is engaging in prostitution during the same time?

(7) This is not DANY's first rodeo, it is already publicly known that they previously forced Rebecca Kade to engage in prostitution in order to investigate Anna Gristina a/k/a "Soccer Mom Madame" (Exhibit E, pg. 137-138):

> "The assistant district attorney's office couldn't believe the information I provided in my first wiretap. But my work was far from over. It was clear to them I was an invaluable asset, and so they encouraged me to keep on working for Anna as a call girl. It was like the Wild West. They wanted me to keep breaking the law so they could get more information."

> "The ADA told me to work in order to garner information for him, and then turn over to his office the money and any

gifts that clients gave me. I actually did this. God knows if somebody pocketed the money. Technically, this ADA was my pimp. It was like sex slavery at the behest of the Manhattan District Attorney's Office. This cowboy still has a job in law enforcement, in another state, at an even higher level.

(8) It is also publicly known that DANY and NYPD Vice have previously staged bogus prostitution sting operations. See Pinter v. City of New York, 710 F. Supp. 2d 408 (S.D.N.Y. 2010); and Crosby v. City of New York, 269 F.R.D. 267 (S.D.N.Y. 2010)(public outcry from the gay community that the NYPD was entrapping men on prostitution charges);

(9) DANY intentionally used a 17 year old prostitute because New York law classifies them as accomplices (N.Y. Penal Law § 230.35); but under federal laws they are always seen as victims. See e.g., 18 U.S.C. §§ 1591, 2422, 2423, etc. This seems to offer the unique opportunity to use them as informants, but simultaneously forward cases for federal prosecution, as done in the instant case and others (Exhibit J-4). See also, Elleby v. City of New York, 2016 U.S. Dist. LEXIS 106727 (S.D.N.Y. 2016)(false arrest claim involving pimp with 17-year-old prostitute, investigated by DANY and Det. Mark Woods);

(10) It is further known that Minna and other underage prostitute-informants were used to investigate other alleged pimps and madames by DANY. See Corley v. Vance, 15 Civ. 1800 (KPF)(S.D.N.Y., Dkt. #1, Complaint);

(11) Between August 2011 and January 10, 2012, it appears that Minna was reluctant to exercise her duties as an informant and therefore DANY sought assistance from Judge Wittner to compel her participation (Comp., ¶¶18-19). This is known from statements made by Phebe in substance that "Minna was working for a Judge and Prosecutor" (Corley Decl., ¶22(f));

(12) Statements made by Minna during an ex parte proceeding in federal court with the FBI and U.S. Attorney, suggest that her participation as an informant was not voluntary. See United States v. Corley, 13 Crim. 48 (AJN) (S.D.N.Y., Dkt. #38);

22

(13) After investigating the Plaintiff for over two (2) years, DANY learned that Plaintiff did not knowingly associate with underage prostitutes. Typically, law enforcement use undercover officers pretending to be minors to investigate such cases. However, this tactic was avoided because DANY believed Plaintiff would explicitly reject such a proposition;

(14) The Backpage.com ad for Minna referenced by Det. Woods in his criminal complaint (Dkt. #90-1) was fabricated by tampering with an ad previously posted by the Plaintiff for a different individual. See e.g., Corley, supra (Dkt. #80, Exh. M & Exh. N);

(15) Although Minna was introduced to the Plaintiff by Phebe, Minna did not start working until after she was acting as a prostitute-informant for DANY. At no point was Plaintiff seeking or initiating contact with Minna, but always her contacting him or showing up uninvited at the direction of DANY. Without DANY's participation the crimes charged would not exist, nor probable cause;

In conclusion, several factors are present which federal courts have deemed relevant to whether the government's conduct was outrageous, e.g.: (1) Defendants knew that Plaintiff did not desire underage prostitutes, yet they orchestrated the entire circumstance to ensure the arrest of their own underage informant; (2) on numerous occasions they conducted sting operations in which none of the women associated with the Plaintiff offered sex in exchange for money; (3) the Government invented both of the charges Plaintiff was arrested for; (4) the Government encouraged and promoted the prostitution of Minna the entire time; (5) the Government controlled every aspect of what Minna did and said, and fabricated evidence; and (6) the Government constantly pursued to entrap Plaintiff with an underage prostitute, but Plaintiff's explicit avoidance of minors did not naturally permit such an arrest without the Government's outrageous conduct. See e.g. United States v. Black, 733 F.3d 294, 303-304 (9th Cir. 2013)(highlighting six factors relevant to outrageous government conduct).

23

(R) Pre-Trial Publicity (Obstruction of Justice)

Plaintiff seeks no relief for "denial of a fair trial due to pretrial publicity" (DANY Mot. 23-24). Therefore this defense is completely frivolous. Plaintiff's claims are founded upon Defendants' attempts to use the media as intimidation "with the intent of compelling the Plaintiff to plead guilty," in violation of his fifth and sixth amendment rights to due process and a fair trial pursuant to 42 U.S.C. §§ 1983, 1985(2) and 1985(3)(Comp., ¶63). The goal was to embarass the Plaintiff in the media hoping that he would quickly plead guilty to get the matter over with. This would also further their objective of concealing their iniquities and preventing Plaintiff from filing a future civil rights suit in federal court. Which is why the Complaint states "to influence the disposition of the case, or any future criminal or civil federal case." Id.

Defendants argue that the Plaintiff is "delusional" and pleads "fantasy" but I invite them to explain the following circumstances:

(1) In October 2012 after Plaintiff declined a five-year probation guilty plea to testify against Nathaniel Jackson, it appears that DANY abandoned all efforts to bring Plaintiff's case to trial (Comp., ¶37);

(2) On October 11, 2012, DANY requested Judge Wittner's help with convincing the U.S. Attorney to take over the case. The Judge then issued an order to transfer case files to the U.S. Attorney (Comp., ¶¶38-39). Somehow, Judge Wittner has some clout with the federal government (likely from years as an Attorney General), because this was not the first time she threatened a Defendant with federal prosecution. See Exhibit C ("Herbert L. Rogers Affidavit"):

> "on more than one occasion Judge Bonnie Wittner repeatedly threatened this affiant with federal prosecution in the event I should testify for Mr. Kimble"

(3) Apparently, the U.S. Attorney articulated to the Defendants that it had no interest in Plaintiff's case given the lack of media coverage; because within twelve (12) days, Mr. Hardy filed an application to hire Mr. Barry's firm Ports

24

& Files, Inc. See Exhibit G, pg. 4 ("Affirmation of Glenn F. Hardy, Esq., dated October 23, 2012);

(4) The hire of Mr. Barry was most unusual because Plaintiff already had a Private Investigator named Douglas Hilfman of Regent Investigations, Inc. Plaintiff had already spoken with Mr. Hilfman whom was actively pursuing leads. Why was it necessary to hire Mr. Barry? Unless of course he had some "special" service that other investigators could not provide (i.e., media publicity);

(5) Mr. Hardy admits that "Mr. Barry and [him] had worked together in the past as well and [he] was familiar with his work." See Exhibit F ("Hardy letter to Nassau County Bar Association)(emphasis added). "His work" in question was media publicity and advertising. Mr. Barry admitted working on many highly publicized cases (Comp., ¶¶42-45, 50). See Exhibit H-1 (Daily News Article of case Mr. Barry admitted he was involved with).

(6) Mr. Hardy appeared in the news discussing Plaintiff's case and also did the same to his client Anthony Rodriguez (Comp., ¶¶50-52). See Exhibit H-2 (PIX-11 Report on Anthony Rodriguez). It is no coincidence that reporter Mario Diaz mentions that "Hardy also is the defense attorney for Royce Corley"--which Hardy likely suggested to keep Plaintiff's case relevant. Id.;

(7) Mr. Barry's "Activity Log" for the work he allegedly did on this case speaks volumes to his true agenda. He billed for a total of 18.5 hours working on the case, with his work ceasing immediately after Plaintiff's case was publicized. See Exhibit G, pg. 2 ("Activity Log"). In full perspective the statutory maximum permitted to be billed is $1,000, yet for the ephemeral work done he billed $925--or 1½ hours shy of the maximum (Id., pg. 1);

(8) Plaintiff has similar records for Mr. Hardy, whom managed to bill almost $10,000--without even going to trial. The bills of Mr. Hardy and Mr. Barry were both approved by Judge Wittner--despite zero justification for such excessive billing, given the minuscule work each Defendant done;

25

(S) Equal Protection

Once again Defendants view the Complaint through selective-goggles by arguing "Plaintiff has not made any factual allegations demonstrating that he was referred for federal prosecution because he is black" (DANY Mot. at 26); yet the Complaint clearly states (Comp., ¶64):

> "DANY maintained a policy of referring Black defendants for federal prosecution, while defendants of other races faced less severe consequences, and did exercize such policy against the Plaintiff."

Likewise, Defendants continuously cite criminal case law to support their arguments, while it is only civil law that governs this matter (DANY Mot 24-26). Criminal cases have a significantly higher burden because criminal defendants are seeking to dismiss the indictments against them, whereas civil plaintiffs are only seeking damages.

At the pleading stage, Plaintiff is only required to state a "short and plain statement." Fed. R. Civ. P. 8(a)(2). Therefore it is unnecessary for him to annex exhibits, charts and statistical reports to the Complaint. However, in the abundance of caution, Plaintiff offers just some of the statistical data that proves DANY "maintained a racist policy of referring Black 'pimps' for federal prosecution ... or charing more serious charges ... while defendants of other races, under similar circumstances, face less serious crimes" (Comp. ¶54). See Exhibit D-1 ("Demographics of Prostitution Arrests"); and Exhibit D-2 ("Demographics of Prostitution Convictions"). The following is a brief analysis of this data:

> (1) The arrests for all prostitution-related offenses (N.Y. Penal Law, Art. 230) demonstrate that in New York County all races (White, Black. Hispanic and Other) and both genders have consistently engaged in prostitution-activity (in somewhat balanced proportions) from 1990 to 2015 (Last Table in Exhibit D-1);

> (2) In the Era of DA Morgenthau (2009 and prior) there has been an even distribution of arrests for "regular" prostitution (PL 230.00) between the races from 1990 to 2009

26

(although it appears that enforcement against Whites had stea-
dily decreased and increased against other races beginning in
or around 1998 and 2002);

(3) In the Era of DA Vance (2010 to the present) arrests for
"regular" prostitution (PL 230.00) had plummeted against all
other races, except Blacks which had remained constant (this
trend appears to have started in 2002 with Morgenthau);

(4) In the Morgenthau Era, arrests for "Patronizing a Prosti-
tute (PL 230.03) has shown Whites primarily committing this
crime, however trends show a decreased enforcement against
Whites and an increase against other races beginning in 2002;

(5) In the Vance Era, arrests for "Patronizing a Prostitute"
(PL 230.04) show an overall lack of enforcement, but a sig-
nificant decrease against Whites and increase for others;

(6) The arrests for "Promoting Prostitution in the Third and
Fourth Degree" (PL 230.20 & 230.25) show an overall lack of
enforcement, however it appears that only Blacks are being
charged with the more serious offense of "Promoting Prosti-
tution in the Second Degree" (PL 230.30);

(7) The Sex Trafficking statute enacted in 2009 (PL 230.34)
is virtually enforced exclusively against Blacks, with the
Blacks representing almost 70% of all arrests between 2009
and 2015 (and only one (1) White was arrested this period);

(8) Almost exclusively Blacks are convicted of "regular"
Prostitution (PL 230.00), with this discrimination being
more pronounced in the Vance Era despite an overall de-
crease in convictions. The same trend against Blacks is
evident for "Patronizing a Prostitute" (PL 230.03 and
PL 230.04) and all prostitution-related convictions as a
whole (Last Table in Exhibit D-2)(this demonstrates that
DANY is reluctant to dismiss charges against Blacks, but
other races get a break);

(9) The Twenty-Eight (28) out of Forty-One (41) total Sex
Trafficking (PL 230.34) arrests for Blacks proven to be a
farce because only Six (6)(less than 25%) were actually con-
victed for Sex Trafficking between 2009 and 2015;

(10) Whenever there is a significant increase in the enforce-
ment of the prostitution laws, it appears that all of the
Whites come out of the woodwork and dominate the number of
arrests (Exhibit D-1): PL 230.00 (1990 & 2014), PL 230.03
(1994), PL 230.04 (2008 & 2012), PL 230.20 (1993), and
PL 230.40 (1993). This demonstrates that more Whites are
truly committing the same crimes as other races, but are
only arrested when quotas are needed, while others races are
constantly being targeted every year with impunity;

This data is only a snapshot of the evidence that DANY is deliberately targeting Blacks for more severe punishment. The prejudice of DANY is also evident in other--albeit subtle circumstances, e.g.:

(1) In almost all cases involving sex crimes, an underage female is considered the victim, while the adult male is the perpetrator. However, this norm does not apply for DANY when the female is Black and the male is White. See Exhibit I (Shaina Foster was sixteen when she met an 80-year-old named Paul Aronson over the internet for sex, yet when he complained about losing $500--in an obvious prostitution transaction--she was charged with robbery and denied youthful offender status--a severe penalty for a minor). This shows that race is a significant factor in DANY's decision-making;

(2) Cyrus Vance Jr. refers to a Black Pimp as "thickheaded," which is a racist epithet to imply Blacks are brutes with low-intelligence (Exhibit J-3);

(3) Although Plaintiff was not charged with the New York State Sex Trafficking statute, Cyrus Vance Jr. succesfully campaigned by highlighting Plaintiff's case to change the statute so that he could prosecute more Blacks without forwarding their cases to the federal government (Exhibit J-1 and Exhibit J-2);

(4) Following Plaintiff's federal trial, it became obvious that race was a motivating factor for DANY when the U.S. Attorney: (a) eliminated all of the Blacks from the jury, and (b) emphasized that Plaintiff was a "Black Pimp" from Harlem that desired "White Girls" (Voir Dire 120-123; Tr. 215, 480, 483, 488; and Gov. Ex. 5);

> "In order to state an equal-protection claim based on racial discrimination, plaintiffs must allege that a government actor intentionally discriminated against them on the basis of race." Vidal v. Nielsen, 291 F. Supp. 3d 260, 274 (E.D.N.Y. 2018)(citing Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).

The details elaborated above demonstrates that DANY deliberately discriminates against Blacks for which "[t]he Equal Protection Clause of Fourteenth

Amendment to the U.S. Constitution generally prohibits government officials from discriminating on the basis of race." Id. Furthermore, it is clearly established that race was a motivating factor even if it was not the sole factor, for which "plaintiff need not show that the decision maker was motivating soley, primarily, or even predominately by concerns that were racial ... rather, the plaintiff need begin only by showing that race was a motivating factor." United States v. Yonkers Bd. of Education, 837 F.2d 1181, 1216-17 (2d Cir. 1987).

> "An Equal **Protection** Clause argument would be available for a black who could demonstrate that members of his race were being singled out for more severe punishment than others charged with the same offense." McClesky v. Kemp, 481 U.S. 279, 331 (1987).
>
> "This Court has repeatedly stated that prosecutorial discretion cannot be exercized on the basis of race." **Id** at 309 n.30.

### (T) Negligent Infliction of Emotional Distress

Defendants argue that Plaintiff cannot recover damages for a "purportedly negligent criminal investigation or prosecution" (DANY Mot. at 26). However this argument is non sequitur because: (a) this is not a general negligence claim but one for "emotional distress," (b) the allegations go beyond just an "investigation or prosecution" and (c) although "a lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress," Csoka v. County of Suffolk, 85 F. Supp. 2d 117, 123 (E.D.N.Y. 2008)(emphasis added); the converse is not true for an "unlawful arrest" as alleged in the Complaint (Comp., ¶66). Moreover, emotional distress claims were held valid against law enforcement for false arrest. See **Stampf** v. Long Island R.R., 761 F.3d 192, 207 (2d Cir. 2014)(award of damages for emotional distress from false arrest).

### (U) **Statute** of Limitations

Defendants' argument to bar all of the claims against them on a statute of limitations defense is contradicted by their arguments that "Heck" applies to all of these same claims. If Heck applies (as they suggested) than none of the claims accrued until the state charges were dismissed on February 1, 2013

(Comp., ¶33). The Complaint was filed before February 1, 2016 (within the three-year limitations period for § 1983 and NIED claims). Furthermore, General Municipal Law § 50-i does not apply because no state law claims were filed against the City of New York, but only against DANY "in their individual capacity acting outside the scope of their duties as public officers" (Comp., ¶66)(emphasis added). Accrual occurs when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Wallace v. Kato, 549 U.S. 384, 388 (2007). See also, Heck v. Humphrey, 512 U.S. 477, 489-90 (1994)("cause of action for damages ... does not accrue until the conviction or sentence has been invalidated").

IV. City of New York (hereinafter "NYC")

(V) Heck Defense

This matter is addressed below in Plaintiff's cross-motion for Partial Judgment on the Pleadings.

(W) Qualified Immunity

Defendant NYC asserts that "the NYPD Defendants are entitled to qualified immunity" (NYC Mot. at 9), however there are no NYPD Defendants in this case. Therefore this defense is misplaced.

(X) Monell Defense

Defendant NYC challenges Count V (Equal Protection) regarding the City's "policy of racial prejudice with respect to its employee's involvement in criminal prosecutions" by arguing that "Plaintiff simply makes conclusory allegations that are too vague and outlandish to allege, let alone support, a specific theory of Monell liability" (NYC Mot. at 16).

The allegations in the Complaint clearly establish that DANY and NYC (Comp. ¶¶54-58, 64): (1) acted under color of law, (2) violated the equal protection clause by discriminating against Blacks, (3) Plaintiff was discriminated against directly, (4) suffered damages, and (5) DANY's racist policy "caused the consti-

tutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008). Moreover, Plaintiff satisfies Monell's "policy or custom" requirement by alleging that the policy-maker DA Vance directly participated and encouraged the violation of Plaintiff's equal protection rights and the statistical data provided in Exhibits D-1 and D-2 establish that the selective enforcement of Sex Trafficking was "so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervision policy-maker must have been aware." Brandon v. City of New York, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)(internal citations omitted).

> (Y) Notice of Claim Defense

Plaintiff asserts no state law claims against NYC therefore their notice of claim defense is without merit and moot.

CROSS-MOTIONS

2. Motion to Enter Default:

Plaintiff files this cross-motion to renew an entry of default against Defendants HONORABLE BONNIE G. WITTNER, J.S.C., MICHAEL J. BARRY, PORTS & FILES, INC., and the CITY OF NEW YORK (hereinafter "Defaulted-Defendants") -and- to strike their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) which challenges their liability, because "[i]t is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." City of New York v. Mickalis Pawn Shop, LLC., 645 F.3d 114, 137 (2d Cir. 2011)(internal citations omitted). The Court's Order (dated May 17, 2018) denying an entry of default was in error and must be reversed for the following reasons:

(A) Hon. Bonnie G. Wittner was served on June 29, 2016; Michael J. Barry and Ports & Files, Inc. was served on June 23, 2016; and the City of New York was served on June 30, 2016; with the summons and complaint;

31

(B) Proof of service on file with the Court from the U.S. Marshal Service, establish that service was proper pursuant to Fed. R. Civ. P. 4(c)(3)("[via] United States marshal"). See Dkt. # 25-28 ("Marshal's Process Receipt and Return of Service Executed");

(C) By order (entered Jun. 21, 2016), Judge John G. Koeltl extended the time for defendants to move or answer "until 30 days after all the defendants have been served" (Dkt. #16);

(D) GLENN F. HARDY, P.C. was the last defendant to be served on July 15, 2016 by the U.S. Marshal. Therefore the deadline to move or answer was before August 15, 2016 (Dkt. #46);

(E) Defaulted-Defendants failed to "move or answer" before August 15, 2016. Judge Wittner filed a late defense on August 29, 2016 (Dkt. #54); Michael J. Barry and Ports & Files, Inc. filed a very late defense on September 22, 2016 (Dkt. #63); and the City of New York filed a late motion to stay on August 23, 2016 (Dkt. #51);

(F) Defaulted-Defendants' failure to move or answer before the Court's deadline constitutes deliberate "disregard for a court order [and] is a failure, under Rule 55(a), to otherwise defend." Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991)(internal quotations omitted);

(G) Judge Wittner and the City of New York knowingly defaulted to avoid exposing controversial facts during discovery; and Michael J. Barry and Ports & Files, Inc. deliberately defaulted because they believed "[t]his is a completely frivolous and meritless lawsuit" (Dkt. #63);

(H) Defaulted-Defendants failed to satisfy the "good cause shown" standard of Rule 55(c) in their fruitless explanations against default (Dkt. #57-58, 63). See Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013);

Moreover, "the clerk must enter the party's default" for failure "to plead or otherwise defend." Fed. Civ. P. 55(a)(emphasis added). "The entry of

default is therefore not discretionary." <u>Bricklayers & Allied Craftworkers Local</u> <u>2 v. Moulton Masonry & Constr., LLC.</u>, 779 F.3d 182, 186 (2d Cir. 2015). Therefore the Court <u>must</u> direct the clerk to enter default, and may <u>only</u> use discretion with respect to Defaulted-Defendants establishing "good cause" pursuant to Fed. R. Civ. P. 55(c)("The Court may set aside an entry of default for good cause").

3. Partial Judgment on the Pleadings:

Plaintiff ROYCE CORLEY is entitled to partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) with respect to the underlying state charges in this case that were terminated in Plaintiff's favor (Comp., ¶33)--defeating the "Heck Defense" asserted by all of the Defendants (Wittner Mot. at 9-10; Barry Mot. at 17-18; Hardy Mot. at 11-13; DANY Mot. at 16-20; and NYC Mot. at 6-11); for the following reasons:

A. State Charges Dismissed in Plaintiff's Favor

The state charges for which damages are based, were dismissed against the Plaintiff for two (2) counts of "Promoting Prostitution in the Third Degree" under N.Y. Penal Law §§ 230.25(1) & 230.25(2). See Exhibit A ("Certificate of Disposition Dismissal"). "[T]he entry of a nolle prosequi is sufficient to constitute a favorable termination." <u>Spak v. Phillips</u>, 857 F.3d 458, 464 (2d Cir. 2017). Moreover, "New York law does not require a malicious prosecution plaintiff to prove her innocence, or even that the termination of the criminal proceeding was indicative of innocence." <u>Rothstein v. Carriere</u>, 373 F.3d 275, 286 (2d Cir. 2004).

B. State Charges are Distinguished from the Federal Charges

While the nolle prosequi should resolve this matter, Defendants insist that Plaintiff's conviction for Sex Trafficking in federal court should bar all of Plaintiff's federal claims, along with his state NIED and legal malpractice claims by citing <u>Thompson v. Delvalle</u>, 2010 U.S. Dist. LEXIS 61451 (S.D.N.Y.

2010)("Heck doctrine [applies] because the Federal and State actions are inextricably intertwined and substantially related to one another"), citing Feurtado v. Gillespie, 2005 U.S. Dist. LEXIS 30310 (E.D.N.Y. 2005)(Heck doctrine applies to false arrest claim upon dismissed indictment where conviction on subsequent indictment charged the same crimes). These two cases are premised upon one key element: the dismissed charge and convicted charge are the same. However, State "Promoting Prostitution" is substantially different from Federal "Sex Trafficking," using the "Blockburger Test" highlights this distinction:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932).

The only connection between the state and federal charges are those individual counts involving Elaine a/k/a "Minna" as follows:

> "SECOND COUNT: AND THE GRAND JURY AFORESAID, by the indictment, further accuses the defendant of the crime of PROMOTING PROSTITUTION IN THE THIRD DEGREE, in violation of Penal Law § 230.25(2), committed as follows: the defendant, in the County of New York, on or about January 12, 2012, knowingly advanced and profited from prostitution of a person who was less than nineteen years old" (Dkt. #90-2, People v. Corley, Ind. #423-2012);

> "COUNT ONE (Sex Trafficking of a Minor) The Grand Jury charges: 1. From at least in or about August 2011, up to and including in or about January 2012, in the Southern District of New York and elsewhere, ROYCE CORLEY a/k/a "Ron Iron," the defendant, willfully and knowingly, in and affecting interstate commerce ... recruited, enticed, transported, provided, and maintained a person who was less than 18 years old ("Minor Victim-1"), and who was caused to engage in at least one commercial sex act that benefitted CORLEY financially" (Dkt. #90-4, U.S. v. Corley, S1 13 Crim. 48);

As an initial matter the state charges have no interstate commerce element. The federal charges have no element for advancing or profiting elements. The state charges have no recruit, entice, transport, provide or maintain elements; and no federal crime for 18 year old victims, while this crime exists for state.

34

Moreover, state law "encompass acts such as lap dancing in which the dancer's naked body is touched." Prus v. Holder, 660 F.3d 144, 148 (2d Cir. 2011); but "lap dancing" does not constitute a "commercial sex act." See 18 U.S.C. §§ 1591(e)(3) and 2246(2)(definition of "sexual act"). Therefore under the Block-burger test, Plaintiff's federal charge is different from the state charge. No case law exists to apply Heck bar to a conviction of a crime that is different from the crime a malicious prosecution is based.

Even assuming arguendo, if the state charge was identical to the federal charge, there are significant factual differences that "does not necessarily imply the invalidity of [Plaintiff's] outstanding conviction." Poventud v. City of New York, 750 F.3d 121, 127 (2d Cir. 2014): e.g., the state charges are limited to the one (1) sting operation "on or about January 12, 2012" (Dkt. #90-2); while the federal charges extend from "at least in or about August 2012, up to and including in or about January 2012" (Dkt. #90-4). Under these circumstances Plaintiff could successfully win at a state trial based upon a one day event, but be convicted in a federal trial based upon six (6) months of conduct minus one (1) day!

   C. Heck Does Not Apply to Malicious Prosecution,
      Speedy Trial or Legal Malpractice where the
      State Proceeding is Final

The application of Heck to any claim premised upon malicious prosecution, speedy trial or legal malpractice (Counts I-VII) is ludicrous, because the scope of such claims are clearly limited to the terminated prosecution, e.g.: How does a malicious prosecution on state charges by state prosecutors affect a federal case and federal prosecutors? How does a violation of state speedy trial law affect a new and subsequent federal prosecution? How does a state lawyer's mal-practice in state court on state charges affect a federal lawyer's conduct in federal court on federal charges? How does the racist policy of state prose-cutors imply that the federal prosecutors are also racist? Likewise, "under the

common law any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." Poventud, supra at 131. Under state double jeopardy and limitations laws, the state charges "cannot be brought again." See N.Y. Crim. Proc. Law §§ 30.10(b), 40.20(1) and 40.30(b).

### D. Heck Does Not Apply to Claims Independent of the Termination of the Criminal Proceedings

All of the Counts alleged have absolutely no bearing on the Plaintiff's federal conviction (with minor exception for Count II), i.e., judgment for: invasion of privacy, speedy trial violations, obstruction of justice for media publicity, NIED for state incarceration, equal protection for bias against Blacks, and legal malpractice in state case can "exist independent of the termination of the criminal proceedings." Poventud, supra at 132 ("[e]ven Heck acknowledges [this]").

### E. Pending Federal Habeas Corpus and Future Release Further Defeats Heck Defense

Plaintiff currently has a pending: (a) Motion for a New Trial pursuant to Fed. R. Civ. P. 33(b)(1), and (b) Motion to Vacate pursuant to 28 U.S.C. § 2255; both of which could reverse the federal conviction. Therefore any application of Heck would be premature at best. Furthermore, Plaintiff's January 29, 2013 release from state custody and future October 11, 2020 release from federal custody (see http://www.bop.gov/inmatelocator/) defeats Heck because "Heck's favorable termination requirement does not bar plaintiffs who are not in custody--and thus have no remedy through habeas relief from seeking relief pursuant to section 1983." Hardy v. Fischer, 701 F. Supp. 2d 614, 620 n.6 (S.D.N.Y. 2010)(emphasis added).

36

F. Heck Defeated by "Split Verdict"

Plaintiff was never convicted of any offense that involved Tangina Bennett a/k/a "Janel" who's participation was required for "two or more prostitutes" element of "Promoting Prostitution" pursuant to N.Y. Penal Law § 230.25(1), i.e. Count One of the State Indictment (Dkt. #90-2). Such a "split verdict" defeats Heck. See Dunham v. City of New York, 295 F. Supp. 3d 319, 333 (S.D.N.Y. 2018) ("a malicious prosecution claim may lie where a split verdict was rendered in plaintiff's underlying criminal proceeding"), citing Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989)(concluding that Janetka's disorderly conduct conviction did not bar his malicious prosecution claim with respect to his resisting arrest acquittal).

G. Applying Heck Causes Prejudice

Figuratively, Defendants arguing that since a stronger and far more powerful opponent than themselves ("feds") beat the Plaintiff at a far more complicated game of Chess, that they should be crowned "Checker Champions" despite the fact they willfully forfeited a trial to prove the strength of their case. Such circumstances cannot be permitted for any ruling to be consistent with justice. If for any reason Plaintiff is unable to reverse his federal conviction, he would be denied due process for constitutional violations commit-ted by the state. This contradicts the maxim that: "some federal remedy--either habeas corpus or 1983--must be available." Jenkins v. Haubert, 179 F.3d 19, 27 (2d Cir. 1999)(emphasis added).

4. Allow Time to Take Discovery:

None of Defendants motions to dismiss should be construed as motions for summary judgment because the Court should allow time to take discovery pursuant to Fed. R. Civ. P. 56(d). The Declaration of Royce Corley, ¶¶21-25, justifies the need for "additional discovery in order to defeat the motion." Lunts, supra.

37

5. Leave to Amend:

Plaintiff further moves to amend the Complaint to: (a) cure any deficiencies (if necessary) because "a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim," Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000)(internal quotations and citation omitted); and (b) to identify all of the John Doe ADAs that participated in the investigation prior to January 25, 2012, pursuant to Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997)(requiring municipal defendant to assist pro se prisoner plaintiff to identify fully all defendants).

<u>CONCLUSION</u>

WHEREFORE, Plaintiff ROYCE CORLEY, acting pro se, prays for an order: (1) denying the motions to dismiss; (2) entering the default of the Defaulted-Defendants; (3) partial judgment on the pleadings regarding Plaintiff's "favorable termination;" (4) allow time to take discovery; (5) leave to amend; and such other relief deemed just and proper under the circumstances.

Dated: November 18, 2018
       Petersburg, VA



P L A I N T I F F

Royce Corley, pro se
Reg. No. 68011-054
Federal Correctional Institution - Low
P.O. Box 1000
Petersburg, VA 23804-1000
68011054@imail.klolk.com

38



LEGAL MAIL

02 1P
0001127254
MAILED FROM ZIP CODE 23860
UNITED STATES POSTAGE
PITNEY BOWES
$ 000.000
JAN 11 2019
U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300



≪68011-054≫
Royce Corley
Reg. No. 68011-054
Federal Correctional Institution - Low
P.O. Box 1000
Petersburg, VA 23804-1000
United States

RECEIVED

JAN 16 2019

CLERK'S OFFICE
S.D.N.Y.

USM
SDNY
P3

≪68011-054≫
Court Clerk
U.S. District Court
Southern District of New York
500 Pearl Street
NEW YORK, NY 10007
United States

Civil
Docketing
E.K.

