UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROYCE CORLEY,<br><br>              Plaintiff,<br><br>              v.<br><br>CYRUS R. VANCE, JR., DAVID STUART, JOHN TEMPLES, ADA GREG WEISS, ELIZABETH PEDERSON, DANY PERSONNEL, BRIAN CONROY, MICHAEL DALY, MARK WOODS, DETECTIVE JESSICA STERLING, GIANCARLO CAVALLO, GREG SMITH, NYPD PERSONNEL, OSE PERSONNEL, MICHAEL T. HAGGERTY, WALTER PANCHYN, AREA OFFICER JOHN DOE #3, BACKPAGE.COM, LLC, SPRINT NEXTEL CORP., T-MOBILE USA INC., FACEBOOK INC., GOOGLE INC., TIME WARNER CABLE INC., RESEARCH IN MOTION LTD., MUNICIPAL CREDIT UNION, CAPITAL ONE N.A., JPMORGAN CHASE BANK N.A., CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., CITY OF NEW YORK, NEW YORK COUNTY DISTRICT ATTORNEY, and SUPERVISOR C.O. JOHN DOE #1-2,<br><br>              Defendants. | 15 Civ. 1800 (KPF) |
| ROYCE CORLEY,<br><br>              Plaintiff,<br><br>              v.<br><br>HONORABLE BONNIE G. WITTNER, MICHAEL J. BARRY, PORTS & FILES, INC., GLENN F. HARDY, ESQ., GLENN F. HARDY, P.C., CYRUS R. VANCE, JR., JOHN TEMPLE, DAVID STUART, GREG WEISS, JOHN DOE, and THE CITY OF NEW YORK,<br><br>              Defendants. | 15 Civ. 9621 (KPF) |

**<u>OPINION AND ORDER</u>**

KATHERINE POLK FAILLA, District Judge:

In 2014, Plaintiff Royce Corley was convicted in this District on federal charges involving trafficking of minors and possession of child pornography. Now, proceeding *pro se*, Plaintiff brings two civil rights actions under 42 U.S.C. § 1983, alleging claims arising out his investigation, arrest, and prosecution on earlier state charges that were ultimately subsumed by his federal case. In addition to his federal claims, Plaintiff asserts state-law claims over which he asks this Court to exercise supplemental jurisdiction.

Defendants Cyrus R. Vance, Jr., David Stuart, John Temples, Greg Weiss, Elizabeth Pederson (collectively, the "DA Defendants"); Brian Conroy, Michael Daly, Mark Woods, Jessica Sterling, Giancarlo Cavallo, Greg Smith, Shari C. Hyman (collectively, the "NYPD Defendants," and together with the DA Defendants, the "Government Defendants"); Consolidated Edison Company of New York, Inc. ("Con Edison"), Michael T. Haggerty and Walter Panchyn (collectively, the "Con Edison Defendants"); T-Mobile USA Inc. ("T-Mobile"), Facebook Inc. ("Facebook"), Google Inc. ("Google"), Time Warner Cable Inc. ("TWC"), Municipal Credit Union ("MCU"), Capital One N.A. ("Capital One"), JPMorgan Chase Bank N.A. ("Chase") (collectively, the "Corporate Defendants"); Michael J. Barry and Ports & Files, Inc. (collectively, the "Barry Defendants"); Glenn F. Hardy, Esq. and Glenn F. Hardy, P.C. (collectively, the "Hardy Defendants"); the Honorable Bonnie G. Wittner; and the City of New York (altogether, the "Moving Defendants") now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Separately, Justice Wittner moves to dismiss under

Rule 12(b)(1); Facebook moves to dismiss under Rule 12(b)(2); and the DA

Defendants move to dismiss under Rule 12(b)(5).  For the reasons set forth in

this Opinion, the motions are granted in part and denied in part.[1]

---

[1]  This Opinion addresses two separate civil lawsuits brought by Plaintiff.  Because the actions are not merely related, but share a common factual nucleus, the Court addresses the Moving Defendants' motions in both cases in a single opinion.  Three defendants in Case No. 15 Civ. 1800 are not addressed in this Opinion.  Defendant Research in Motion, Ltd. was served on February 19, 2019, and its answer or response is due April 22, 2019.  Defendant Sprint filed a renewed motion for summary judgment on February 28, 2019, which motion will be addressed separately.  Defendant Backpage.com was served on August 16, 2016; a Certificate of Default from the Clerk of Court was entered on January 15, 2019; and Plaintiff has not yet moved for default judgment.

For ease of reference, the Court will distinguish docket entries from the two cases by citing to them as "1800 Dkt." or "9621 Dkt."  The facts contained in this Opinion are drawn principally from Plaintiff's Complaints in Case No. 15 Civ. 1800 (1800 Dkt. #1 ("1800 Compl.")), and Case No. 15 Civ. 9621 (9621 Dkt. #2 ("9621 Compl.")), the well-pleaded facts of each of which are taken as true for the purposes of the instant motions.

Motions to dismiss have been filed by 13 groups of defendants: the DA Defendants, the NYPD Defendants, the Con Edison Defendants, Justice Wittner, the Barry Defendants, the Hardy Defendants, T-Mobile, Facebook, Google, TWC, MCU, Capital One, and Chase.  For ease of reference, the memoranda of law in support of the respective motions to dismiss will be referred to as "DA Br." (1800 Dkt. #212; 9621 Dkt. #91), "NYPD Br." (1800 Dkt. #182), "Con Edison Br." (1800 Dkt. #184), "Wittner Br." (9621 Dkt. #97), "Barry Br." (9621 Dkt. #88), "Hardy Br." (9621 Dkt. #94), "T-Mobile Br." (1800 Dkt. #170), "Facebook Br." (1800 Dkt. #186), "Google Br." (1800 Dkt. #189), "TWC Br." (1800 Dkt. #217), "MCU Br." (1800 Dkt. #212), "Capital One Br." (1800 Dkt. #175), and "Chase Br." (1800 Dkt. #172).  The Court will distinguish memoranda of law submitted by the DA Defendants and the NYPD Defendants in the two cases by citing to them as "1800 [Defendant] Br." or "9621 [Defendant] Br."  Plaintiff's memoranda of law in opposition to the motions to dismiss will be referred to as "1800 Pl. Opp." (1800 Dkt. #269), and "9621 Pl. Opp." (9621 Dkt. #117).  The reply briefs that were filed by the 10 of the 13 groups of Defendants will be referred to as "DA Reply" (1800 Dkt. #272; 9621 Dkt. #121), "Con Edison Reply" (1800 Dkt. #276), "Wittner Reply" (9621 Dkt. #126), "Hardy Reply" (9621 Dkt. #122), "T-Mobile Reply" (1800 Dkt. #271), "Facebook Reply" (1800 Dkt. #275), "Google Reply" (1800 Dkt. #290), "TWC Reply" (1800 Dkt. #274), "Capital One Reply" (1800 Dkt. #278), and "Chase Reply" (1800 Dkt. #277).  The Court will distinguish memoranda of law submitted by the DA Defendants and the NYPD Defendants in the two cases by citing to them as "1800 [Defendant] Reply" or "9621 [Defendant] Reply."

## BACKGROUND

### A.    Factual Background

Plaintiff filed his complaint in the first of his two civil rights cases, *Corley* v. *Vance*, No. 15 Civ. 1800, on January 13, 2015.  (1800 Dkt. #1).[2]  The 1800 Complaint alleged violations of the Constitution and of several federal statutes, including the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510-2523, the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713, the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401-3423, and the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-25, as well as various state-law claims.  The named defendants in that case include the DA Defendants, the NYPD Defendants, the Corporate Defendants, the Con Edison Defendants, and the City of New York.  (*Id.*).

The 1800 Complaint alleges that in 2007, Plaintiff "was informally doing business under the nom de guerre 'Ron Iron' providing advertising and web development services to escort, therapeutic and adult-oriented businesses." (1800 Compl. ¶¶ 5, 22).  Subsequently, in 2008, Plaintiff began working as a technician for Con Edison.  (*Id.* at ¶ 23).  In 2009, an individual who had been convicted of promoting prostitution allegedly "vindictively" forwarded to law enforcement false information implicating Plaintiff in illegal activity.  (*Id.* at ¶ 25).  Plaintiff alleges that, in consequence, law enforcement officers: (i) induced a minor to work as a confidential informant and prostitute to

---

[2]     Plaintiff later filed a document styled as a "Complaint Supplement" that was docketed by this Court on May 19, 2015.  (1800 Dkt. #13).  The Supplement provided information that had been redacted from the 1800 Complaint.

manufacture evidence against Plaintiff; (ii) tampered with advertisements appearing on Backpage.com by "altering 'AdOId' posted by other individuals, or created by the defendants"; and (iii) used fabricated evidence to obtain court orders, subpoenas, and warrants.  (*Id.* at ¶¶ 27-29, 37-41).  Accordingly, it is alleged that despite using a warrant, "defendants had no probable cause" to obtain access to Plaintiff's accounts; to search his apartment and office at Con Edison; or to seize his cell phones, electronic media, and credit cards.  (*Id.* at ¶¶ 47-48).

Plaintiff asserts that he "has not been provided with any court orders, subpoenas, warrants or notices in relation to any of these disclosures."  (1800 Compl. ¶ 26).  Backpage.com is further alleged to have "aided and abetted" law enforcement "by granting them unlimited access to password-protected accounts without the proper legal authority," while other of the Corporate Defendants are alleged to have provided law enforcement with Plaintiff's records, emails, and instant messages.  (*Id.* at ¶¶ 24, 38, 60-62).

Initially, Plaintiff was charged by the Office of the District Attorney for New York County (the "DANY") in New York County Supreme Court.  However, the state charges were dismissed on February 1, 2013.  (1800 Compl. ¶ 46).  Instead, Plaintiff was prosecuted federally by the United States Attorney's Office for the Southern District of New York (the "USAO").  (9621 Compl. ¶ 49).  He was indicted in this District on January 22, 2013, and a superseding indictment was returned on October 10, 2013.  *See United States* v. *Corley*, No. 13 Cr. 48 (RPP/AJN) (S.D.N.Y.).  Plaintiff was ultimately convicted of child

exploitation and child pornography offenses in April 2014; his conviction was affirmed by the United States Court of Appeals for the Second Circuit on February 9, 2017, *United States* v. *Corley*, 679 F. App'x 1 (2d Cir. 2017) (summary order); and his petition for certiorari was denied by the United States Supreme Court on October 2, 2017, *Corley* v. *United States*, 138 S. Ct. 205 (2017).

As noted, the 1800 Complaint focuses on the conduct of law enforcement authorities before and immediately following Plaintiff's 2012 arrest. Plaintiff asserts claims under 42 U.S.C. § 1983 for, *inter alia*, false arrest, false imprisonment, malicious prosecution, unlawful search and seizure, malicious abuse of process, conspiracy to violate due process, fabrication of evidence, and violations of the rights to a speedy trial and to privacy, as well as state-law claims of negligence, negligent infliction of emotional distress, and fraud. (1800 Compl. ¶¶ 72-84, 95-99). Broadly speaking, Plaintiff alleges that private individuals and corporations (i) conspired with state actors to violate his constitutional rights and (ii) failed to train their employees properly with respect to the release of customer information. Plaintiff further asserts that the private defendants violated federal statutes that limit disclosure of electronic records and communications. (*Id.* at ¶¶ 60-63).

On December 8, 2015, Plaintiff filed a second complaint, this one against New York State Supreme Court Justice Bonnie G. Wittner, the judge who presided over Plaintiff's state prosecution; Michael J. Barry, Plaintiff's appointed counsel in that case; criminal investigator Glenn F. Hardy and his

company, Ports & Files, Inc., also appointed to assist in Plaintiff's defense; several members of the DANY; and the City of New York.  (9621 Dkt. #2). Whereas the 1800 Complaint focused on the investigative work undertaken preliminary to Plaintiff's 2012 arrest, the 9621 Complaint focused on the conduct of those involved in Plaintiff's state prosecution from its inception until the case was turned over to federal prosecutors.

In the 9621 Complaint, Plaintiff alleges that Justice Wittner and representatives of the DANY conspired (i) to establish a "quasi-grand jury" for the purpose of accessing, illegally, Plaintiff's communications and records (9621 Compl. ¶ 17); (ii) to "coerce or entice" an underage female to participate in an illegal sting operation against Plaintiff that would "manufacture" state-court jurisdiction over him (*id.* at ¶¶ 18, 24); (iii) to circumvent case assignment procedures so that Plaintiff's criminal case would be assigned to Justice Wittner (who, it is alleged, would then cover up the putative co-conspirators' prior misconduct, *see id.* at ¶ 27); and (iv) to solicit the USAO to prosecute Plaintiff (*id.* at ¶¶ 39-41, 46-49).  Plaintiff further alleges that his attorney and criminal investigator publicized private information concerning Plaintiff and his case "for the purpose of financial gain and promoting their professional practices."  (*Id.* at ¶ 50; *see also id.* at ¶¶ 50-52).  Indeed, according to Plaintiff, attorney Barry and investigator Hardy actively promoted Plaintiff's case in the media in order to "entic[e] the U.S. Attorney to take the case."  (*Id.* at ¶ 41).

7

B.     **Procedural Background**

The procedural history of each case spans more than four years,
although each was stayed several times.  First, on January 13, 2015, Plaintiff
initiated the 1800 action.  (1800 Dkt. #1).  On June 22, 2015, after reviewing
the 1800 Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the
Court issued an Order to Amend, addressing, in detail, what it perceived to be
the legal and factual impediments to mounting Plaintiff's claims.  *See Corley* v.
*Vance*, No. 15 Civ. 1800 (KPF), 2015 WL 4164377, at *1-9 (S.D.N.Y. June 22,
2015).  The Court warned Plaintiff that most of the counts in his Complaint
might be subject to dismissal on the bases identified in the Order and provided
Plaintiff with the opportunity to amend his pleading within 60 days.  *See id*. at
*9.

Plaintiff declined to amend the 1800 Complaint, and the Court dismissed
it on December 2, 2015, for failure to comply with the Court's orders, with
leave to replead within 30 days.  (1800 Dkt. #20).  In lieu of repleading, Plaintiff
appealed the Court's Order of Dismissal to the Second Circuit.  (1800 Dkt.
#21).  On May 6, 2016, the Second Circuit vacated the Order of Dismissal and
remanded the case, ordering this Court to consider the 1800 Complaint on the
merits.  (1800 Dkt. #23).

Several months later, the 9621 case, which had initially been assigned to
United States District Judge John G. Koeltl, was transferred to this Court.
Upon motion, both cases were stayed by the Court by orders dated
September 16, 2016, so that Plaintiff could pursue his appeal from his criminal

8

conviction.  (1800 Dkt. #97; 9621 Dkt. #60).  At the time these stays were entered, several of the defendants in the 9621 case — specifically, Defendants Hardy, Vance, Stuart, Temple, and Weiss — had filed motions to dismiss. (9621 Dkt. #32, 43).

As previously stated, the Supreme Court denied Plaintiff's petition for certiorari in October 2017.  *See Corley*, 138 S. Ct. at 205.  By orders dated November 1, 2017, the Court lifted the stays in the 1800 and 9621 cases and scheduled a series of conference calls with the parties in order to discuss next steps.  (1800 Dkt. #135; 9621 Dkt. #67).  As detailed in several Court orders, technical and logistical difficulties foiled the Court's efforts to convene the parties telephonically.  (1800 Dkt. #144, 148; 9621 Dkt. #72, 78).  However, before the February 12, 2018 conference came to its premature end, the Court learned that Plaintiff wished to renew a previously-filed motion for the Court's recusal in both cases.  The Court reimposed the stays and ordered Plaintiff to refile his recusal motion (1800 Dkt. #148; 9621 Dkt. #78), which Plaintiff did on or about February 26, 2018 (1800 Dkt. #150; 9621 Dkt. #79).

On June 19, 2018, the Court denied the motion for recusal, lifted the stays, and scheduled motion practice to occur concurrently in both matters. (1800 Dkt. #152; 9621 Dkt. #83).  In September 2018, Plaintiff requested a 90-day extension to file his Opposition, from September 21, 2018, until December 20, 2018.  (1800 Dkt. #233; 9621 Dkt. #107).  The Court granted the request and ordered Defendants to respond to the Opposition on or before January 7, 2019.  (1800 Dkt. #234; 9621 Dkt. #108).  By letter dated December 12, 2018,

Plaintiff again requested, and the Court again granted, an extension to file his Opposition, this time until January 25, 2019.  (1800 Dkt. #256-57; 9621 Dkt. #114-15).   Plaintiff's third request for an extension was denied on January 11, 2019.  (1800 Dkt. #262).  Accordingly, Plaintiff filed his Opposition in late January 2019 (1800 Dkt. #267-69; 9621 Dkt. #117-19), and Defendants timely filed their briefs in reply (1800 Dkt. #271-78; 9621 Dkt. #120-26).[3]

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions Under Federal Rule of Civil Procedure 12(b)(1)

Several subsections of Rule 12(b) of the Federal Rules of Civil Procedure are invoked by the Moving Defendants, and to contextualize its legal analysis, the Court presents the standards for each in this section.  Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable

---

[3]     Portions of Plaintiff's memoranda in opposition are improperly titled as "cross-motions" on both dockets.  The Court addresses Plaintiff's motions for default judgment (9621 Dkt. #116), judgment on the pleadings (9621 Dkt. #116; 1800 Dkt. #267), and sanctions (1800 Dkt. #267), *infra*.  For ease of reference, the Court refers to Plaintiff's opposition papers holistically as his "Opposition."

inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova*, 201 F.3d at 113).

### 2. Motions Under Federal Rule of Civil Procedure 12(b)(2)

When a defendant brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has [personal] jurisdiction over the defendant." *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation omitted). All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]" *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993). However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]" *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding motions to dismiss for lack of personal jurisdiction typically engage in a two-part analysis. *First*, the court assesses whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In making this determination, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citations omitted). *Second*, if there is a statutory basis for personal jurisdiction, the court must decide whether the exercise of jurisdiction comports with due process. *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).

It is well established that "[a] district court's personal jurisdiction is determined by the law of the state in which the court is located." *Spiegel* v. *Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010). New York's long-arm statute authorizes courts to exercise personal jurisdiction "over any non-domiciliary ... who in person or through an agent ... transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. N.Y. C.P.L.R. § 302(a)(1). Accordingly, a court may exercise personal jurisdiction over a non-domiciliary if two conditions are met: "first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting *CutCo Indus., Inc.* v. *Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

### 3.   Motions Under Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5)

Federal Rule of Civil Procedure 12(b)(4) governs insufficient process, whereas Rule 12(b)(5) governs insufficient service of process.  "Objections to sufficiency of process under Fed. R. Civ. P. 12(b)(4) must identify substantive deficiencies in the summons, complaint or accompanying documentation." *Gianatasio* v. *D'Agostino*, No. 11 Civ. 3095 (RWS), 2011 WL 5244961, at \*2 (S.D.N.Y. Nov. 2, 2011).  "A Rule 12(b)(4) motion is proper only to challenge noncompliance with the provision of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons."  *Id.* (internal quotation marks omitted).

Separately, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd.* v. *Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  Under Rule 12(b)(5), "[o]nce a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden of proving its adequacy."  *Darden* v. *DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).  "When a court considers a motion to dismiss pursuant to Rule 12(b)(5), it must consider information outside the complaint to determine whether service was sufficient."  *Hernandez* v. *Mauzone Home Kosher Prods. of Queens, Inc.*, No. 12 Civ. 2327 (SJ) (JMA), 2013 WL 5460196, at \*4 (E.D.N.Y. Sept. 30, 2013).

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons."  *DeLuca* v. *AccessIT*

*Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  If the plaintiff is able to demonstrate good cause, however, a district court must grant a plaintiff an extension of time for service.  *See id.*

Even where a plaintiff does not show good cause, district courts may exercise discretion to grant an extension of time to effect adequate service.  *See Zapata* v. *City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *George* v. *Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016).  In determining whether to grant a discretionary extension, courts look to "[i] whether any applicable statutes of limitations would bar the action once refiled; [ii] whether the defendant had actual notice of the claims asserted in the complaint; [iii] whether defendant attempted to conceal the defect in service; and [iv] whether defendant would be prejudiced by extending plaintiff's time for service."  *DeLuca*, 695 F. Supp. 2d at 66.

### 4.    Motions Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

14

omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'"  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id.* at 663.

In addition, the Court is obligated to construe the submissions of *pro se* litigants like Plaintiff liberally "to raise the strongest arguments they suggest." *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see generally McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017).  To this end, the Court has considered factual assertions made by Plaintiff during the pre-motion conference on this matter and in his opposition papers.  *See Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

In considering a motion to dismiss, the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as Plaintiff's arrest reports, indictments, and criminal disposition data. *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-75 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); see also *Awelewa* v. *New York City*, No. 11 Civ. 778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) (judicial notice may be taken of arrest reports, criminal complaints, indictments, and criminal disposition data (citing *Wims* v. *N.Y.C. Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011))).  Where the Court takes judicial notice, it does so "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted." *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted) (quoting *Kramer*, 937 F.3d at 774).

## B.   The Court Denies Wittner's Motion to Dismiss the 9621 Complaint Pursuant to Rule 12(b)(1)

Justice Wittner argues that this Court lacks jurisdiction to consider Plaintiff's claims against her on the basis of sovereign immunity.[4]  "The Eleventh Amendment bars damages actions in federal court against a state and against state officials acting in their official capacities, unless the state waives sovereign immunity or Congress abrogates it." *Chris H.* v. *New York*, 740 F.

---

[4]     On August 14, 2018, Defendant MCU filed a motion to dismiss that referenced Rule 12(b)(1).  (1800 Dkt. #211).  However, the accompanying memorandum of law made arguments only under Rule 12(b)(6) (1800 Dkt. #212), as did two later declarations (1800 Dkt. #215, 273).

App'x 740, 741 (2d Cir. 2018) (summary order).  Accordingly, Justice Wittner is entitled to sovereign immunity for any claims against her in her official capacity.  However, in his Opposition, Plaintiff clarifies that "this argument is moot since Plaintiff only alleges claims against [Judge Wittner] in her individual capacity." (9621 Pl. Opp. 6).  For that reason, Judge Wittner's motion to dismiss the Complaint pursuant to Rule 12(b)(1) is denied, though several of her arguments are addressed again in the Court's discussion of Rule 12(b)(6).

## C.    The Court Grants Defendant Facebook's Motion to Dismiss the 1800 Complaint Pursuant to Rule 12(b)(2)

Defendant Facebook, for its part, moves to dismiss the Complaint against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (1800 Dkt. #185).  Finding that the Court lacks both general and specific jurisdiction over this defendant, the Court grants Facebook's motion.

### 1.    The Court Lacks General Jurisdiction over Facebook

A court's exercise of general jurisdiction under New York Civil Practice Law and Rules § 301 requires that "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted."  *Sonera Holding B.V.* v. *Cukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotations and citations omitted); *see generally Daimler AG* v. *Bauman*, 571 U.S. 117, 137-38 (2014).  Facebook's "continuous activity of some sort[] within a state ... is not enough to support the demand that the corporation be amendable to suits unrelated to that activity."  *Goodyear Dunlop Tires Ops.* v. *Brown*, 564 U.S. 915,

927 (2011) (internal quotation marks omitted) (quoting *Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945)). Rather, a corporation's "affiliations with the State" must be "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 919 (quoting *Int'l Shoe*, 326 U.S. at 317).

In its opening brief, Facebook argues that a district court in New York cannot properly exercise general jurisdiction over the company because Facebook is incorporated in Delaware and has a principal place of business in Menlo Park, California. (Facebook Br. 11). Facebook is correct that, broadly speaking, general jurisdiction does not lie over a party in a forum where that entity is neither incorporated nor maintains its principal place of business. *Goodyear*, 564 U.S. at 924. That said, "*Goodyear* did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." *Daimler*, 571 U.S. at 137 (alteration in original).

Plaintiff counters that because Facebook is registered to do business in New York and has two offices in New York City, the Court is in fact able to exercise general jurisdiction over Defendant. (1800 Pl. Opp. 11). However, these contacts do not rise to the level required to "render [Defendant] essentially at home in [New York]." *Goodyear*, 564 U.S. at 919. Defendant's offices in New York must be viewed relative to Defendant's overall activity "nationwide and worldwide," a view that dramatically lessens their significance. *Daimler*, 571 U.S. at 143. "[L]ess than 7% of [Facebook's] global workforce is

18

located in its New York office." (Facebook Br., Duffey Decl. ¶ 3).  Furthermore,
"[t]he mere fact of a defendant's being registered to do business is insufficient
to confer general jurisdiction in a state that is neither its state of incorporation
nor its principal place of business." *D'Amico Dry D.A.C.* v. *Primera Mar. (Hellas)
Ltd.*, 348 F. Supp. 3d 365, 387 (S.D.N.Y. 2018).

Plaintiff cannot support an argument that Facebook's activities in New
York constitute an exceptional case where general jurisdiction would properly
lie over a corporation "in a forum other than its formal place of incorporation or
principal place of business." *Daimler*, 571 U.S. at 139 n.19.  Accordingly, the
Court does not exercise general jurisdiction over this Defendant.

### 2.    The Court Lacks Specific Jurisdiction over Facebook

In his Opposition, Plaintiff focuses almost exclusively on establishing the
Court's ability to exercise general jurisdiction over Facebook.  However, he does
reference, albeit obliquely, New York's long-arm statute.  (*See* 1800 Pl.
Opp. 11).  The Court suspects that Plaintiff conflates general and personal
jurisdiction and, thus, with the appropriate solicitude to Plaintiff's *pro se*
status, it addresses whether Facebook is subject to specific jurisdiction under
that statute.

New York's long-arm statute authorizes courts to exercise personal
jurisdiction "over any non-domiciliary ... who in person or through an agent ...
transacts any business within the state," so long as the cause of action "aris[es]
from" that transaction.  N.Y. C.P.L.R. § 302(a)(1).  Accordingly, a court may
exercise personal jurisdiction over a non-domiciliary if two conditions are met:

19

"first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity." *Aquiline Capital Partners LLC* v. *FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (internal citations and quotations omitted).

A defendant transacts business within a state if it has "purposefully availed [it]self of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *United States* v. *Prevezon Holdings Ltd.*, 122 F. Supp. 3d 57, 76 (S.D.N.Y. 2015) (quoting *Reich* v. *Lopez*, 38 F. Supp. 3d 436, 457 (S.D.N.Y. 2014)).  Here, Facebook has plainly availed itself of New York law.  In addition to being registered to do business in New York, the company has two offices in New York City, where 7% of its global workforce is located.  (Facebook Br., Duffey Decl. ¶ 3).  Facebook's contacts meet the low threshold specified in N.Y. C.P.L.R. § 302(a)(1) — a threshold that courts have found may be satisfied by a single act within New York.  *See Licci*, 673 F.3d at 62.  Accordingly, the Court considers whether Plaintiff's claim against Facebook arises out of Facebook's business activity within New York State.

Plaintiff does not make any argument, either in the Complaint or his opposition, that his claims — all of which relate to Facebook's voluntary disclosure of his personal information — arise out of in-state business activity. In point of fact, it is almost certainly the case that Plaintiff's claims against Facebook arise out of the latter's activity in California, where its records custodians are located.  (Facebook Br., Duffey Decl. ¶ 5).  Accordingly, New

York's long-arm statute does not confer jurisdiction over Plaintiff's claim against Facebook. *See Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (finding that to support jurisdiction under N.Y. C.P.L.R. § 302, there must be "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York"). Defendant Facebook's motion to dismiss the 1800 Complaint for lack of personal jurisdiction under Rule 12(b)(2) is granted.[5] All claims against Facebook are dismissed.

### D.    The Court Denies the DA Defendants' Motion to Dismiss the 1800 Complaint Pursuant to Rule 12(b)(5)

The DA Defendants move to dismiss the 1800 Complaint, as it pertains to them, for insufficient service of process under Rule 12(b)(5), arguing that they have not been served. (1800 DA Br. 29-30). As Plaintiff points out, they are incorrect. (1800 Pl. Opp. 10). All but one of the DA Defendants were served on August 17, 2018. (*Id.*; 1800 Dkt. #222-25). The remaining defendant, Elizabeth Pederson, waived service of summons on December 28, 2018. (1800 Dkt. #261). In their reply, buried in a footnote, the DA Defendants concede that their initial representations to the Court regarding lack of service were incorrect. (1800 DA Reply 1 n.1). Despite that concession, "[t]he DA [D]efendants continue to rely on their argument that Plaintiff failed to effect personal jurisdiction[.]" (*Id.*).

---

[5]    Defendant Google joined in Facebook's Motion to Dismiss, supporting Memorandum of Law, and Reply Memorandum of Law, but only to the extent that Facebook's motion sought to dismiss the 1800 Complaint for failure to state a claim pursuant to Rule 12(b)(6). (1800 Dkt. #189, 290). Google does not assert a personal jurisdictional defense, and therefore does not join in Facebook's motion to dismiss pursuant to Rule 12(b)(2). The Court addresses Plaintiff's claims against Google *infra*.

In light of Plaintiff's *pro se* status and his diligent communications with the Court regarding service issues, the Court will not dismiss the case for insufficient service.  To begin, "as an incarcerated *pro se* litigant proceeding *in forma pauperis*, [Plaintiff] was entitled to rely on service by the U.S. Marshals." *Romandette* v. *Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (citing Fed. R. Civ. P. 4(c)(2)(B)(i)).  The Second Circuit has further cautioned that, when deciding service issues in *pro se* cases, district courts must construe Rule 4 generously:

> As we observed in *Grammenos* v. *Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972), Rule 4 of the Federal Rules is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." We further noted that "incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained." *Id.*

*Jaiyeola* v. *Carrier Corp.*, 73 F. App'x 492, 494 (2d Cir. 2003) (summary order). Here, not only do all of the DA Defendants have actual notice of the 1800 Complaint, but, more importantly, "proper service *has* been obtained in the instant case," *id.*, with respect to all but one of the defendants.

In addition, the Court must "weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca*, 695 F. Supp. 2d at 66.  The DA Defendants argue that, despite being entitled to rely on the Marshals, Plaintiff alone is at fault for the delay in effecting service.  (1800 DA Br. 29-30).  Specifically, these Defendants claim that Plaintiff "is the source of confusion over the failure to serve the complaint

[because] Plaintiff filed a document labeled as a 'complaint supplement' which can be readily confused with the complaint." (*Id.* at 29).

The DA Defendants were served with the Complaint Supplement, but not the Complaint, on September 27, 2016. (1800 Dkt. #98).[6]  They promptly notified the Court of this deficiency.  (*Id.*).  However, in their briefing, the DA Defendants ignore the fact that Plaintiff made repeated attempts to remedy any service errors.  On October 19, 2016, Plaintiff submitted a response to the Court seeking clarification from the Marshals as to how, and with what documents, each DA Defendant had been served.  (1800 Dkt. #110).  Because the case was then stayed pending resolution of Plaintiff's appeal of his underlying criminal conviction, the Court did not immediately resolve the issue.  (1800 Dkt. #114).

Given Plaintiff's diligence in communicating with the Court, he will not be found at fault for any service delays.  Over the past four years, Plaintiff has repeatedly written to the Court providing service updates or seeking to verify the status of his service requests.  (*See, e.g.*, 1800 Dkt. #28, 43, 84, 110, 122, 128, 141, 153, 246, 251, 270).  *Cf. Meilleur* v. *Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (finding no abuse of discretion by district court in dismissing case when plaintiff did not raise the issue of pending service with the court).  The Court itself has noted that other factors, including the two stays in the case, may

---

[6]     Plaintiff filed the Complaint Supplement under seal on May 19, 2015, to supplement redacted information in the 1800 Complaint.  (1800 Dkt. #13).  That information included Plaintiff's social security number and financial account numbers, as well as the full names of minors and alleged victims of Plaintiff's underlying criminal violations. (*Id.*).

have complicated Plaintiff's attempts to effect timely service.  (*See* 1800 Dkt. #155 ("[G]iven the lengthy stay in this case, it is possible that service attempts were interrupted or otherwise failed.")).

Undeterred, the DA Defendants cite to *Meilleur*, 682 F.3d at 63, where the Second Circuit found that the district court's dismissal of a *pro se* case for failure to achieve timely service was not reversible error.  (*See* 1800 DA Br. 29-30).  Although *Meilleur* is distinguishable from the instant action — the *Meilleur* plaintiff did not apprise the court of status of process or request an extension — the Second Circuit's language is illuminating.  Even while affirming the district court, the Second Circuit noted that the lower court's holding was "harsh and we might well have exercised discretion differently were it for us to decide in the first instance." *Meilleur*, 682 F.3d at 63.  Thus, for the reasons set forth here, the DA Defendants' motion to dismiss the 1800 Complaint against them for insufficient service of process under Rule 12(b)(5) is denied.

## E.   The Court Dismisses Some, But Not All, of the Claims in the 1800 Complaint Pursuant to Rule 12(b)(6)

The remaining arguments of the Moving Defendants are made pursuant to Rule 12(b)(6), and concern Plaintiff's alleged failures to state a claim.  The Court therefore proceeds to consider these claims on the merits, beginning with Plaintiff's claims in the 1800 Complaint, which focus on conduct before and immediately following Plaintiff's 2012 arrest.

Plaintiff brings a combination of constitutional, statutory, and state-law claims, many of which the Court previously addressed in its 2015 Order to

Amend.  (1800 Dkt. #15).  The Court will address each category of claims in turn, ultimately dismissing all of the claims in the 1800 Complaint with the exceptions of certain of Plaintiff's claims for malicious abuse of process and unlawful search and seizure.

### 1.    Claims Under 42 U.S.C. § 1983

Plaintiff brings federal claims under Section 1983, which establishes liability for deprivation, under the color of state law, "of any rights, privileges, or immunities secured by the Constitution."  42 U.S.C. § 1983.  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt* v. *Cole*, 504 U.S. 158, 161 (1992) (citation omitted).  As such, a "§ 1983 claim has two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges."  *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *see also City of Oklahoma City* v. *Tuttle*, 471 U.S. 808, 816 (1985) ("By its terms, of course, [42 U.S.C. § 1983] creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.").

As a prerequisite to an award of damages under Section 1983, a plaintiff must show the personal involvement of the defendants in the alleged constitutional deprivations.  *See Farrell* v. *Burke*, 449 F.3d 470, 484 (2d Cir. 2006).  To show personal involvement, a plaintiff must plead "factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

A court may consider supervisory personnel to be "personally involved" if a plaintiff plausibly alleges facts showing that those defendants: (i) participated directly in the alleged constitutional violation; (ii) failed to remedy the wrong after being informed of it; (iii) created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to the rights of citizens by failing to act on information indicating there were ongoing unconstitutional acts. *Grullon* v. *City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citing *Colon* v. *Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[7]

Municipal entities may be sued directly for constitutional violations pursuant to 42 U.S.C. § 1983, *see Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), but cannot be held liable for the acts of their employees under the doctrine of *respondeat superior*, *see Pembaur* v. *City of Cincinnati*, 475 U.S.

---

[7]     Courts have disagreed as to whether the five *Colon* factors continue to apply after *Iqbal*. *See Landron* v. *City of New York*, No. 14 Civ. 1046 (NRB), 2014 WL 6433313, at *4 n.1 (S.D.N.Y. Nov. 7, 2014) (collecting cases); *Vogelfang* v. *Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) (same); *see also Raspardo* v. *Carlone*, 770 F.3d 97, 116-17 (2d Cir. 2014) (declining to decide the degree to which *Colon* survives *Iqbal*). Any such uncertainty, however, does not alter settled law that "[t]he mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." *Styles* v. *Goord*, 431 F. App'x 31, 33 (2d Cir. 2011) (summary order) (collecting cases).

469, 478 (1986).  In other words, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694) (emphasis in *Segal*).

A plaintiff may establish municipal liability under *Monell* in several ways, including by presenting evidence of

> [i] an express policy or custom, [ii] an authorization of a policymaker of the unconstitutional practice, [iii] failure of the municipality to train its employees, which exhibits a "deliberate indifference" to the rights of its citizens, or [iv] a practice of the municipal employees that is "so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials."

*Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (quoting *Pangburn* v. *Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)).

### 2.   The Court Dismisses in Part and Sustains in Part Plaintiff's Constitutional Claims Against the Government Defendants

#### a.   Plaintiff's Speedy Trial, False Arrest, False Imprisonment, Fabrication of Evidence, and Malicious Prosecution Claims Are Barred by *Heck*

As pleaded, Plaintiff's speedy trial, false arrest, false imprisonment, fabrication of evidence, and malicious prosecution claims are barred because Plaintiff's criminal proceedings were not terminated in his favor, as required by *Heck* v. *Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court established a favorable termination requirement for § 1983 actions that do not "seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful." 512 U.S. at 486 n.6. In relevant part, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 477; *cf. Poventud* v. *City of New York*, 750 F.3d 121 (2d Cir. 2014) (en banc) (allowing claim for failure to disclose exculpatory evidence before trial to proceed, despite subsequent guilty plea to lesser included offense).

Plaintiff asserts that the dismissal of the state charges brought against him constitutes a favorable termination, and thus that none of his § 1983 claims is barred by *Heck*. (1800 Compl. ¶ 46; 1800 Pl. Opp. ¶ 26). A brief overview of the procedural history of the case — particularly the relationship between the state and federal charges — is necessary to address Plaintiff's argument.

To review, the NYPD arrested Plaintiff on January 25, 2012. (1800 Compl. ¶ 43; 1800 DA Br., Ante Decl., Ex. E at 3). On January 26, 2012, Plaintiff was presented in New York County Supreme Court on a felony complaint. (1800 Compl. ¶ 44; 1800 DA Br., Ante Decl., Ex. E at 3). The same

28

day, a New York County grand jury filed an indictment charging Plaintiff with two counts of promoting prostitution.  (*Id.*).  Plaintiff was arraigned on this indictment on February 15, 2012.  (1800 DA Br., Ante Decl., Ex. E at 3).

On January 22, 2013, Corley was indicted in this District, on two counts of sex trafficking of a minor.  *See United States* v. *Corley*, No. 13 Cr. 48 (AJN), 2016 WL 9022508, at *1 (S.D.N.Y. Jan. 15, 2016).  An additional count of sex trafficking of a minor, and one count of possession of child pornography, were added in a superseding indictment on October 10, 2013.  *See id.*  Because the subject matter of the federal indictments included the criminal conduct charged under the New York County indictment, the DANY recommended that the New York County indictment be dismissed.  (1800 DA Br., Ante Decl., Ex. E at 4-6).[8]  On February 1, 2013, the state charges were dismissed in their entirety.  (1800 Compl. ¶ 46).

On April 21, 2014, Plaintiff was convicted on all three counts of his federal indictment after a jury trial.  (1800 DA Br., Ante Decl., Ex. G). Plaintiff's conviction was upheld by the Second Circuit and his petition for writ of certiorari was denied by the Supreme Court.  *See United States* v. *Corley*, 679 F. App'x 1, 8 (2d Cir. 2017) (summary order), *cert. denied*, 138 S. Ct. 205 (2017).

---

[8]     Under the double jeopardy provisions of New York Criminal Procedure Law § 40.20, any disposition of the federal indictment would bar subsequent proceedings under the New York County indictment.  *See People* v. *Abbamonte*, 43 N.Y.2d 72 (1977) (interpreting C.P.L. § 40.20[2], a state prosecution is barred whenever "the particular activity for which the State seeks to hold defendants responsible were or could have been alleged to support" previous federal charges).

In the instant action, Plaintiff argues that none of his claims is barred by *Heck* for a litany of reasons, including that: (i) the dismissal of the state indictment in 2013 was a termination in his favor (1800 Compl. ¶ 46; 1800 Pl. Opp. 26); (ii) his pending motions for a new trial under Federal Rule of Criminal Procedure 33 and for vacatur pursuant to 28 U.S.C. § 2255 could reverse his conviction (1800 Pl. Opp. 27); (iii) he will eventually be released from custody (*id.*); (iv) the "split verdict" renders *Heck* inapposite (*id.* at 27-28); and (v) the application of *Heck* causes prejudice (*id.* at 28). The Court addresses each argument in turn.

Where, as here, "the Federal and State actions are inextricably intertwined and substantially related to one another, the *Heck* rule applies to bar Section 1983 claims based on the dismissed state charges." *Bogle* v. *Melamed*, No. 09 Civ. 1017 (RJD), 2012 WL 1117411, at *3 (E.D.N.Y. Mar. 30, 2012) (quoting *Thompson* v. *Delvalle*, No. 07 Civ. 4691 (BSJ), 2010 WL 2505638, at *3 (S.D.N.Y. June 21, 2010)). In this case, Plaintiff was arrested on federal charges arising out of the same events and conduct underlying the state charges. (1800 DA Br., Ante Decl., Ex. E at 4-6). In his Opposition, Plaintiff argues that the state charges were not identical to the federal charges, which covered a broader range of conduct. (*See* 1800 Pl. Opp. 26-27). However, *Heck* does not require that the state and federal charges be identical; instead, *Heck* applies when the dismissed state and federal charges derive from substantially the same conduct. *See Bogle*, 2012 WL 1117411, at *3. Therefore, since Plaintiff was convicted on federal charges stemming from the

precise conduct underlying his dismissed state charges, the dismissal of the state charges was not a favorable termination. *See Thompson*, 2010 WL 2505638, at *3.

Plaintiff's remaining arguments do not compel a different conclusion. *First*, neither Plaintiff's pending motions, nor his eventual release, has any effect on the applicability of *Heck*. *See Magnotta* v. *Putnam Cty. Sheriff*, No. 13 Civ. 2752 (GBD) (GWG), 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014) ("Nor does the fact that [plaintiff] is actively appealing his criminal conviction … lift the *Heck* bar inasmuch as the plaintiff in *Heck* itself was also pursuing an appeal of his criminal conviction at the time he brought his § 1983 claims." (citing *Heck*, 512 U.S. at 478-79)).[9] *Second*, although a "split verdict" can render the *Heck* bar inapplicable in some circumstances, *see Dunham* v. *City of New York*, 295 F. Supp. 3d 319, 333 (S.D.N.Y. 2018), no split verdict occurred here; Plaintiff was convicted of all counts in the federal indictment, *see Corley*, 679 F. App'x at 3.

*Finally*, Plaintiff's argument that "Defendants willfully forfeited a trial to prove the strength of their case, [while trying] to ride on the coattails of a federal conviction," is nonsensical. (1800 Pl. Opp. 28). The DANY can hardly be said to have forfeited anything; it dismissed its indictment in favor of a federal indictment with additional charges and greater penalties. The result of

---

[9]     Plaintiff's "eventual release" argument is likely sourced to an exception to the *Heck* bar recognized by the Second Circuit, which permits § 1983 claims to proceed where the plaintiff is no longer in custody and cannot pursue *habeas* relief. *See Huang* v. *Johnson*, 251 F.3d 65, 73-75 (2d Cir. 2001). However, because Plaintiff remains incarcerated, this exception is inapplicable to the instant action.

the federal prosecution suggests the strength of the DANY's evidence.  Despite the fact that Plaintiff may be "unable to reverse his federal conviction" (*id.*), Defendants did not improperly invoke *Heck*, *see* 512 U.S. at 484-85 ("This Court has long expressed … concerns for finality and consistency and has generally declined to expand opportunities for collateral attack[.]").

Given the lack of a favorable termination, the Court now examines which of Plaintiff's claims implicate the validity of his conviction and thus are barred by *Heck*.  Count XII of the 1800 Complaint, Plaintiff's Sixth Amendment speedy trial claim, necessarily implies that his conviction was erroneous and must be dismissed.  *See Montane* v. *Pettie*, No. 10 Civ. 4404, 2012 WL 1617713 (ARR), at *3 (E.D.N.Y. May 8, 2012) (dismissing speedy trial claim as well as malicious prosecution claim under *Heck*); *Davis* v. *New York*, No. 90 Civ. 6170 (MBM), 2003 WL 1787151, at *1 (S.D.N.Y. Apr. 2, 2003) (dismissing speedy trial claim); *see also Zarro* v. *Spitzer*, 274 F. App'x 31, 34 (2d Cir. 2008) (summary order) (affirming *sua sponte* dismissal of claims raising questions about plaintiff's Sixth Amendment right to counsel because such claims implicated the validity of conviction).

Plaintiff's false arrest and false imprisonment claims, in Counts VI and VII of the 1800 Complaint, are also barred because relief would imply the invalidity of Plaintiff's conviction.  *See Younger* v. *City of New York*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (finding that claims for false arrest and false imprisonment were barred by Plaintiff's conviction); *see also Magnotta*, 2014 WL 705281, at *5 (dismissing Plaintiff's false arrest claim "as success on that

claim would necessarily imply the invalidity of the conviction resulting from

that arrest").

In Counts IV and V of the 1800 Complaint, Plaintiff alleges that the

Government Defendants fabricated and altered physical evidence and coerced

informants into giving false statements.  (1800 Compl. ¶¶ 37-41, 75-76).  The

Court construes these allegations as claims for fabrication of evidence, in

violation of Plaintiff's right to a fair trial.  *See Garnett* v. *Undercover Officer

C0039*, 838 F.3d 265, 278 (2d Cir. 2016).  They, too, necessarily imply that

Plaintiff's underlying conviction was wrongful.  Here, as in *Warren* v. *Fischl*,

although Plaintiff has "not in so many words challenged the lawfulness of his

conviction," the Court does "not doubt that his allegations of extensive

conspiratorial misconduct between [the police] and the prosecution would

render the conviction invalid if they were proved."  674 F. App'x 71, 73 (2d Cir.

2017) (summary order) (finding that Plaintiff's fabrication of evidence claims

were barred by Heck), *cert. denied*, 138 S. Ct. 123 (2017).  For that reason,

Plaintiff's fair trial claims are barred by *Heck*.  *See also Smalls* v. *City of New

York*, 181 F. Supp. 3d 178, 185 (E.D.N.Y. 2016) ("A fabrication of evidence

claim, like a malicious prosecution claim, seeks to impugn the validity of the

extant conviction.").

Finally, favorable termination is an element of a malicious prosecution

claim.  *See Heck*, 512 U.S. at 484-86.  As Plaintiff has not shown favorable

termination, his malicious prosecution claim, alleged in Count XI of the 1800

Complaint, cannot survive.  In sum, *Heck* and its progeny require that

Plaintiff's speedy trial, false arrest, false imprisonment, fabrication of evidence, and malicious prosecution claims be dismissed.

> ### b. Plaintiff's Claims for Substantive Due Process and Conspiracy to Violate His Due Process Rights Fail

As clarified in his 1800 Complaint and Opposition, Plaintiff's claims for "Outrageous Government Conduct" and "Harassment" are properly construed as substantive due process claims.  (*See* 1800 Compl. ¶ 74; 1800 Pl. Opp. 13).  Therefore, in order to survive a motion to dismiss, Plaintiff must allege government conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *Velez* v. *Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (internal quotations and citations omitted).

Plaintiff's claim for substantive due process includes ample factual allegations, including five additional pages of briefing on the issue in his Opposition.  (1800 Compl. ¶¶ 27-33; 1800 Pl. Opp. 13-17).  Length, however, does not equal substance: Plaintiff's briefing, even liberally read, distills to allegations that the Government Defendants used informants in the course of undercover operations.  Specifically, Plaintiff claims that the Government Defendants worked with alleged prostitutes as confidential informants, while investigating alleged pimps and "individuals they believed to be associated with the Plaintiff." (1800 Compl. ¶ 30).  Plaintiff does not indicate that the Government's conduct affected him.  To the contrary, he asserts that he "declin[ed] to do any business" with any of the alleged informants.  (*Id.* at ¶ 34).

The conduct alleged to have been undertaken by the Government Defendants does not shock the contemporary conscience.  *See Matican* v. *City*

*of New York*, 524 F.3d 151, 159 (2d Cir. 2008) (finding that law enforcement's design of sting operation, including participation of informant, did not shock the conscience).  Nor do Plaintiff's sweeping statements that Defendants "forc[ed] an underage girl to engage in prostitution in order to fraudulently arrest her pimp" (1800 Pl. Opp. 13), or that they "encouraged and promoted prostitution" (*id*. at 17), cure the 1800 Complaint's deficiencies.  Plaintiff's factual basis for these statements is that the Government Defendants simultaneously pursued investigations into suspected prostitution while meeting with potential informants who may have been prostitutes, some of whom may have been underage.  (*Id*. at 15).  If true, that conduct is neither inconsistent nor illegal, much less outrageous.

Finally, Plaintiff's harassment claim lacks any factual development. Plaintiff merely claims that the Government Defendants "engag[ed] in a systematic and intentional pattern of harassment by abusing legal process to deliberately invade Plaintiff's privacy without probable cause[.]"  (1800 Compl. ¶ 74).  Although it reads Plaintiff's claims to raise the strongest arguments they suggest, the Court is not obligated to accept as true legal conclusions masquerading as factual allegations.  *See Rolon* v. *Henneman*, 517 F.3d 140, 148-49 (2d Cir. 2008).  Without any supporting factual allegations, Plaintiff's claim of harassment does not suffice to save his due process claim.

Counts I and III of the 1800 Complaint are dismissed by reason of this analysis.  By extension, Count II, which alleges conspiracy to violate Plaintiff's substantive due process rights, also fails.  *See Curley* v. *Vill. of Suffern*, 268

F.3d 65, 72 (2d Cir. 2001) (finding that plaintiffs may not maintain a § 1983 claim for conspiracy if they cannot establish the underlying constitutional violation). Plaintiff's conspiracy claim relies on the same due process allegations — that the Government Defendants engaged in undercover operations to root out prostitution of underage victims and met with informants in furtherance of that process. (1800 Compl. ¶¶ 34-36). Because Plaintiff has not plausibly alleged a constitutional violation of his due process rights, his conspiracy claim is dismissed.

### c.   Plaintiff's Claim for Malicious Abuse of Process Survives in Part and Fails in Part

In Counts IX and X of the 1800 Complaint, Plaintiff advances two claims for malicious abuse of process. (1800 Compl. ¶¶ 80-81). *First*, Plaintiff alleges that the Government Defendants "arrest[ed] Plaintiff to compel his cooperation in Nuisance Abatement proceedings" (1800 Pl. Opp. 19), against "numerous Manhattan property owners" (1800 Compl. ¶ 50). Specifically, Plaintiff claims that during an interrogation in January 2012, one of the Government Defendants, Detective Woods, informed Plaintiff that the DA Defendants were "interested in Plaintiff's cooperation regarding the owners of apartment buildings alleged to be involved with illegal activities." (*Id.* at ¶ 49). When Plaintiff declined to cooperate, the Government Defendants arrested him. (*Id.*). *Second*, Plaintiff claims that the Government Defendants, with knowledge that Plaintiff was seeking proof of employment with Con Edison to obtain lower bail, "disclos[ed] Grand Jury evidence to [Con Edison] which effectively caused his termination." (1800 Pl. Opp. 19).

36

To state a claim for malicious abuse of process under New York law, Plaintiff must allege "that defendant [i] employed regularly issued legal process to compel performance or forbearance of some act, [ii] with the intent to do harm without excuse or justification, and [iii] in order to obtain a collateral objective that is outside the legitimate ends of the process." *Arrington* v. *City of New York*, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order) (brackets omitted) (quoting *Savino* v. *City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)). To raise this claim under § 1983, a plaintiff must allege an abuse of the criminal process. *See Cook* v. *Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). What is more, in the criminal context, a plaintiff must allege "a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77.

Plaintiff plausibly alleges the Government Defendants' collateral objective as to his first claim, but not his second. With regards to his first claim, Plaintiff has alleged that the Government Defendants "had an ulterior purpose or objective in facilitating his prosecution." *See Savino*, 331 F.3d at 78. As alleged, the Government Defendants suggested to Plaintiff that if he agreed to do something for them, he would not be arrested. In contrast, Plaintiff's second claim does not allege a collateral purpose. While Plaintiff does allege that the Government Defendants were aware that he was seeking lower bail — as they necessarily would be — he does not allege that they unlawfully disclosed grand jury evidence with the purpose of getting him fired. (1800 Compl. ¶ 51). There is, therefore, no indication in the 1800 Complaint that the Government Defendants sought to achieve a collateral purpose "beyond or in

addition to his criminal prosecution." *Corso* v. *City of New York*, No. 17 Civ. 6096 (NRB), 2018 WL 4538899, at *10 (S.D.N.Y. Sept. 20, 2018); *see also Goldring* v. *Zumo*, No. 14 Civ. 4861 (BMC), 2015 WL 148451, at *3 (E.D.N.Y. Jan. 12, 2015) ("[I]n the criminal context, harm to a plaintiff's business is not sufficient unless it is used a means to compel some other result."). For that reason, Count IX of the 1800 Complaint succeeds and Count X fails.

### d.    Plaintiff's Claims for Unlawful Search and Seizure Survive in Part and Fail in Part

Construed liberally, Plaintiff alleges four separate claims for unlawful searches in violation of the Fourth Amendment in Count VIII of the 1800 Complaint. The first three searches occurred on January 25, 2012, the day of his arrest; the fourth search took place on February 1, 2012. The Court addresses each alleged violation in turn.

### i.    The Search Incident to Arrest

In his first unlawful search claim, Plaintiff alleges that after he was arrested on January 25, 2012, "two cellphones, electronic media and credit cards" were "removed from his person[.]" (1800 Compl. ¶ 47). The Court understands the allegations to be a claim of unlawful search incident to arrest.[10]

The Fourth Amendment, incorporated against the states by the Fourteenth Amendment, guarantees all individuals the right to be free from

---

[10]    Plaintiff does not allege that the digital contents of his cell phone were searched incident to his arrest. Accordingly, the Court does not discuss whether *Riley* v. *California*, 573 U.S. 373 (2014), which discusses the circumstances under which cell phones can be searched without a warrant, is implicated.

unreasonable search and seizure.  *See, e.g., Mapp* v. *Ohio,* 367 U.S. 643, 655 (1961).  While searches typically require a warrant in order to qualify as "reasonable," the Supreme Court has held "that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."  *United States* v. *Robinson,* 414 U.S. 218, 235 (1973).  Furthermore, "a search incident to the arrest requires no additional justification.  It is the fact of the lawful arrest which establishes the authority to search."  *Id.*  Therefore, whether Plaintiff's claim survives turns on whether probable cause existed to arrest Plaintiff, rendering the arrest lawful.  If so, then the search of Plaintiff pursuant to that arrest was reasonable as a matter of law.

Although probable cause is not to be inferred from the allegations in a complaint, "an individual's criminal conviction conclusively establishes the existence of probable cause for his arrest," for the purposes of a § 1983 action. *Kennedy* v. *City of New York*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *16 (S.D.N.Y. Oct. 23, 2015) (dismissing claim for unlawful search incident to arrest because a conviction, not reversed on appeal, constitutes evidence of probable cause); *see also Cameron* v. *Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.").  In 2014, Plaintiff was convicted of all of the federal charges brought against him.  His conviction has not been overturned or

invalidated.  Thus, there was presumptively probable case for the arrest, and

Plaintiff's first unlawful search and seizure claim is dismissed.[11]

### ii.    The Workplace Search

Also on the day of his arrest, Plaintiff's office was searched, and his work

computer seized without a warrant.  (1800 Compl. ¶ 47).  This search forms the

factual basis of Plaintiff's second unlawful search claim.

"In the workplace context, the Supreme Court has recognized that

'employees may have a reasonable expectation of privacy against intrusions by

police.'"  *United States* v. *Yudong Zhu*, 23 F. Supp. 3d 234, 237 (S.D.N.Y. 2014)

(citing *O'Connor* v. *Ortega*, 480 U.S. 709, 716 (1987)).  "[T]he question whether

an employee has a reasonable expectation of privacy must be addressed on a

case-by-case basis."  *O'Connor*, 480 U.S. at 710.  To determine whether that

expectation exists, the Court must consider, "[t]he operational realities of the

workplace."  *Id.* at 717.  "[B]oth public and private 'employees' expectations of

privacy in their offices, desks, and file cabinets ... may be reduced by virtue of

---

[11]    In the alternative, Plaintiff's first claim for unlawful search fails because Plaintiff has not adequately alleged the personal involvement of any defendants.  *See Farrell* v. *Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (finding that, as a prerequisite to an award of damages under § 1983, a plaintiff must show the personal involvement of the defendants in the alleged constitutional deprivations).  On this point, the Government Defendants argue that Plaintiff has wholly failed to allege their personal involvement. (*See* 1800 DA Br. 17-18).  However, Plaintiff argues that the Government Defendants "convolute" his general references to the DA Defendants as "DANY," and to the NYPD Defendants as "NYPD."  (1800 Pl. Opp. 9).  According to Plaintiff, those abbreviations were used "solely for brevity," and are meant to indicate that *all* referenced defendants were involved in the alleged conduct.  (*Id.*).  With the proper deference due to a *pro se* party, the Court accepts Plaintiff's argument, even as it questions the plausibility of such allegations.  In any event, with regard to his first two unlawful search claims, Plaintiff does not reference any defendants at all.  (1800 Compl. ¶ 47).  Plaintiff partially corrects his omission in his Opposition by naming the officers involved in the second search, but makes no mention of any officer involvement in the first search.  (*See* 1800 Pl. Opp. 9 ("Sgt. Michael Daly, Det. Jessica Sterling and NYPD Personnel raided Plaintiff's home and Con Edison office[.]")).

actual office practices and procedures, or by legitimate regulation.'" *See Niceforo* v. *UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 435 (S.D.N.Y. 2014) (quoting *O'Connor,* 480 U.S. at 717).

Here, the DA Defendants argue — and the Court agrees — that the Complaint fails to allege that Plaintiff has any expectation of privacy in his office or his work computer.  (1800 DA Br. 12).  In his opposition, Plaintiff counters that such an argument is "meritless" because, under *O'Connor*, the Supreme Court has recognized that employees may have a reasonable expectation of privacy in the workplace.  (1800 Pl. Opp. 19).  *See also O'Connor*, 480 U.S. at 716.  While the Court does not dispute Plaintiff's characterization of *O'Connor*'s holding, that does not mitigate Plaintiff's failure to allege any facts, either in the 1800 Complaint or in his Opposition, regarding his expectation of privacy in the workplace.  In all of Plaintiff's submissions to the Court, including his 66 pages of opposition briefing in the 1800 action, Plaintiff has never claimed that he could make such a showing.  Nor has Plaintiff proffered specific, non-conclusory factual allegations that he could add in order to make a showing under *O'Connor*.  For that reason, Plaintiff's second search claim fails.

### iii.    The Warranted Searches

Plaintiff's final two claims for unlawful search involve warranted searches.  *First*, Plaintiff alleges that at the same time his office was being searched, Plaintiff's apartment was searched without probable cause and "pursuant to a search warrant based on the bogus sting operation, stale

evidence, fabricated evidence, and tampered witness statements." (1800 Compl. ¶ 47). *Second*, on February 1, 2012, Plaintiff's "cell phone and electronic media" were searched "pursuant to a search warrant based on the bogus sting operation, fabricated evidence and false statements." (*Id.* at ¶ 48).

To challenge a warranted search as unlawful pursuant to § 1983, "a plaintiff must make a 'substantial preliminary showing' that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a material false statement in applying for the warrant." *Calderon* v. *City of New York*, 138 F. Supp. 3d 593, 604 (S.D.N.Y. 2015) (quoting *Rivera* v. *United States,* 928 F.2d 592, 604 (2d Cir. 1991)). In addition, "the allegedly false statement [must be] necessary to the finding of probable cause." *Rivera,* 928 F.2d at 604 (internal citations and quotations omitted).

Here, Plaintiff offers appropriately specific allegations that, taken as true for purposes of this motion, just satisfy the pleading threshold. *See Velardi* v. *Walsh*, 40 F.3d 569, 573 (2d Cir. 1994). Broadly, Plaintiff alleges that the January 25, 2012 search of his apartment, and the February 1, 2012 search of his cell phone and electronic media were conducted pursuant to warrants that were "based on the bogus sting operation, stale evidence, fabricated evidence and tampered witness statements." (1800 Compl. ¶¶ 47-48). Specifically, Plaintiff alleges that the Government Defendants altered the unique identification numbers of Backpage.com advertisements, giving the appearance that the pages were created by Plaintiff. (*Id.* at ¶ 38). In addition, the Government Defendants are alleged to have knowingly used false statements

from informants — and in some instances coerced the informants into giving the false statements — to manufacture probable cause for the warrants.  (*Id.* at ¶ 40).

Plaintiff plausibly pleads, with sufficient factual detail at this stage of the litigation, that the Government Defendants conducted unlawful searches of his home and electronic media.  Thus, Plaintiff's third and fourth claims for unlawful search survive.

### e.    Plaintiff's Privacy Claim Fails

In his final constitutional claim, Plaintiff alleges a violation to his right to privacy under the First and Fourth Amendments of the Constitution.  (1800 Compl. ¶¶ 60, 84).  Plaintiff alleges that the Government Defendants and certain of the Corporate Defendants, including the Con Edison Defendants, T-Mobile, Facebook, Google, TW, MCU, Capital One, and Chase (collectively, the "Privacy Defendants"), violated his right to privacy "by intentionally accessing, intercepting or disclosing Plaintiff's communications, personal information and financial records, which Plaintiff had a reasonable expectation of privacy in, or willfully aided, abetted, counseled, commanded and induced the acts thereof[.]" (*Id.* at ¶ 84).

Plaintiff's privacy claims suffer from two deficiencies.  *First*, Plaintiff's claims against the Privacy Defendants are subject to dismissal for failure to allege state action.  *See DeMatteis* v. *Eastman Kodak Co.*, 511 F.2d 306, 311 (2d Cir. 1975) (finding that private parties generally are not liable under § 1983).  As clarified in his Opposition, "Plaintiff does not plead any conspiracy

with respect to Private-Defendants," but merely alleges that they "aided and abetted state actors," without any additional factual allegations.  (1800 Pl. Opp. 12).  However, this conclusory legal assertion, shorn of any supporting facts, will not suffice.  Although a private individual can be held liable under § 1983 if "operat[ing] as a willful participant in joint activity with the State or its agents," *Abdullahi* v. *Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009), "merely supplying information to [law enforcement] does not make the supplier of information a state actor," *Luciano* v. *City of New York*, No. 09 Civ. 00359 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009).  Without additional factual allegations as to the joint activity, Plaintiff's claim as to the Privacy Defendants fails.

*Second*, and more fundamentally, the Complaint is devoid of *any* factual allegations in support of Plaintiff's claim.  Plaintiff's conclusory allegation that certain defendants violated his right to privacy by intercepting and voluntarily disclosing his personal information, without any specific allegations, is insufficient to defeat the motions to dismiss.  Because a complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient to raise a right to relief *above the speculative level*," *Twombly*, 550 U.S. at 555 (emphasis added), Plaintiff's privacy claim at Count XIII of the 1800 Complaint is dismissed in its entirety.

### f.    The Record Does Not Permit the Court to Resolve All of the Government Defendants' Arguments for Immunity

Having determined that Plaintiff has plausibly pleaded claims for malicious abuse of process and unlawful search and seizure, the Court now considers whether any of the Government Defendants is entitled to immunity.[12]

With regards to the DA Defendants, absolute immunity bars a civil suit against a prosecutor for conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler* v. *Pachtman*, 424 U.S. 409, 430 (1976). Although, "[p]rosecutorial immunity from § 1983 liability is broadly defined," *Giraldo* v. *Kessler*, 694 F.3d 161, 165 (2d Cir. 2012), "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity," *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 273 (1993).

Relatedly, the NYPD Defendants enjoy a qualified immunity that shields them from personal liability for damages under § 1983 insofar as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or it was objectively reasonable for [him or her] to believe that [his or her] actions were lawful at the time of the challenged act." *Jenkins* v. *City of New York,* 478 F.3d 76, 87 (2d

---

[12]    As noted, Plaintiff alleges that all of the DA Defendants and all of the NYPD Defendants participated in the unlawful warranted searches.  (1800 Compl. ¶¶ 47-48, 79). Additionally, Plaintiff brings his malicious abuse of process claim against all of the NYPD Defendants.  (*Id.* at ¶¶ 49-50).

Cir. 2007) (citations and quotation marks omitted); *see also Caceres* v. *Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 622 (2d Cir. 2011).

> ### i.   The Court Cannot Decide Whether the Government Defendants Are Immune from Liability on Plaintiff's Unlawful Search Claims

To review, Plaintiff's third and fourth unlawful search claims involve, respectively, the January 25, 2012 search of Plaintiff's apartment, and the February 1, 2012 search of Plaintiff's cell phones and electronic media, "pursuant to a search warrant based on the bogus sting operation, fabricated evidence and false statements." (1800 Compl. ¶¶ 47-48). Although the Court recognizes "the importance of resolving the question of qualified immunity at the earliest possible stage in litigation," *see Allah* v. *Goord*, 405 F. Supp. 2d 265, 272 (S.D.N.Y. 2005), many of "the fact intensive question[s]" posed by the inquiry into immunity cannot be resolved on these motions to dismiss, *Kanciper* v. *Lato*, 989 F. Supp. 2d 216, 233 (E.D.N.Y. 2013).

For starters, the Court does not have adequate information to determine whether, as argued by the DA Defendants, the prosecutors are entitled to absolute immunity for drafting and obtaining the search warrants. (*See* 1800 DA Br. 15-16 (citing *Parker* v. *Zugibe*, No. 16 Civ. 4265 (KMK), 2017 WL 4296795, at *3 (S.D.N.Y. Sept. 26, 2017))). While the Supreme Court has extended absolute immunity to a prosecutor's "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing," it has also made clear that not all conduct related to a search warrant is covered. *Burns* v. *Reed*, 500 U.S. 478, 492 (1991). For example,

when a prosecutor is the affiant who swears that probable cause existed to support the search, she is "acting as a complaining witness rather than a lawyer," and is not immune to suit. *Kalina* v. *Fletcher*, 522 U.S. 118, 129 (1997).

For that reason, prior to ruling on immunity, it is critical for the Court to determine Plaintiff's "precise claim." *Burns*, 500 U.S. at 487. As contemplated in *Burns*, "conduct outside of the courtroom relating to the warrant" may not be covered by absolute immunity. *Id.* Here, although Plaintiff makes sufficient factual allegations to state a claim for unlawful search, he has not detailed the conduct of each of the affected defendants sufficiently to permit the Court to make an immunity determination. Plaintiff alleges that the DA Defendants conducted a search pursuant to a deeply flawed warrant, but does not specify what conduct, or whose conduct, he claims to have been violative.

For the same reason, the Court cannot determine, at this juncture, whether the NYPD Defendants are entitled to qualified immunity. "Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, the shield of qualified immunity is lost." *Rivera*, 928 F.2d at 604. However, "if, after crossing out any allegedly false information and supplying any omitted facts, the 'corrected affidavit' would have supported a finding of probable cause … a qualified immunity defense must be upheld." *Velardi*, 40 F.3d at 573. While the NYPD Defendants may establish through discovery that there were in fact no errors in the warrant paperwork, or that a "corrected affidavit" would also have

47

supported a finding of probable cause, the Court cannot make that finding with the information currently available on these motions to dismiss.  *See Kanciper*, 989 F. Supp. 2d at 233.

> **ii.   The DA Defendants Are Entitled to Absolute Immunity on Plaintiff's Malicious Abuse of Process Claim; the Court Cannot Decide the Issue with Regard to the NYPD Defendants**

Turning to the malicious abuse of process claim, Plaintiff alleges that Detective Woods informed him that the DA Defendants were interested in Plaintiff's cooperation in New York nuisance abatement proceedings.  (1800 Compl. ¶¶ 49, 50).  When Plaintiff declined to cooperate, the DANY brought charges.  (*Id.* at ¶ 49).  Of course, prosecutors are entitled to absolute immunity for acts taken "in initiating a prosecution and in presenting the State's case."  *Smith* v. *Garretto*, 147 F.3d 91, 94 (2d Cir. 1998).  Here, however, the Court construes Plaintiff's claim not just to challenge the initiation of the case, but also to challenge the conditioning of the prosecutorial decision on Plaintiff's failure to cooperate in unrelated civil proceedings.

The Second Circuit has held that a prosecutor may lose her shield of absolute immunity when she agrees to forgo prosecution in exchange for certain concessions by the accused.  *See Doe* v. *Phillips*, 81 F.3d 1204, 1210 (2d Cir. 1996).  In those situations, a court is to examine "the nature of the conduct that was allegedly intertwined with the prosecutorial decision."  *Id.*  "If the prosecutor has acted without any colorable claim of authority to impose the condition in question, his conduct is not protected by absolute immunity."

*Kent* v. *Cardone*, 404 F. App'x 540, 543 (2d Cir. 2011) (summary order) (internal citations and quotations omitted).

The Second Circuit has provided several examples of conditions that are beyond a prosecutor's authority, including demands for bribes or sexual favors, *see Schloss* v. *Bouse*, 876 F.2d 287, 291 (2d Cir. 1989), or for the defendant's performance of a religious act, *see Doe*, 81 F.3d at 1211. Conversely, absolute immunity extends to instances in which prosecutors act within their authority to seek conditions. For example, a prosecutor retains immunity when he requires a defendant to execute releases in favor of certain municipal entities, *see Schloss*, 876 F.2d at 291, or make a payment to a civil party, *see Cardone*, 404 F. App'x at 543, in order to avoid indictment.

Here, the condition allegedly imposed by the DA Defendants is more akin to the latter, permissible set of cases than the former. For that reason, the DA Defendants retain absolute immunity, and Plaintiff's remaining malicious abuse of process claim is dismissed as to them. However, for the reasons stated above, the Court is unable on this record to decide the issue whether the NYPD Defendants enjoy qualified immunity. Therefore, Plaintiff's remaining malicious abuse of process claim as to the DA Defendants is dismissed, and as to the NYPD Defendants is sustained.[13]

---

[13]     In this regard, the NYPD Defendants argue that Plaintiff has abandoned two of his claims with respect to them:  "Plaintiff further failed to address defendant's argument that there was probable cause for his arrest and prosecution as well as defendant's qualified immunity argument."  (1800 NYPD Reply 4).  On the issue of qualified immunity, the NYPD Defendants are wrong.  Plaintiff addresses qualified immunity in his Opposition.  (1800 Pl. Opp. 8-9).  However, these Defendants are correct that Plaintiff did not specifically address their argument that "probable cause existed to arrest plaintiff on January 25, 2012 based on his subsequent criminal conviction."

### 3.    The Court Dismisses Plaintiff's Claims in the 1800 Complaint Against New York City

As stated above, municipal entities may be sued directly for constitutional violations pursuant to § 1983.  *See Monell*, 436 U.S. at 690.  A plaintiff may establish municipal liability under *Monell* in several ways, including by presenting evidence of "[i] an express policy or custom, [ii] an authorization of a policymaker of the unconstitutional practice, [iii] failure of the municipality to train its employees, which exhibits a 'deliberate indifference' to the rights of its citizens, or [iv] a practice of the municipal employees that is 'so permanent and well settled as to imply the constructive acquiescence of senior policymaking officials.'"  *Biswas* v. *City of New York*, 973 F. Supp. 2d 504, 536 (S.D.N.Y. 2013) (quoting *Pangburn* v. *Culbertson*, 200 F.3d 65, 71-72 (2d Cir. 1999)).

The 1800 Complaint includes broad, conclusory allegations that the City is liable, pursuant to *Monell*, for all of the constitutional violations just discussed.  (1800 Compl. ¶¶ 66-67).  However, the Complaint is bereft of any factual allegations explaining how municipal liability is established, with two exceptions: Plaintiff's allegations that (i) the City and the Government Defendants "have created a policy and custom of deliberately implementing

(1800 NYPD Br. 9).  The Court has nonetheless deemed Plaintiff to have made such an argument, on account of his *pro se* status, though it ultimately rules against him on the merits.

Further, the NYPD Defendants argue that "Plaintiff also states that he did not assert claims against the City in this action."  (1800 NYPD Reply 4).  "Accordingly," it is argued, "insofar as plaintiff ever asserted these claims, he now abandons them." (*Id.*). The Court disagrees.  Plaintiff has made clear that he elected not to bring supplemental state-law claims against the City, *not* that he has abandoned his federal claims against it.  (*See* 9621 Pl. Opp. 31).

unconstitutional sting operations to aid in the enforcement of nuisance abatement proceedings," and (ii) the Government Defendants "adopted a practice of coercing individuals to engage in prostitution to facilitate the investigation of suspected promoters." (*Id.* at ¶ 67).

Beginning with the second alleged policy, Plaintiff's *Monell* claim is dismissed. The Court has already found that, even construing the pleadings liberally, the Government Defendants' alleged practice of "facilitating prostitution" merely amounts to allegations that these Defendants met with alleged prostitutes and used, or considered using, them as confidential informants in their criminal investigations. Because the Court has already determined that Plaintiff failed adequately to plead an underlying constitutional violation involving the alleged coercion of individuals into prostitution, Plaintiff's *Monell* claim on this same theory fails. *See Ferguson* v. *Cai*, No. 11 Civ. 6181 (PAE), 2012 WL 2865474, at *6 (S.D.N.Y. July 12, 2012) ("Because the Court has concluded that [the plaintiff's] constitutional rights have not been violated, his claim of municipal liability pursuant to *Monell* is, *a fortiori*, also meritless.").

In contrast, Plaintiff has sufficiently alleged a malicious abuse of process violation. Therefore, his claims for municipal liability regarding the City's use of sting operations for nuisance proceedings cannot be dismissed for lack of an underlying constitutional violation. However, this claim fails for a different reason: the "official policy" allegations do not include, and cannot be amended to include, factual detail. The 1800 Complaint offers nothing beyond the bald

51

assertion that the "[Government Defendants] have created a policy and custom of deliberately implementing unconstitutional sting operations to aid in the enforcement of nuisance abatement proceedings under N.Y.C. Administrative Code § 7-703(a) and state law."  (1800 Compl. ¶ 67).

"To state there is a policy does not make it so.  And while a plaintiff need not assert the allegations in the initial complaint with a level of specificity only made possible through discovery," *Betts* v. *Shearman*, No. 12 Civ. 3195 (JPO), 2013 WL 311124, at *16 (S.D.N.Y. Jan. 24, 2013), Plaintiff here has not adequately pleaded specific facts in support of his official policy *Monell* allegations.  And, as with certain of Plaintiff's other claims, there is no sense from the Plaintiff's many submissions to the Court that such a claim can ever adequately be pleaded.

### 4.    The Court Dismisses Plaintiff's Statutory Claims

In addition to bringing constitutional claims in the 1800 Complaint, Plaintiff alleges violations of federal statutes governing access to wire, oral, and electronic communications, namely the ECPA, the SCA, the RFPA, and the DPPA.  Because the Complaint fails to plead facts showing a violation of any of these statutes, Plaintiff's claims in Counts XIV, XV, XVI, XVII, XVIII, XIX, XX, and XXI are dismissed.[14]

---

[14]    Plaintiff brings all of his statutory claims against both the Government Defendants and the Corporate Defendants.  Because the Court lacks personal jurisdiction to consider Plaintiff's claims against Facebook, it arguably should not consider the merits of those claims as to that defendant.  *See Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions").  However, the claims Plaintiff

### a. The Electronic Communications Privacy Act and Stored Communications Act

The privacy of stored Internet communications is governed by the SCA, which was enacted as, and remains, part of the ECPA.  The SCA mandates different standards the Government must satisfy to compel disclosure of different types of communications, *see* 18 U.S.C. § 2703, and imposes restrictions on voluntary disclosure by providers, *see* 18 U.S.C. § 2702.

In brief, Plaintiff alleges that the Government Defendants unlawfully accessed, intercepted, and altered his electronic communications in violation of the ECPA and the SCA.  (1800 Compl. ¶¶ 86, 88).  In addition, Plaintiff alleges that certain of the Corporate Defendants — including T-Mobile, Facebook, Google, TWC, MCU, Capital One, and Chase — were complicit in this process and knowingly divulged his records to the Government Defendants.  (*Id.* at ¶¶ 87, 89).

Plaintiff's threadbare allegations that the Government Defendants violated the ECPA and SCA are not sufficiently detailed to survive a motion to dismiss.  Plaintiff paints in broad strokes — alleging that the Government Defendants intercepted his communications "through" the Corporate Defendants, and then altered some of those communications "without the required warrant, notice with administrative subpoena or court order, or other appropriate legal authority[.]"  (1800 Compl. ¶¶ 86, 88).  Plaintiff claims to have

---

raises against Facebook are identical to the claims he brings against other Corporate Defendants.  Thus, to promote efficiency, the Court will not differentiate when addressing the merits of the Corporate Defendants' arguments.

become aware of these violations in June 2013 "from federal discovery disclosures," presumably related to his criminal case. (*Id.* at ¶ 63).

Significantly, however, Plaintiff's proffered evidence does not support his allegations. Indeed, in the 1800 Complaint, rather than "plead[ing] factual content that allows the court to draw the inference that the defendant is liable for the misconduct alleged," Plaintiff merely regurgitates the elements of each statute. *Iqbal*, 556 U.S. at 678. Without more than these conclusory allegations, Plaintiff's claims against the Government Defendants cannot survive a motion to dismiss. *See Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (explaining that to survive a motion to dismiss, a pleading must do more than assert "a formulaic recitation of the elements of a cause of action" (quoting *Twombly*, 550 U.S. at 545)).

The Court observes that Plaintiff has not made a single factual allegation regarding the Government Defendants' failure to comply with ECPA's statutory notice requirements. (1800 Compl. ¶¶ 26, 88). Instead, Plaintiff states that he "has not been provided with any court orders, subpoenas, warrants or notices in relation to any of these disclosures." (*Id.* at ¶ 26). Although Government entities are subject to notice requirements under the ECPA and the SCA, those obligations vary depending on the category of information being sought. *See* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1222 (2004). In addition, when notice is required, such notice may be delayed for significant periods of time. *See id.* at 1233-34. Without additional factual allegations, the

Court cannot find that the Government Defendants were subject to — much less in violation of — any notice requirements.

Similarly, Plaintiff's claims against the Corporate Defendants lack sufficient detail.  Here again, Plaintiff merely recites the statutory language, alleging that the service providers unlawfully disclosed his subscriber records without the required legal process or notice.  (1800 Compl. ¶¶ 26, 86, 89).  The Corporate Defendants argue, as suggested by this Court in its prior Order, that the statutes contain defenses for releasing information pursuant to a court order.  (*See* T-Mobile Br. 9-10; TWC Br. 2-6).  *See Corley*, 2015 WL 4164377, at *7.  However, upon closer review, the Court understands that Plaintiff does *not* allege that the Corporate Defendants complied with a court order, but instead brings his claims pursuant to Section 2702, which governs whether a provider can disclose information to the Government voluntarily.  (1800 Compl. ¶ 89).[15] For this reason, any good faith defense or court order compliance exception is inapplicable.

Under Section 2702, a provider "may divulge the contents of a communication" to a law enforcement agency, if the contents "appear to pertain to the commission of a crime."  18 U.S.C. § 2702(b)(7).  The problem for Plaintiff is that he fails to make any factual allegations regarding any Corporate

---

[15]    In his Opposition, Plaintiff clarifies that "[i]t is possible that some Private-Defendants fully or partially complied with the law," presumably in response to appropriate legal process.  (1800 Pl. Opp. 19).  The 1800 Complaint "only seeks to hold them liable for [separate instance of] non-compliance."  (*Id.*).  However, this clarification only serves to highlight the fatal deficiencies in Plaintiff's pleading.  It is not enough to allege liability *in the event of non-compliance*; Plaintiff is required to specify the non-compliance.

Defendant's violation of this provision.  Instead, Plaintiff summarily asserts that all of the Corporate Defendants voluntarily disclosed his information to law enforcement, during the period of time that he was under investigation by those agencies.  (1800 Compl. ¶¶ 29, 87, 89).  Because the Complaint does not sufficiently allege how the Corporate Defendants' violated the ECPA and SCA in the course of any disclosures they may have made, the claims against them are dismissed.[16]

### b.    The Right to Financial Privacy Act

Next, Plaintiff argues that the DA Defendants, with the assistance of Corporate Defendants MCU, Capital One, and Chase (collectively, the "RFPA Defendants"), violated his right to privacy under the RFPA.  (1800 Compl. ¶¶ 90-91).  The RFPA is intended to protect the privacy of customer's financial records held by banks and other financial institutions.  To that end, the statute curbs access to financial records by government entities, while protecting the Government's interest in obtaining records relevant to a legitimate law enforcement investigation.  *See* 12 U.S.C. § 3402.

Similar to his ECPA claims, Plaintiff alleges that the DA Defendants improperly accessed his financial records without proper legal process, and that the RFPA Defendants improperly disclosed those records to the City of

---

[16]    Corporate Defendants MCU and Capital One separately argue that they are not subject to the SCA, which governs entities that provide an "electronic communication service" or "remote computing service" to the public, because they are merely financial institutions.  (*See* MCU Br. 3-4; Capital One Br. 6-8).  *See generally* 18 U.S.C. 2702(a).  The Second Circuit has not yet construed these terms, although at least one district court in this Circuit has done so in a manner that supports these arguments.  *See In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005).  Given that these claims are dismissed on other grounds, the Court does not resolve this issue.

New York.  (1800 Compl. ¶¶ 90-91).  As a threshold matter, the RFPA

Defendants argue that Plaintiff's RFPA claim fails because the statute does not

apply to state authorities.  (*See* Chase Br. 9-10; Capital One Br. 9-10).  "[T]he

RFPA only governs and protects against the disclosure of financial records to

the *federal government.*"  *Barroga-Hayes* v. *Susan D. Settenbrino, P.C.*, No. 10

Civ. 5298, 2012 WL 1118194 (RJD), at *4 (E.D.N.Y. Mar. 30, 2012) (emphasis

in original).  In contrast, Plaintiff alleges that his records were disclosed to the

City of New York.  (1800 Compl. ¶ 91).

In his Opposition, Plaintiff "concedes that the RFPA allegations are

deficient because the Complaint is silent regarding a federal authority" (1800

Pl. Opp. 21), but makes additional factual allegations that this Court will

consider, *see Walker*, 717 F.3d at 122 n.1.  Plaintiff alleges that at least one

NYPD Detective had been deputized as a Task Force Officer by the FBI, "giving

him authority to prosecute federally."  (1800 Pl. Opp. 21).  As proof of his

claim, Plaintiff includes the detective's NYPD and FBI email addresses, as

provided to Plaintiff through FOIA disclosures.  (*Id.*).  Given these additional

assertions, the Court finds that Plaintiff has plausibly pleaded that his

financial records were accessed by the federal government.  *Cf. Young* v. *U.S.

Dep't of Justice*, No. 87 Civ. 8307 (JFK), 1988 WL 131302, at *3 (S.D.N.Y.

Nov. 28, 1988) (finding that an Assistant United States Attorney deputized to

obtain records for the Bermudan government did not implicate the RFPA), *aff'd

and modified on other grounds by* 882 F.2d 633 (2d Cir. 1989).

Despite having cured this defect in his pleadings, Plaintiff still does not state a claim under the RFPA.  Again, the Court's analysis is similar to its exploration of Plaintiff's ECPA and SCA claims.  Again, Plaintiff's claims consist exclusively of conclusory statements of legal standards with no substantiating factual allegations.  For instance, Plaintiff alleges that the Government Defendants "knowingly accessed and obtained copies of the information contained in the financial records of [Plaintiff] from financial institutions," (1800 Compl. ¶ 90), but provides no facts about this allegedly unlawful access.  This recitation of statutory elements cannot, and does not, suffice to plead a claim.

### c.    The Driver's Privacy Protection Act

Plaintiff brings his final statutory claim under the DPPA, 18 U.S.C. §§ 2721-2725.  The DPAA generally restricts any state motor vehicle department ("DMV") from disclosing personal information contained in its records.  *See Reno* v. *Condon*, 528 U.S. 141, 143 (2000).  "Similarly, private citizens or entities ordinarily may not obtain, disclose, or resell personal information unless permitted by statute."  *Gordon* v. *Softech Int'l, Inc.*, 726 F.3d 42, 45 (2d Cir. 2013), *as corrected* (Aug. 1, 2013) (citing 18 U.S.C. §§ 2722(a), 2721(c)).[17]  "To establish a claim under DPPA, the plaintiff must show that the defendants caused a DMV search to be made, and that the search was not

---

[17]    Defendant Capital One argues that, as a financial institution, it does not fall within the reach of the DPPA because it is not "a State department of motor vehicles, [or] any officer, employee, or contractor thereof[.]"  (Capital One Br. 11).  However, as Plaintiff notes, there are limited circumstances in which individuals and private entities may also be held liable for disclosures that violate the DPPA.  *See Fontanez* v. *Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014) (summary order).  (*See* Pl. Opp. 21-22).

permitted by any exception to the DPPA." *Figueroa* v. *Taylor*, No. 06 Civ. 3676 (PAC) (KNF), 2006 WL 3022966, at *4 (S.D.N.Y. Oct. 23, 2006) (internal citations and quotations omitted).

Plaintiff alleges that the Government Defendants made false representations regarding their legal authority to obtain Plaintiff's records from several of the Corporate Defendants, including Con Edison, MCU, Capital One, and Chase (collectively, the "DPPA Defendants"). (1800 Compl. ¶ 92). In turn, the DPPA Defendants "disclosed copies of Plaintiff's New York State Driver's Identification card, photograph and social security number to agents of the City of New York." (*Id.* at ¶ 93).

Plaintiff's DPPA claim suffers from the same fundamental pleading deficiencies as his other statutory claims: It recites standards with no supporting factual allegations. Plaintiff has not pleaded that the Government or Corporate Defendants caused *any* DMV search to be made. And there are numerous alternative plausible explanations for the disclosures. If the records were obtained through other means — for example, if Plaintiff provided identification to Capital One when applying for a bank account — any subsequent disclosure would fall outside of the purview of the DPPA. *See Fontanez* v. *Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014) (summary order). While the mere existence of alternative explanations does not generally doom a complaint, to survive dismissal, Plaintiff must allege, at minimum, specific facts as to how the disclosure or disclosures took place. He has not done so here.

### 5.    The Court Dismisses Plaintiff's State-Law Claims

In addition to his federal claims, Plaintiff brings three state-law claims in the 1800 Complaint: negligent infliction of emotional distress, gross negligence, and fraud.  A court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." *Kroshnyi* v. *U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (citing 28 U.S.C. § 1367(a)).  Here, the Court has not dismissed all of Plaintiff's federal claims.  Several of Plaintiff's unlawful search and malicious abuse of process claims remain.  For that reason, the Court exercises its discretion to retain supplemental jurisdiction, and considers the merits of Plaintiff's claims.

### a.    Plaintiff's Claim for Negligent Infliction of Emotional Distress Fails

Plaintiff's first state-law claim, against all Defendants,  is for negligent infliction of emotional distress.  (1800 Compl. ¶ 95).  A claim for negligent infliction of emotional distress under New York law requires "showing 'a breach of a duty of care resulting directly in emotional harm ... even though no physical injury occurred,' as long as 'the mental injury [is] a direct, rather than a consequential, result of the breach, and the claim ... possess[es] some guarantee of genuineness."  *Mortimer* v. *City of New York*, No. 15 Civ. 7186 (KPF), 2018 WL 1605982, at *27 (S.D.N.Y. Mar. 29, 2018) (alterations in original) (quoting *Taggart* v. *Costabile*, 14 N.Y.S.3d 388, 397 (2d Dep't 2015)). Nonetheless, "New York courts have expressed a 'longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or

60

economic injury.'"  *Colo. Capital Invs., Inc.* v. *Owens*, 304 F. App'x 906, 908 (2d

Cir. 2008) (summary order) (quoting *Broadnax* v. *Gonzalez*, 2 N.Y.3d 148, 153

(2004)).

In a complaint that is at times light on factual allegations, Plaintiff's

allegations regarding negligent infliction of emotional distress are the lightest.

In total, the 1800 Complaint claim alleges only the following:

> The defendants' intentional and grossly negligent acts
> and omissions collectively caused the Plaintiff to suffer
> emotional distress from the false arrest, public
> disclosure of personal matters, searches of the body,
> home and office, over one year of oppressive
> confinement on Rikers Island, loss of employment,
> public scrutiny in the media and loss of consortium.

(1800 Compl. ¶ 64).  In his Opposition, Plaintiff provides additional

information, but only with respect to damages, clarifying that "the acts of

Defendants caused the Plaintiff to suffer over a year incarcerated which

threatened his physical safety."  (1800 Pl. Opp. 22).

Plaintiff's claim falls far short of the standard for pleading negligent

infliction of emotional distress.  Among other things, Plaintiff does not indicate

what "intentional and grossly negligent acts" form the basis of this claim.  Nor

does Plaintiff allege any special duty owed to him by any of the defendants, as

required under New York law.  *See Mortise* v. *United States*, 102 F.3d 693, 696

(2d Cir. 1996) ("The duty in such cases must be specific to the plaintiff, and not

some amorphous, free-floating duty to society.").

Even if the Court were to consider factual allegations made elsewhere in

the Complaint that might tangentially be related to this claim, Plaintiff's claim

61

would still fail.  The conduct that Plaintiff ascribes to each of the 1800

Defendants is "intentional and deliberate and allegedly in their nature

offensive" — and therefore "outside the ambit of actionable negligence."  *Jones*

v. *Trane*, 591 N.Y.S.2d 927, 930 (Sup. Ct. Onondaga Cty. 1992).  Like its sister

courts in this District, "[t]his Court is mindful that "New York Courts have

rejected uniformly such attempts to transmogrify intentional torts into

'negligence.'"  *Wahlstrom* v. *Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 532

(S.D.N.Y. 2000) (internal citations and quotations omitted).  It finds here

similarly that Plaintiff's claim for negligent infliction of emotional distress must

be dismissed.

### b.    Plaintiff's Claim for Gross Negligence Fails

Plaintiff also brings a claim for gross negligence, based on two incidents:

(i) the allegedly unlawful search of his office; and (ii) the disclosure his personal

information to Government Defendants.  (1800 Compl. ¶¶ 96-97).  As to the

first claim, Plaintiff alleges that the Con Edison Defendants "act[ed] negligently

as vigilantes," and owed Plaintiff "the duty of not unnecessarily participating in

a warrantless arrest[.]"  (*Id.* at ¶ 96).  In his second claim, Plaintiff alleges that

Corporate Defendants T-Mobile, Facebook, Google, TWC, MCU, Capital One,

and Chase (collectively, the "Gross Negligence Defendants") disclosed his

personal information to the Government Defendants, despite owing him "the

duty of protecting personal information, communications and financial records from disclosure to unauthorized third-parties." (*Id.* at ¶ 97).[18]

As discussed by Defendants, gross negligence "differs in kind as well as degree from ordinary negligence." *Kinsey* v. *Cendant Corp.*, No. 04 Civ. 582 (RWS), 2005 WL 1907678, at *7 (S.D.N.Y. Aug. 10, 2005) (quoting *Sutton Park Dev. Corp. Trading Co. Inc.* v. *Guerin & Guerin Agency, Inc.*, 745 N.Y.S.2d 622, 624 (3d Dep't 2002)).  To state a claim for gross negligence, a plaintiff must allege conduct by a defendant that "'smacks of intentional wrongdoing'" or "evinces a reckless disregard for the rights of others." *Purchase Partners, LLC* v. *Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012) (quoting *Farash* v. *Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367-68 (S.D.N.Y. 2008)).  As such, "a party is grossly negligent when it fails to exercise even slight care or slight diligence." *Goldstein* v. *Carnell Assocs., Inc.*, 906 N.Y.S.2d 905, 905-06 (2d Dep't 2010) (internal quotations omitted).

Neither instance identified by Plaintiff — the unlawful office search or the disclosure of private information to the Government — rises to the level of gross negligence, even with the inclusion of Plaintiff's allegations to the effect that the Gross Negligence Defendants "not only acted carelessly in making a mistake,

---

[18]    In their motions to dismiss, these Defendants noted that Plaintiff brought a claim for gross negligence, as opposed to ordinary negligence.  (*See, e.g.,* Def. Chase Br. 14-15).  In response, Plaintiff requested leave to amend the 1800 Complaint to include a claim for general negligence, while maintaining his gross negligence claim.  (1800 Pl Opp. ¶¶ 22-23).  However, Plaintiff may not recover under general negligence principles because the damages sought arise out of Plaintiff's arrest and detention.  *See Croft* v. *Greenhope Servs. for Women, Inc.*, No. 13 Civ. 2996 (DLC), 2013 WL 6642677, at *7 (S.D.N.Y. Dec. 17, 2013).  Instead, Plaintiff "must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution." *Vanderwoude* v. *City of New York*, No. 12 Civ. 9046 (KPF), 2014 WL 2592457, at *19 (S.D.N.Y. June 10, 2014) (internal citations and quotations omitted).

but that [they were] so extremely careless that it was equivalent to recklessness." *Travelers Indem. Co. of Conn.* v. *Losco Grp., Inc.*, 204 F. Supp. 2d 639, 644 (S.D.N.Y. 2002).  As previously discussed, and related to his Fourth Amendment claims, Plaintiff has not sufficiently alleged that he had a reasonable expectation of privacy in his workplace that would render any warrantless search unlawful.  Therefore, any alleged participation or assistance by his employer would not evince a reckless disregard for his rights.

Similarly, the Court cannot sustain Plaintiff's second variation of his claim, in which he alleges that disclosures on the part of any of the Gross Negligence Defendants were grossly negligent.  The Court has already determined that Plaintiff has not adequately alleged that any of these defendants disclosed his personal information in violation of any constitutional or statutory rights.  As a result, the Court cannot find that any of the alleged disclosures were "so extremely careless that [they were] equivalent to recklessness." *Travelers,* 204 F. Supp. 2d at 644.

### c.     **Plaintiff's Claim for Fraud Fails**

As his final state-law claim in the 1800 Complaint, Plaintiff alleges that the Government Defendants aided and abetted a fraud perpetrated by Defendant Backpage.com.  (1800 Compl. ¶¶ 65, 98-99; 1800 Pl. Opp. 23).  The Court finds that Plaintiff's allegations of the underlying fraud are both conclusory and not plausibly pleaded; as a result, it does not reach the issue of whether the Government Defendants aided and abetted Backpage.com in perpetrating a fraud.

To prove fraud in New York, a plaintiff must allege, "[i] that the defendant made a representation, [ii] as to a material fact, [iii] which was false, [iv] and known to be false by the defendant, [v] that the representation was made for the purpose of inducing the other party to rely upon it, [vi] that the other party rightfully did so rely, [vii] in ignorance of its falsity [viii] to his injury." *Brown* v. *Lockwood*, 432 N.Y.S.2d 186, 195 (2d Dep't 1980).  In addition, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Specifically, Rule 9(b) requires that a complaint "[i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007) (citation omitted).  "Allegations that are conclusory or unsupported by factual assertions are insufficient." *Id.*

Plaintiff alleges here that Defendant Backpage.com committed the underlying fraud through their Terms of Service:

> Defendants Backpage committed common law fraud by omitting from their "Terms of Service" that their online advertisement service is a covert tool for law enforcement, giving them unrestricted access to subscriber information and financial records without any legal authority.  Plaintiff reasonably believed that all communications and transactions with the online service backpage.com would be unaccessible to a third-party.

(1800 Compl. ¶ 65).  The Government Defendants are alleged to have aided and abetted this fraud by "inducing" Backpage.com to grant access to its service without proper legal authorization.  (*Id.* at ¶ 99).

Particularly given the dictates of Rule 9(b), Plaintiff's conclusory allegations of fraud are unsupported by any facts and inadequate to state a claim.  The 1800 Complaint contains no factual allegations regarding the use of Backpage.com as a "covert tool for law enforcement," or its alleged use or misuse by the Government Defendants, as would be necessary to state a claim for fraud.  Indeed, there is nothing to suggest that the website is anything other than a legitimate, third-party site.  Moreover, the notion that Backpage.com was obligated to advise those patrons who might be interested in using its services to engage in criminal conduct that it would comply with law enforcement inquiries into such conduct, is wholly implausible.  The claim is dismissed.

## F.    The Court Dismisses the 9621 Complaint in Full

The Court now turns to Plaintiff's 9621 action.  Sharing a common factual nucleus with the 1800 action, the 9621 Complaint focuses on the conduct of those involved in Plaintiff's state prosecution from its inception until the case was turned over to the federal prosecutors.  As set forth in the

remainder of this section, and unlike its sister case, none of the claims in the 9621 Complaint survives the motions to dismiss.

### 1. Plaintiff's Speedy Trial, Fair Trial, and Selective Prosecution Claims Are Barred by *Heck*

In Count III of the 9621 Complaint, Plaintiff brings a speedy trial claim under 42 U.S.C. § 1983. (9621 Compl. ¶¶ 29-35, 62). For the same reasons the Court has previously articulated in reference to Plaintiff's 1800 Complaint, the claim must be dismissed because it seeks to call into question the validity of his federal conviction, in contravention of *Heck*, *see* 512 U.S. at 477. The Court adopts its prior analysis and declines to address the claim in further detail.

In addition, to the extent Plaintiff's obstruction of justice claim (Count IV) is construed as a violation of his Sixth Amendment right to a fair trial, it is similarly barred by *Heck*. *See Barnes* v. *City of New York*, No. 13 Civ. 7283 (GBD) (JLC), 2015 WL 4076007, at *16 (S.D.N.Y. July 2, 2015) ("Where the plaintiff's underlying conviction has not been so invalidated, courts routinely dismiss Section 1983 claims for, *inter alia*, malicious prosecution, conspiracy, and deprivation of the right to a fair trial pursuant to *Heck*."), *report and recommendation adopted*, No. 13 Civ. 7283 (GBD) (JLC), 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015). [19]

---

[19] Per the 9621 Complaint, Count IV, entitled "Obstruction of Justice," is a claim for violations of Plaintiff's "fifth and sixth amendment rights to due process and a fair trial." (9621 Compl. ¶ 63).

Finally, to the extent Plaintiff's allegations of violations of his Fourteenth

Amendment right to equal protection are construed as selective prosecution

claims (*see* Count V), those claims are also barred by *Heck*.  *Cf. Leather* v.

*Eyck*, 180 F.3d 420, 423 (2d Cir. 1999) (finding that *Heck* does not bar a

§ 1983 selective prosecution claim, despite "reasoning that the claim's success

would necessarily imply the invalidity of [the plaintiff's] criminal conviction,"

because the plaintiff was never in custody (internal quotations and citations

omitted)).[20]  Plaintiff's selective prosecution claim here, if meritorious, would

necessarily mean that his conviction was unlawful.  *Cf. United States* v.

*Mangano,* No. 16 Cr. 540 (JMA), 2018 WL 851860, at *9 (E.D.N.Y. Feb. 9, 2018)

(observing that criminal defendants asserting the defense of selective

prosecution were seeking dismissal of the indictment); *see also Omegbu* v.

*Milwaukee Cty.*, 326 F. App'x 940, 942-43 (7th Cir. 2009) (summary order) ("A

decision here that [the defendant] was selectively prosecuted would mean that

---

[20]    Count V of the Complaint, entitled "Equal Protection," alleges violations of the Equal
Protection Clause of the Fourteenth Amendment.  (9621 Compl. ¶ 64).  Plaintiff alleges
that the DA Defendants "maintained a policy of referring Black defendants for federal
prosecution, while defendants of other races faced less severe consequence[.]"  (*Id.*).
Given these allegations, the Court construes Plaintiff's equal protection claim to be, in
part, a claim of selective prosecution.  *See Jones* v. *J.C. Penney's Dep't Stores, Inc.*,
No. 03 Civ. 920A, 2007 WL 1577758, at *8 (W.D.N.Y. May 31, 2007), *aff'd sub nom.
Jones* v. *J.C. Penny's Dep't Stores Inc.*, 317 F. App'x 71 (2d Cir. 2009) (summary order)
(construing *pro se* plaintiff's equal protection claim as a selective prosecution claim).  To
the extent Count V is construed as a claim for malicious prosecution, it would also be
barred for lack of a favorable termination.  *See Murphy* v. *Lynn*, 118 F.3d 938, 947 (2d
Cir. 1997).  Furthermore, in his Opposition, Plaintiff clarifies that Count V "is also a
'substantive due process' claim because it also deals with 'Plaintiff's vindictive federal
prosecution.'"  (Pl. Opp. 19).  The Court addresses Plaintiff's due process claims in the
9621 Complaint *infra*.

his conviction was unlawful," thereby barring his § 1983 suit).  For these
reasons, the Court dismisses those claims.[21]

### 2.   Plaintiff's Privacy Claim Fails

In Count I of the 9621 Complaint, Plaintiff asserts a violation of his "first
and fourth amendment rights to privacy."  (9621 Compl. ¶ 60).  In this regard,
Plaintiff alleges that Justice Wittner and the DA Defendants "established a
quasi-grand jury to issue subpoenas, court orders, etc.; with the intent to
illegally obtain access to Plaintiff's personal electronic communications, bank
records, phone records and conversations, etc."  (*Id.* at ¶ 17).

The DA Defendants argue that "Plaintiff fails to allege what is a 'Quasi
Grand Jury,' the difference between a Grand Jury and a 'Quasi Grand Jury,'
how the 'Quasi Grand Jury' violated the laws of New York governing Grand
Juries, and what was the 'personal information' that he had a reasonable
expectation of privacy in."  (9621 DA Br. 8).  The Court agrees that allegations
detailing the existence and characteristics of Quasi Grand Juries, and detailing
the precise information injuriously disclosed, would be necessary for Plaintiff's
claim to survive, and are absent here.  More pointedly, nothing in Plaintiff's
Complaint or Opposition suggests that he could advance plausible, non-
conclusory allegations that Justice Wittner and the DA Defendants concocted a

---

[21]      Plaintiff's selective prosecution claim, even if not barred by *Heck*, additionally fails
because prosecutorial immunity shields the DA Defendants.  *See Bernard* v. *County of
Suffolk*, 356 F.3d 495 (2d Cir. 2004) (noting that absolute immunity shields prosecutors
from suit pursuant to § 1983 for their alleged malicious or selective prosecution); *see
also Klein* v. *Beltempo*, No. 15 Civ. 9093 (NSR), 2018 WL 4284317, at *6 (S.D.N.Y.
Sept. 7, 2018) ("The initiation and pursuit of a prosecution is not investigative and,
regardless of any alleged illegality, is protected by absolute immunity.").

faux grand jury solely, or even principally, to obtain information about Plaintiff illegally; the progress and resolution of his prosecutions suggests that the necessary probable cause for such requests was always present.  Once again, Plaintiff has failed to sufficiently allege a claim, and Count I of the 9621 Complaint is dismissed.

### 3.   Plaintiff's Substantive Due Process Claims Fail

At his request, the Court construes Plaintiff's claims for outrageous government conduct, obstruction of justice, and equal protection as substantive due process claims.  (*See* 9621 Pl. Opp. 19 ("Treatment of Count II (Outrageous Government Conduct) as a 'substantive due process' claim is most appropriate[.]"); 9621 Compl. ¶ 63 (pleading obstruction of justice claim as a violation of Plaintiff's right to due process); 9621 Pl. Opp. 19 ("With respect to Count V (Equal Protection), this claim is obviously an 'equal protection' claim that is clearly alleged.  However it is also a 'substantive due process' claim because it also deals with 'Plaintiff's vindictive federal prosecution[.]'")).  These allegations, taken together, form the heart of the 9621 Complaint.

To review, "[t]o establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. *See Okin* v. *Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (internal citations and quotations omitted).  Plaintiff's substantive due process allegations begin with a regurgitation of his claims in the 1800 Complaint that the DA Defendants improperly used informants in the course of

undercover operations.  (9621 Compl. ¶¶ 18-24).  In point of fact, Plaintiff's opposition papers in both cases are identical on this point.  (*Compare* 1800 Pl. Opp. 13-17, *with* 9621 Pl. Opp. 20-23).  As discussed above, these allegations, even construed liberally, do not shock the contemporary conscience.

Plaintiff offers one slight tweak to his factual allegations in the 9621 Complaint:  He alleges that Justice Wittner "induced [an alleged confidential informant who had been apprehended on prostitution charges] to engage in prostitution," by threatening her with prosecution, an unfavorable disposition, or offering her something of value.  (9621 Compl. ¶ 18).  While these allegations disturb the Court, they are conclusorily, and thus insufficiently, pleaded.  The 9621 Complaint includes 11 paragraphs related to the conduct of the DA Defendants, but only a few assertions regarding Justice Wittner's involvement.  (*Id.* at ¶¶ 18-28).  Additional factual allegations would be needed to "nudge [Plaintiff's] claims across the line from conceivable to plausible." *In re Elevator Antitrust Litig.*, 502 F.3d at 50.  On the record before it, which includes the factual arguments made by Plaintiff in opposition to these motions, the Court finds that Plaintiff has not alleged, and cannot plausibly allege, that Justice Wittner and the DA Defendants compelled a prostitute to engage in prostitution — as distinguished from engaging in sting operations in which she may have held herself out as a prostitute.  This claim is therefore dismissed.

Next, Plaintiff alleges that the DA Defendants and Justice Wittner solicited the USAO to prosecute him.  (9621 Compl. ¶¶ 36-49).  And when the USAO declined to prosecute, ostensibly for "lack of interest" (*id.* at ¶ 40),

Plaintiff's defense counsel, Glenn Hardy, is alleged to have hired private investigator Michael Barry "to publicize Plaintiff's case, with the intent of enticing the U.S. Attorney to take the case" (*id.* at ¶ 41). In his Opposition, Plaintiff also claims that "[t]he goal was to embarrass the Plaintiff in the media hoping that he would quickly plead guilty to get the matter over with." (9621 Pl. Opp. 24). Barry visited Plaintiff while he was incarcerated, but then, allegedly, sold Plaintiff's story to the media. (9621 Compl. ¶¶ 42-43). Shortly thereafter, it is alleged, the USAO expressed an interest in Plaintiff's case, and the DA Defendants arranged to transfer prosecution. (*Id.* at ¶ 46).

Plaintiff's substantive due process allegations related to this sequence of events fail for a number of reasons. To begin, the allegations do not withstand scrutiny and implicate, even more than some of Plaintiff's other allegations, the plausibility inquiry that inheres in Rule 12(b)(6). As clarified by Defendants, and as not disputed by Plaintiff, Hardy was assigned to Corley's case through the New York County Assigned Counsel Defender Plan. (*See* Hardy Br. 3). Barry, in turn, was an investigator assigned through the same program to assist Hardy in preparing Plaintiff's defense. (Gotlin Decl. ¶ 3). Plaintiff's conclusory allegations that his defense team acted at the behest of Justice Wittner and the DA Defendants are neither well pleaded nor tethered to logic and common sense. Among other things, Plaintiff is unable to explain why Hardy would have any interest in securing Plaintiff's prompt guilty plea or piquing the interest of the USAO; indeed, the two goals are mutually contradictory. Plaintiff is similarly unable to tie Barry, whose job required him

to visit Plaintiff in jail, to the publication of an article about Plaintiff's case. Without more, Plaintiff's attempt to link together — and ascribe constitutionally violative motives to — a multitude of seemingly unrelated occurrences fails.  *See McNaughton* v. *de Blasio*, No. 14 Civ. 221 (KPF), 2015 WL 468890 (S.D.N.Y. Feb. 4, 2015) (dismissing case for failure to plead plausible allegations), *aff'd*, 644 F. App'x 32 (2d Cir. 2016) (summary order).

In any event, Hardy and Barry were not state actors, as required under § 1983.  *See Krug* v. *McNally*, 488 F. Supp. 2d 198, 200 (N.D.N.Y. 2007) ("[D]efense attorneys — even if court appointed or public defenders — do not act under color of State law when performing traditional functions of counsel."), *aff'd*, 368 F. App'x 269 (2d Cir. 2010) (summary order); *see also Polk Cty.* v. *Dodson*, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983.").  As previously discussed, Hardy "is a private attorney who was assigned to represent Plaintiff via the New York County Assigned Counsel Defender Plan" (9621 Hardy Br. 8), and Barry is a private investigator who was assigned under the same plan (9621 Barry Br. 14).

Nor has Plaintiff sufficiently alleged "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Abdullahi*, 562 F.3d at 188 (quoting *Brentwood Acad.* v. *Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).  Instead, Plaintiff merely alleges that, "motivated by [the DA Defendants] and Justice Wittner, Mr. Hardy hired private investigator Michael

J. Barry[.]"  (9621 Compl. ¶ 41).  Any further allegations regarding the DA

Defendants' or Justice Wittner's roles in this process are fairly benign, and

plainly insufficient to plead a conspiracy to violate Plaintiff's constitutional

rights.  (*See, e.g.*, *id.* at ¶ 46 (alleging that Judge Wittner "discussed the

logistics of transferring evidence"), *id.* at ¶¶ 47-48 (alleging that the DA

Defendants offered Plaintiff a plea deal)).

Finally, Plaintiff alleges that the DA Defendants maintained a racist

policy of prosecution, which policy he claims to be the reason for his arrest and

imprisonment.  (9621 Compl. ¶¶ 54-55).  In his Opposition, Plaintiff clarifies

that this set of facts also alleges "a 'substantive due process' claim because it

deals with 'Plaintiff's vindictive federal prosecution.'"  (9621 Pl. Opp. 19).

Plaintiff is correct that a claim of vindictive prosecution implicates due process

concerns.  *See Class* v. *United States*, 138 S. Ct. 798, 810 (2018).  However,

this variant of his due process claim fails for three reasons.[22]

*First*, Plaintiff has failed to plead the elements of a vindictive prosecution

claim.  In the criminal context, the Second Circuit has explained that a

prosecution brought to "'penaliz[e] those who choose to exercise' constitutional

rights[ ] 'would be patently unconstitutional.'"  *United States* v. *Sanders*, 211

---

[22]     As a threshold matter, it is unclear whether vindictive prosecution is a cognizable cause
of action under § 1983.  *See Willis* v. *Rochester Police Dep't*, No. 15 Civ. 6284 (FPG),
2018 WL 4637378, at *7 n.12 (W.D.N.Y. Sept. 27, 2018).  While some courts "faced with
such § 1983 claims have … recognized it as a valid cause of action," *id.*, other have
found that "[a]t best, [a vindictive prosecution] claim may be analogized instead to a
malicious prosecution claim," *id.*  As previously discussed, any claim for malicious
prosecution would be barred for lack of a favorable termination.  *See Heck* v. *Humphrey*,
512 U.S. 477, 484-86 (1994).  Given its disposition of the claim, the Court need not
resolve this issue.

F.3d 711, 716 (2d Cir. 2000) (quoting *North Carolina* v. *Pearce*, 395 U.S. 711, 724 (1969)).  In that regard, the requisite vindictiveness requires a demonstration "that the prosecutor's charging decision was a 'direct and unjustifiable penalty' that resulted 'solely from the defendant's exercise of a protected legal right.'"  *Id.* at 716-17.  Plaintiff asserts that his prosecution "was motivated by Plaintiff being a Black 'pimp' that associated with White and Caucasian prostitutes."  (9621 Compl. ¶ 58).  Although the Court is disturbed by the allegations, Plaintiff does not claim that he was prosecuted for the exercise of some legal right.  *See United States* v. *Bufalino*, 518 F. Supp. 1190, 1195 (S.D.N.Y. 1981) ("There simply is no showing that he has exercised any right prior to the superseding indictment which could have triggered a vindictive response from the government.").[23]

*Second*, in order for Plaintiff to prevail on his claim, he would have to prove that he was singled out for prosecution simply because of his race.  Proof of such facts would imply the invalidity of Plaintiff's criminal conviction.  Accordingly, his claim is barred by *Heck*.  *See Sanders* v. *United States*, No. 01 Civ. 5447 (JS) (WDW), 2005 WL 8156914, at *4 (E.D.N.Y. Mar. 29, 2005) (finding vindictive prosecution claim to be barred by *Heck*).

*Third*, and finally, the DA Defendants would be entitled to absolute immunity for this claim.  *See Giraldo* v. *Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) ("Prosecutorial immunity from § 1983 liability is broadly defined" and

---

[23]    The 9621 Complaint makes no reference to requests for Plaintiff's assistance in nuisance abatement proceedings, as does the 1800 Complaint.

extends to decisions regarding "whether and when to prosecute[.]" (citing *Imbler*, 424 U.S. at 430)).  Count V of the 9621 Complaint is therefore dismissed.

### 4. The Majority of Plaintiff's Claims Against Judge Wittner Are Barred by Judicial Immunity

Apart from failing on the merits, the majority of Plaintiff's allegations against Judge Wittner are barred by judicial immunity.  "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial action." *Shtrauch* v. *Dowd*, 651 F. App'x 72, 73 (2d Cir. 2016) (summary order).  All of Plaintiff's allegations — including his claims that Judge Wittner unlawfully established a quasi-grand jury, circumvented procedures to have Plaintiff's case assigned to her, and transferred the case to the USAO — relate to "acts arising out of, or related to, [his] individual case[] before [Judge Wittner]." *Bliven* v. *Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Therefore, Judge Wittner is afforded absolute immunity. *See id.*  Further, Plaintiff's allegations that Judge Wittner acted maliciously or even in excess of her jurisdiction cannot overcome immunity.  *See Tucker* v. *Outwater*, 118 F.3d 930, 933 (2d Cir. 1997).

To the extent Judge Wittner is not completely shielded by judicial immunity, it is due to the fact that Plaintiff has strategically pleaded that Judge Wittner was involved in law enforcement undercover operations.  (9621 Compl. ¶ 18).  "At the margins, it can be difficult to distinguish between those actions that are judicial, and which therefore receive immunity, and those that happen to have been performed by judges, but are administrative, legislative,

or executive in nature." *Huminski* v. *Corsones*, 396 F.3d 53, 75 (2d Cir. 2005). Here, engaging with law enforcement to work with informants, is likely not an action that is judicial in nature. Regardless, the substantive due process claim that Plaintiff brought based on those allegations has already failed on the merits, as discussed above.

### 5. Plaintiff's Claims Against New York City Fail for Lack of an Underlying Constitutional Violation

Plaintiff has failed to demonstrate the existence of an underlying constitutional violation in the 9621 Complaint, thereby precluding a *Monell* claim against the City. *See Bobolakis* v. *DiPietrantonio,* 523 F. App'x 85, 87 (2d Cir. 2013) (summary order) (affirming dismissal of *Monell* claims where plaintiff "suffered no violation of his constitutional rights [and as such] there is no basis for imposition of liability on the Town" (citing *Segal* v. *City of New York,* 459 F.3d 207, 219 (2d Cir. 2006))). What is more, with the exception of Plaintiff's claim for vindictive prosecution, the Complaint is devoid of allegations of any policy, custom, or practice on the part of the City. Therefore, even assuming for the sake of argument that the absence of an underlying constitutional violation was not fatal to Plaintiff's *Monell* claim here, which it is, the City of New York would still be entitled to dismissal of the majority of *Monell* claims on this separate basis.[24]

---

[24]    Because of the Court's disposition of the City's claims in the 1800 and 9621 Complaints, it does not address the NYPD Defendants' arguments concerning notice of claim requirements. (*See, e.g.*, 1800 NYPD Br. 21-22).

6.    **The Court Declines Supplemental Jurisdiction over Plaintiff's State-Law Claims in the 9621 Complaint**

Because the Court has dismissed Plaintiff's § 1983 constitutional claims, his only remaining claims allege negligent infliction of emotional distress, malpractice, unjust enrichment, fraud, and deceptive business practices under state law.  The Court declines to exercise supplemental jurisdiction over these claims.

A district court has discretion to "decline to exercise supplemental jurisdiction" after "dismiss[ing] all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *see Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of N.Y.*, 464 F.3d 255, 263 (2d Cir. 2006) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right[.]").  In making this determination, courts "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'"  *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  In general, "if the federal claims are dismissed before trial, … the state claims should be dismissed as well."  *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966).  Moreover, "[a]lthough the exercise of supplemental jurisdiction is discretionary, the ordinary case 'will point toward declining jurisdiction over the remaining state-law claims.'"  *Jordan* v. *Chase Manhattan Bank*, 91 F. Supp. 3d 491, 511 (S.D.N.Y. 2015) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

Here, all factors weigh in favor of declining supplemental jurisdiction over Plaintiff's state-law claims.  *First*, judicial economy favors dismissal given

78

that, despite the lengthy procedural history of the case, the matter still has not progressed past the pleading stage. *See Chenensky* v. *N.Y. Life Ins. Co.,* 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013); *cf. Winter* v. *Northrup*, 334 F. App'x 344, 345-46 (2d Cir. 2009) (summary order) (affirming district court's decision to retain supplemental jurisdiction where "(1) discovery had been completed, (2) the state claims were far from novel, and (3) the state and federal claims were substantially identical"). *Second*, refiling in state court will present only a minor inconvenience to the parties. *Third*, proceeding to state court will place none of the parties at any disadvantage relative to their current positions in this litigation. *Fourth* and finally, given that only state-law issues remain in this case, comity dictates that the Court decline to decide those disputes. *Cf. Bray* v. *City of New York*, 356 F. Supp. 2d 277, 287 (S.D.N.Y. 2004) (declining to exercise supplemental jurisdiction over state claims despite federal defenses).

Therefore, the Court dismisses Plaintiff's claims for negligent infliction of emotional distress, malpractice, unjust enrichment, fraud, and deceptive business practices without prejudice to their refiling in state court.

## G.   The Court Denies Plaintiff's Motions for Leave to Amend the 1800 and 9621 Complaints

Plaintiff requests leave in his Opposition to replead his claims. (1800 Pl. Opp. 30; 9621 Pl. Opp. 38). His request, however, overlooks the procedural history of his cases, particularly with regards to the 1800 action. As discussed above, the Court, on multiple occasions, ordered Plaintiff to file an amended 1800 complaint to correct the identified deficiencies. (1800 Dkt. #15, 18).

Plaintiff elected to stand on his original complaint. (1800 Dkt. #19). Many of the identified deficiencies merited dismissal of Plaintiff's claims.

The Court is mindful of what the Second Circuit has identified as courts' "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks and citations omitted). For this reason, the Court has considered the supplemental arguments and evidence that Plaintiff presented in his submissions to the Court, including his Opposition. The Court has discussed these arguments and evidence throughout its Opinion; and, as presaged by these discussions, the Court is confident that any attempt by Plaintiff to replead the claims the Court has dismissed would be futile. *See, e.g., Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of motion to amend where complaint's deficiencies were "substantive" and thus repleading was futile); *cf. Ganley* v. *City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) ("A district court should grant a *pro se* litigant leave to amend 'at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" (quoting *Cuoco*)).

In addition, the Court denies Plaintiff's request to issue additional orders pursuant to *Valentin* v. *Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), "to identify all of the John Doe ADAs" in the 9621 action (9621 Pl. Opp. 38), and "all unknown parties" in the 1800 action (1800 Pl. Opp. 30). With regards to the 9621 action, Plaintiff's allegations were insufficient to state a viable § 1983 claim. Therefore, "it would be futile to permit amendment of the complaint [to

include names of additional defendants] (and, by extension, to issue a Valentin

order)." *Washington* v. *Westchester Cty. Dep't of Corr.*, No. 13 Civ. 5322 (KPF),

2015 WL 408941, at *6 (S.D.N.Y. Jan. 30, 2015).  Turning to the 1800 action,

the Court previously issued a *Valentin* Order on September 13, 2016.  (1800

Dkt. #92).  Defendants complied with that Order and sent Plaintiff additional

information about the individuals involved in his case.  (1800 Dkt. #128).

Plaintiff has not alleged why an additional *Valentin* Order is necessary.

## H.    The Court Denies Plaintiff's Cross-Motions

As part of his opposition briefing, Plaintiff includes a multitude of "cross

motions."  (1800 Pl. Opp. 23-30; 9621 Pl. Opp. 31-38).  Many are not

appropriate for inclusion in his opposition papers.  However, given Plaintiff's

status, the Court considers each of them here and finds none to be

meritorious.

### 1.    Plaintiff's Cross-Motion for Default Judgment

In his first cross-motion, Plaintiff renews his April 18, 2018 request for

the entry of default judgments against Defendants Wittner, Barry, and the City

of New York.  (9621 Pl. Opp. 31-33; *see* 9621 Dkt. #81).  On May 17, 2018, the

Court denied his request.  (9621 Dkt. #82).  Once again, Plaintiff advances the

same argument:  Defendants failed to answer the 9621 Complaint in a timely

fashion.  (9621 Pl. Opp. 31-33).  In its prior Order, the Court declined to grant

Plaintiff's request, explaining:

> Each of the defendants against whom Plaintiff seeks an
> entry of default has, in fact, responded by submitting
> letters requesting pre-motion conferences or leave to file
> motions to dismiss.  (*See* Dkt. #54, 76 in No. 15 Civ.

> 9621, and Dkt. #138 in No. 15 Civ. 1800).  Rule 4.A of
> the Court's Individual Rules of Practice in Civil Cases
> establishes that the "submission of a pre-motion letter
> concerning a motion to dismiss will stay the defendant's
> time to answer or otherwise move with respect to the
> Complaint." Because each of the defendants has
> submitted pre-motion letters concerning anticipated
> motions to dismiss, their time to answer the Complaint
> has been stayed.  Plaintiff's request for an entry of
> default is therefore denied.

(9621 Dkt. #82).  Plaintiff advances no new arguments or factual allegations.

As such, the Court adheres to its initial decision and denies Plaintiff's request

for entry of default judgment for the same reasons.

### 2.    Plaintiff's Cross-Motion for Sanctions on MCU

Separately Plaintiff alleges MCU committed fraud upon the Court when it

represented in its motion papers that its only disclosure to the DA Defendants

was pursuant to one grand jury subpoena on January 12, 2012, "despite clear

evidence of prior disclosures." (1800 Pl. Opp. 2-3, 23).[25]  Plaintiff urges the

Court to impose sanctions on MCU pursuant to the Court's inherent powers.

(*Id.* at 24).  In particular, he seeks sanctions in the amount of $1,000 and asks

the Court to strike MCU's pleadings.  (*Id.*).

Plaintiff's claim for sanctions ostensibly flows from MCU's motion papers.

In support of its motion to dismiss, MCU submitted a declaration that stated

that the company had replied to a Grand Jury Subpoena from ADA David

Smith on January 12, 2019.  (Birnbach Decl. ¶ 6 (1800 Dkt. #215-12)).

---

[25]    Plaintiff also asks the Court to order sanctions against Sprint, a defendant in the 1800
action.  (1800 Pl. Opp. 24-25).  The Court will address Plaintiff's request for sanctions
against Sprint when it addresses Sprint's renewed motion for summary judgment,
which remains pending.  (1800 Dkt. #266).

Contrary to Plaintiff's current claims, MCU did *not* state that this was the one and only instance in which MCU had provided documents to law enforcement or other governmental entities related to Plaintiff's account information. (Birnbach Supp. Decl. ¶¶ 5-6 (1800 Dkt. #273)).  Instead, MCU indicated that a search of its records for Plaintiff's account information yielded only the January 12, 2012 subpoena.  (Birnbach Supp. ¶ 6).

However, as a result of the discovery produced in his criminal case, Plaintiff came into possession of a "Business Record Certification," executed on August 31, 2011, by an MCU employee.  (1800 Pl. Opp. 23).  The document indicated that MCU had made at least one additional disclosure of information concerning Plaintiff.  (*Id.*).  Plaintiff notified MCU, which conducted a search of several archived systems and records that were not directly related to Plaintiff. (Birnbach Supp. Decl. ¶¶ 9-11).  During the course of the search, MCU located, as Plaintiff suspected, an additional grand jury subpoena requesting Plaintiff's records.  (*Id.*).  This subpoena was not directly related to Plaintiff or the criminal investigation that led to his conviction, and therefore had not been discovered in MCU's initial search.  (*Id.*).

After notifying Plaintiff that its representatives had located the information he sought, MCU asked that, if Plaintiff was "in possession of any additional information regarding purportedly improper disclosure of records, please advise as soon as possible so we can resolve any potential issues." (1800 Pl. Opp. 23).  Plaintiff has not identified any further issues, but instead contends that MCU's offer of assistance is "a game of 'discovery tag' to burden

the Plaintiff with revealing further disclosures, before they admit to additional ones." (*Id.* at 24).

Having carefully considered the parties' submissions, the Court concludes that sanctions are not warranted. The Court finds no evidence that MCU misled the Court in its motion papers. To the contrary, the parties' submissions make plain that MCU acted in the normal course of business in conducting an initial search; this search did not uncover the 2011 subpoena because the subpoena was located in an archived system and was part of an unrelated case. Upon receipt of Plaintiff's request, MCU acted diligently to conduct a second search, and promptly provided Plaintiff with the resulting information.

On the record before it, the Court cannot find that any of the statements or "material omissions" attributed to MCU was false, much less that any statement was fraudulent or intended to cause unnecessary delays or increase the cost of litigation. The Second Circuit has explained that, under Rule 11, a factual statement "can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support." *Kiobel* v. *Millson*, 592 F.3d 78, 81 (2d Cir. 2010) (internal quotation marks and citation omitted). It has further explained that "[b]ad faith is the touchstone of an award under [28 U.S.C. § 1927]," and that district courts should exercise their inherent power where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States* v. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal

quotation marks and citation omitted).  Because the Court believes that MCU's statements to the Court were not made in bad faith, the Court will not impose sanctions on MCU.  Accordingly, Plaintiff's motion for sanctions is denied.

### 3.    Plaintiff's Cross-Motions for Partial Judgment on the Pleadings

In both the 1800 and 9621 actions, via his Opposition, Plaintiff moves for partial judgment on the pleadings pursuant to Rule 12(c).  (1800 Pl. Opp. 26-29; 9621 Pl. Opp. 33-37).  As a preliminary matter, Plaintiff cannot file such a motion until Defendants file answers.  *See* 5C Charles A. Wright and Arthur R. Miller, FED. PRAC. & PROC. § 1367 (3d ed.) (noting that "the plaintiff cannot move under Rule 12(c) until after an answer has been filed").  In addition, Plaintiff's motions fail to comply with the Court's Individual Rules of Practice in Civil Cases, which require pre-motion submissions for any motion for judgment on the pleadings.

Finally, Plaintiff's motions for judgment on the pleadings are largely a rehash of arguments that he has raised, and that the Court has rejected, in opposing Defendants' motions to dismiss.  The Court finds no reason to reconsider these arguments, or its findings, simply because Plaintiff has recast them as separate dispositive motions.

## CONCLUSION

With regard to Case No. 15 Civ. 9621, Defendants' motions to dismiss are GRANTED, and Plaintiff's 9621 Complaint is dismissed in its entirety.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close that case.

With regard to Case No. 15 Civ. 1800, the motions to dismiss submitted by the following parties are GRANTED in their entirety:  T-Mobile, Facebook, Google, TWC, MCU, Capital One, Chase, Con Edison, and the City of New York. The Clerk of Court is directed to terminate these parties.

The DA Defendant's motion is DENIED as to Plaintiff's claims for unlawful search and seizure, and GRANTED in all other respects.  The NYPD Defendant's motion is DENIED as to Plaintiff's claims for malicious prosecution, and unlawful search and seizure, and GRANTED in all other respects.

The Clerk of Court is directed to terminate the motions at Docket Entries 166, 169, 171, 174, 179, 183, 185, 189, 211, 216, and 267 in Case No. 15 Civ. 1800.

The remaining parties are directed to submit a proposed Case Management Plan for the Court's consideration on or before May 1, 2019.  The parties should be mindful that discovery in this case will only be permitted as it pertains to Plaintiffs' three remaining claims; discovery may not be taken as to any claim dismissed in this Opinion.

SO ORDERED.

Dated:      March 27, 2019
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge


*Sent by First Class Mail to:*
Royce Corley
68011-054
Federal Corr. Institution -Low
P.O. Box 1000
Petersburg, VA 23804-1000